No. 25-403

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

SHANNON IRELAND-GORDY; STEPHANIE IRELAND
GORDY; MELISSA BROAD; and JANE DOE, INDIVIDUALLY AND ON
BEHALF OF ALL OTHERS SIMILARLY SITUATED,

*Plaintiffs-Appellees,*

v.

TILE, INC.; LIFE360, INC; and AMAZON.COM, INC.,

*Defendants-Appellants.*

---

On Appeal from the United States District Court
for the Northern District of California
The Honorable Rita F. Lin
District Court Case No. 3:23-cv-04119-RFL

---

## APPELLANTS TILE, INC. AND LIFE360, INC.'S OPENING BRIEF

---

COOLEY LLP
Jeffrey M. Gutkin
(jgutkin@cooley.com)
Max A. Bernstein
(mbernstein@cooley.com)
Travis LeBlanc
(tleblanc@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
(415) 693-2000 (telephone)

COOLEY LLP
Amanda A. Main
(amain@cooley.com)
3175 Hanover Street
Palo Alto, California 94304-1130
(650) 843-5000 (telephone)

*Attorneys for Appellants Tile, Inc. and Life360, Inc.*

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................. 1

II.   STATEMENT OF JURISDICTION ...................................... 3

III.  STATEMENT OF THE ISSUES ........................................... 3

IV.  STATEMENT OF THE CASE ............................................... 4

    A.    Factual Background .................................................... 4

        1.    Plaintiffs Agreed to Tile's Terms of Service and Thus to Binding Arbitration. ............................... 4

            a.    Plaintiff Broad ............................................ 5

            b.    Plaintiff Doe ................................................ 6

        2.    The January 2021 and February 2023 Terms Plaintiffs Initially Agreed to Require Arbitration. ........................................... 7

        3.    Plaintiffs are Bound by the October 2023 Terms. ..................... 9

    B.    Procedural History .................................................. 11

    C.    The District Court's Order Partially Denying Tile's Motion to Compel Arbitration ............................ 12

V.    SUMMARY OF THE ARGUMENT .................................. 14

VI.  STANDARD OF REVIEW .................................................. 15

VII. ARGUMENT ....................................................................... 16

    A.    The October 2023 Terms Govern, Requiring Arbitration ................. 17

        1.    Plaintiffs Agreed to the October 2023 Terms. ......................... 17

            a.    The 2023 Email Provided Plaintiffs With Reasonably Conspicuous Notice of the October 2023 Terms. .......................................... 17

            b.    Plaintiffs' Continued Use Constituted Assent. ............. 19

        2.    The October 2023 Terms Delegated Disputes Over Arbitrability and Validity to the Arbitrator ............................. 23

    B.    In the Alternative, the Terms of Service Plaintiffs Initially Assented to Govern, Also Requiring Arbitration ............................. 24

# TABLE OF CONTENTS
### (continued)

**Page**

    1.    Plaintiffs Concede They Agreed to Arbitration When They Created Their Accounts. ..................................24

    2.    The January 2021 and February 2023 Tile Terms Clearly and Unmistakably Delegate Arbitrability Via Incorporation of the AAA Rules.............................25

         a.    Incorporation of the AAA Rules Constitutes Delegation Regardless of Party Sophistication. ............29

         b.    The Venue Provision Does Not Create Ambiguity. ......31

C.    Even if the Court were to Decide Arbitrability, the Arbitration Agreement Covers Plaintiffs' Claims. ...............................37

    1.    The Plain Language of the Agreement Demonstrates that Plaintiffs' Claims Must be Arbitrated......................................38

    2.    Any Question of Scope Must Be Resolved in Favor of Arbitration. ..................................................41

    3.    The District Court's Carving Up of Claims Is Unworkable. ....................................................42

D.    The Arbitration Agreement Is Enforceable.........................................44

    1.    The Arbitration Agreement Is Not Substantively Unconscionable.........................................................44

    2.    The Arbitration Agreement is Not Procedurally Unconscionable.........................................................49

VIII.  CONCLUSION...........................................................52

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*3M Co. v. Amtex Sec., Inc.*,
  542 F.3d 1193 (8th Cir. 2008) ...........................................................49

*Acosta v. Brave Quest Corp.*,
  733 F. Supp. 3d 920 (C.D. Cal. 2024) ..........................................30, 31

*Am. Express Co. v. Italian Colors Rest.*,
  570 U.S. 228 (2013)...........................................................................3

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011).........................................................................47

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
  475 U.S. 643 (1986).....................................................................16, 42

*Baltazar v. Forever 21, Inc.*,
  62 Cal. 4th 1237 (2016) ...............................................................44, 49

*In re BAM Trading Servs. Inc. Sec. Litig.*,
  733 F. Supp. 3d 854 (N.D. Cal. 2024).........................................27, 30

*Bazine v. Kelly Servs. Glob., LLC*,
  No. 22-cv-07170, 2023 WL 4138252 (N.D. Cal. June 21, 2023) .....................30

*Bell v. Redfin Corp.*,
  No. 20-CV-2264, 2021 WL 5444791 (S.D. Cal. Aug. 12, 2021).......................33

*Blanton v. Domino's Pizza Franchising LLC*,
  962 F.3d 842 (6th Cir. 2020) ....................................................*passim*

*Brennan v. Opus Bank*,
  796 F.3d 1125 (9th Cir. 2015) ..................................................*passim*

*Brinderson-Newberg Joint Venture v. Pac. Erectors, Inc.*,
  971 F.2d 272 (9th Cir. 1992) .............................................................32

*Bushley v. Credit Suisse First Bos.*,
  360 F.3d 1149 (9th Cir. 2004) ...........................................................15

# TABLE OF AUTHORITIES
(continued)

**Page**

*Cape Flattery Ltd. v. Titan Mar., LLC*,
   647 F.3d 914 (9th Cir. 2011) ................................................................. 38

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
   207 F.3d 1126 (9th Cir. 2000) .............................................................. 37

*Coast Plaza Drs. Hosp. v. Blue Cross of Cal.*,
   83 Cal. App. 4th 677 (2000) ................................................................. 38

*Cook v. Univ. of S. Cal.*,
   102 Cal. App. 5th 312 (2024) ............................................................... 45

*In re Cox Enters., Inc. Set-top Cable Television Box Antitrust Litig.*,
   835 F.3d 1195 (10th Cir. 2016) ............................................................ 49

*Cubria v. Uber Techs., Inc.*,
   242 F. Supp. 3d 541 (W.D. Tex. 2017) ................................................. 30

*Dardashty v. Hyundai Motor Am.*,
   745 F. Supp. 3d 986 (C.D. Cal. 2024) .................................................. 39

*Darnaa, LLC v. Google LLC*,
   756 F. App'x 674 (9th Cir. 2018) .......................................................... 50

*Diaz v. Intuit, Inc.*,
   No. 5:15-cv-01778, 2017 WL 4355075 (N.D. Cal. Sept. 29, 2017) .................. 30

*Dream Theater, Inc. v. Dream Theater*,
   124 Cal. App. 4th 547 (2004) ............................................................... 35

*E.E.O.C. v. Waffle House, Inc.*,
   534 U.S. 279 (2002) .............................................................................. 38

*Erickson v. Aetna Health Plans of Cal., Inc.*,
   71 Cal. App. 4th 646 (1999) ................................................................. 41

*In re Facebook Biometric Info. Priv. Litig.*,
   185 F. Supp. 3d 1155 (N.D. Cal. 2016) ................................................ 22

*Fli-Lo Falcon, LLC v. Amazon.com, Inc.*,
   97 F.4th 1190 (9th Cir. 2024) ............................................................... 27

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Fuller v. Bloom Inst. of Tech.*,
    No. 23-CV-01440, 2024 WL 98391 (N.D. Cal. Jan. 9, 2024) .................26, 28

*G.G. v. Valve Corp.*,
    799 F. App'x 557 (9th Cir. 2020)................................................26, 29

*George v. eBay, Inc.*,
    71 Cal. App. 5th 620 (2021) ...............................................................50

*Ghazizadeh v. Coursera, Inc.*,
    737 F. Supp. 3d 911 (N.D. Cal. 2024)...........................................17, 21

*Heckman v. Live Nation Ent., Inc.*,
    120 F.4th 670 (9th Cir. 2024) ............................................................51

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
    586 U.S. 63 (2019)........................................................................1, 26

*Holley-Gallegly v. TA Operating, LLC*,
    74 F.4th 997 (9th Cir. 2023) ..............................................................15

*Huffman v. Hilltop Cos.*,
    747 F.3d 391 (6th Cir. 2014) ..............................................................41

*Ill. Cas. Co. v. B&S of Fort Wayne Inc.*,
    235 N.E.3d 827 (Ind. 2024) ...............................................................29

*Jackson v. Amazon.com, Inc.*,
    65 F.4th 1093 (9th Cir. 2023) ...............................................17, 18, 19

*Johnson v. Walmart Inc.*,
    57 F.4th 677 (9th Cir. 2023) ..............................................................16

*Kamath v. Coinbase, Inc.*,
    C23-3533, 2024 WL 950163 (N.D. Cal. Mar. 5, 2024) .....................22

*Keebaugh v. Warner Bros. Entm't*,
    100 F.4th 1005 (9th Cir. 2024) ..........................................................24

*Knutson v. Sirius XM Radio Inc.*,
    771 F.3d 559 (9th Cir. 2014) ..............................................................19

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Kristian v. Comcast Corp.*,
446 F.3d 25 (1st Cir. 2006) ...............................................................41

*Lennar Homes of Cal., Inc. v. Stephens*,
232 Cal. App. 4th 673 (2014) .............................................................50

*Lueras v. BAC Home Loans Servicing, LP*,
221 Cal. App. 4th 49 (2013) ...............................................................32

*McLellan v. Fitbit, Inc.*,
No. 3:16-cv-00036, 2018 WL 1913832 (N.D. Cal. Jan. 24, 2018) ....................25

*In re Mercury Interactive Corp. Sec. Litig.*,
618 F.3d 988 (9th Cir. 2010) ..............................................................24

*Mey v. DIRECTV, LLC*,
971 F.3d 284 (4th Cir. 2020) ..............................................................48

*Mohamed v. Uber Techs., Inc.*,
848 F.3d 1201 (9th Cir. 2016) ..............................................23, 34, 35

*Morris v. Redwood Empire Bancorp*,
128 Cal. App. 4th 1305 (2005) ...........................................................50

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) ...............................................................................3, 41

*Nat. Res. Def. Council v. Kempthorne*,
621 F. Supp. 2d 954 (E.D. Cal. 2009) ...............................................34

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) ............................................................17

*O'Connor v. Uber Techs., Inc.*,
904 F.3d 1087 (9th Cir. 2018) ............................................................15

*OTO, L.L.C. v. Kho*,
8 Cal. 5th 111 (2019) ....................................................................50, 51

*Parm v. Bluestem Brands, Inc.*,
898 F.3d 869 (8th Cir. 2018) ..............................................................48

## TABLE OF AUTHORITIES
(continued)

Page

*Patrick v. Running Warehouse, LLC*,
  93 F.4th 468 (9th Cir. 2024) ............................................................18

*Preston v. Ferrer*,
  552 U.S. 346 (2008)..........................................................................16

*Ramirez v. Charter Commc'ns, Inc.*,
  16 Cal. 5th 478 (2024)......................................................................45

*Ramos v. Super. Ct.*,
  28 Cal. App. 5th 1042 (2018) ......................................................38, 39

*Razzaghi v. UnitedHealth Grp.*,
  No. SACV 18-01223, 2018 WL 7824552 (C.D. Cal. Sept. 17,
  2018) .................................................................................................27

*Rent-A-Ctr., W., Inc. v. Jackson*,
  561 U.S. 63 (2010)............................................................................23

*Republic of Nicaragua v. Standard Fruit Co.*,
  937 F.2d 469 (9th Cir. 1991) ............................................................49

*Revitch v. DIRECTV, LLC*,
  977 F.3d 713 (9th Cir. 2020) ................................................46, 47, 48

*Sadlock v. Walt Disney Co.*,
  No. 22-CV-09155, 2023 WL 4869245 (N.D. Cal. July 31, 2023) ..............18, 20

*Sanchez v. Valencia Holding Co.*,
  61 Cal. 4th 899 (2015) ......................................................................44

*Sifuentes v. Dropbox, Inc.*,
  No. 20-CV-07908, 2022 WL 2673080 (N.D. Cal. June 29, 2022) ...................19

*Simula, Inc. v. Autoliv, Inc.*,
  175 F.3d 716 (9th Cir. 1999) ............................................................38

*Taylor v. Shutterfly, Inc.*,
  No. 18-CV-00266, 2018 WL 4334770 (N.D. Cal. Sept. 11, 2018)....................34

## TABLE OF AUTHORITIES
(continued)

**Page**

*In re Tesla Advanced Driver Assistance Sys. Litig.*,
   No. 22-cv-05240, 2023 WL 6391477 (N.D. Cal. Sept. 30, 2023) .....................36

*Thomas v. Cricket Wireless, LLC*,
   506 F. Supp. 3d 891 (N.D. Cal. 2020) ..................................................................46

*Tompkins v. 23andMe, Inc.*,
   840 F.3d 1016 (9th Cir. 2016) .......................................................................38, 41

*Torrecillas v. Fitness Int'l, LLC*,
   52 Cal. App. 5th 485 (2020) ................................................................................45

*TotalEnergies E&P USA, Inc. v. MP Gulf of Mexico, LLC*,
   667 S.W.3d 694 (Tex. 2023) ...............................................................................28

*Ward v. Goossen*,
   71 F. Supp. 3d 1010 (N.D. Cal. 2014) ................................................................32

*Webber v. Uber Techs., Inc.*,
   No. 18-cv-2941, 2018 WL 10151934 (C.D. Cal. Sept. 5, 2018).........................21

*Wells Fargo Advisors, LLC v. Sappington*,
   884 F.3d 392 (2d Cir. 2018) ................................................................................27

*West v. Uber Techs.*,
   C18-3001, 2018 WL 5848903 (C.D. Cal. Sept. 5, 2018) ...................................22

*Yahoo Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*,
   14 Cal. 5th 58 (2022) ..........................................................................................32

**Statutes**

9 U.S.C.
   § 2 ........................................................................................................................16
   § 3 ........................................................................................................................11
   § 16(a) ....................................................................................................................3

28 U.S.C. § 1331 .........................................................................................................3

# TABLE OF AUTHORITIES
(continued)

**Page**

Cal. Civ. Code

§ 1636................................................................................38

§ 1638................................................................................38

§ 1644................................................................................38

## I.  INTRODUCTION

Plaintiffs-Appellees Melissa Broad and Jane Doe ("Plaintiffs") entered into binding arbitration agreements when signing up for Tile accounts.  Consequently, their claims in this action, which arise **solely** from alleged defects with Tile's products and services and which fall within the scope of the arbitration agreements they made, can only be heard in arbitration.

Much is not in dispute.  Plaintiffs **concede** they agreed to the January 2021 (Plaintiff Broad) and February 2023 (Plaintiff Doe) Tile Terms of Service ("Tile Terms" or "Terms") when they created Tile accounts.  These two versions of the Tile Terms include the same mandatory arbitration agreement.  Tile then updated its Terms of Service, and the arbitration agreement therein, in October 2023.  Plaintiffs do not dispute that Tile sent notice of this update to both of them nor do they dispute that they both continued to use Tile's services after receiving that notice.  As such, and contrary to the holding below, Plaintiffs are bound by the October 2023 Tile Terms.

The October 2023 Tile Terms include an express delegation clause.  This clause must be honored and any further analysis of arbitrability must be left to the arbitrator.  *See Henry Schein, Inc. v. Archer & White Sales, Inc*., 586 U.S. 63, 68 (2019) ("When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract.").  The decision of the district court

must therefore be reversed.

The earlier Tile Terms, published in January 2021 and February 2023, likewise delegate disputes as to arbitrability. The result is therefore the same regardless of which Terms apply. Both earlier versions incorporate the American Arbitration Association ("AAA") rules, which delegate questions of arbitrability to the arbitrator. The decision of the district court must therefore be reversed for this additional reason.

Finally, even were this Court to decide questions of scope and enforceability, which it should not, Plaintiffs' claims are plainly subject to arbitration. Their claims regarding the purported design flaws in Tile products and services fall well within the scope of the parties' arbitration agreements which encompass ***any and all claims*** relating to "any Tile product or service and its marketing[.]" (2-ER-117, 199.)

There is also no colorable argument that the arbitration agreements at issue are procedurally unconscionable because the Tile Terms do not hide the arbitration provision, and instead call it out in clear, bold language at the start of the agreement, and then again in greater detail in a clearly-labeled section explaining the arbitration procedures. Nor is there any substantive unconscionability, as the terms Plaintiffs challenge are standard and routinely enforced by courts.

Tile respectfully submits that the district court's order denying Tile's motion to compel arbitration represents the very "judicial hostility to arbitration" that the

Federal Arbitration Act ("FAA") was enacted to prevent. *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 232-33 (2013). The decision contradicts the guidance to resolve "any doubts concerning the scope of arbitrable issues . . . in favor of arbitration," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983), and is incorrect as a matter of law.

Tile requests that this Court reverse the district court and compel arbitration of all claims brought by Broad and Doe.

## II. STATEMENT OF JURISDICTION

The district court had jurisdiction under 28 U.S.C. § 1331. This Court has jurisdiction under 9 U.S.C. § 16(a). The district court entered the order on appeal on December 19, 2024. (3-ER-325–26.) Defendants-Appellants timely filed their notice of appeal on January 17, 2025. (3-ER-312.)

## III. STATEMENT OF THE ISSUES

1. Whether Plaintiffs assented to the October 2023 Terms, in addition to the January 2021 and February 2023 Terms, to which they concede assent and the district court ruled they had agreed.

2. Whether the district court erred in deciding arbitrability itself, instead of allowing an arbitrator to decide arbitrability, where the parties' agreements delegated arbitrability to the arbitrator.

3. If the issue was properly before the district court, whether this dispute was

subject to mandatory arbitration.

4. If the issue was properly before the district court, whether the arbitration agreements are unconscionable.

## IV. STATEMENT OF THE CASE

### A. Factual Background

#### 1. Plaintiffs Agreed to Tile's Terms of Service and Thus to Binding Arbitration.

Tile is a consumer electronics company that produces, among other items, the "Tile Tracker," a Bluetooth-enabled tracker that can be used to locate missing items. (2-ER-209, ¶ 27.) For example, a Tile Tracker can be attached to a key ring, placed inside a laptop case, or stowed in a suitcase pocket. Tile users download the corresponding Tile app, and if the item gets lost, the user opens the Tile app on their smartphone and can attempt to find where the Tile Tracker, and therefore the item, is. (2-ER-78.) Life360 has been Tile's parent company since 2022. (2-ER-92, ¶ 1.) The corresponding Tile app also provides features like Scan and Secure, which allows users to scan for any Tiles or Tile-enabled devices (known or unknown) near them. (2-ER-217.)

Plaintiffs Broad and Doe allege that Tile Trackers have been misused by third parties to track people, including Plaintiffs, without their consent. (2-ER-216, ¶ 47–49.) In connection with this alleged unwanted tracking, Plaintiffs brought claims of negligence, design defects, unjust enrichment, intrusion upon seclusion, and

violations of the California Constitutional Right to Privacy, the California Invasion of Privacy Act, and the California Unfair Competition Law. (2-ER-245–54.)

Plaintiffs are both Tile customers who created Tile accounts. (2-ER-92, 96, ¶¶ 5, 13.) In doing so, both agreed to Tile's Terms of Service, including its binding arbitration clause, as a condition of creating an account and using the Tile app. (2-ER-78–81.)

### a.    Plaintiff Broad

Plaintiff Broad purchased a Tile tracker in 2021 and created a Tile account on June 11, 2021. (2-ER-64, 92, ¶ 5.) She was shown the screen displayed as Figure 1 below and clicked "Sign Up" to manifest her assent to the Terms. (2-ER-93, ¶ 6.) When Plaintiff Broad signed up for a Tile account, the January 2021 version of the Tile Terms (the "January 2021 Terms") were in effect and the sign-up flow shown in Figure 1 linked to them. (*Id.*, ¶ 7.) Plaintiff Broad concedes, and the district court found, that she agreed to the January 2021 Terms. (1-ER-8.)



**Figure 1**

Along with signing up for a Tile account, Plaintiff Broad also purchased a Premium Tile subscription in 2021, and renewed this subscription in 2022 and 2023. (2-ER-94–95.) Plaintiff Broad said her partner (and alleged stalker) had access to her Tile account. (2-ER-64, ¶ 5.) Plaintiff Broad alleged that one of the Tile trackers she discovered in her car that was allegedly being used to track her location without permission was the Tile tracker she purchased in 2021. (2-ER-64, ¶ 6.)

### b. Plaintiff Doe

Plaintiff Doe created a Tile account on July 6, 2023. (2-ER-96, ¶ 13.) She was shown the screen displayed as Figure 2 below and clicked the checkbox next to the language "I have read and accept Tile's Terms of Service[.]" (*Id.*, ¶ 14.) When Plaintiff Doe signed up for a Tile account, the February 16, 2023 version of the Tile Terms (the "February 2023 Terms") were in effect, and the sign-up flow shown in Figure 2 linked to them. (2-ER-96, ¶¶ 14-15.) Plaintiff Doe concedes and the district court found that she agreed to the February 2023 Terms. (1-ER-8.)



**Figure 2**

Thus, when Plaintiff Broad signed up for a Tile account, the January 2021 Terms were in effect.  (2-ER-79, 101–119.)  When Plaintiff Doe signed up for a Tile account, the February 2023 Terms were in effect.  (2-ER-80–81, 179–203.)

### 2. The January 2021 and February 2023 Terms Plaintiffs Initially Agreed to Require Arbitration.

Both the January 2021 Terms and February 2023 Terms include a mandatory arbitration agreement that requires Plaintiffs to arbitrate disputes "arising out of or relating to," among other things, "any Tile product or service and its marketing" and "the relationship between [Plaintiffs] and Tile[.]"  (2-ER-117, 199.)  The arbitration agreement in full, titled "Claims Covered by Arbitration," provides:

> All disputes, claims or controversies arising out of or relating to this Agreement, any Tile product or service and

its marketing, or the relationship between you and Tile ("Disputes") shall be determined exclusively by binding arbitration. This includes claims that accrued before you entered into this Agreement. The only Disputes not covered by this Section are claims (i) regarding the infringement, protection or validity of your, Tile's or Tile's licensors' trade secrets or copyright, trademark or patent rights; (ii) if you reside in Australia, to enforce a statutory consumer right under Australia consumer law; and (iii) brought in small claims court.

(2-ER-117, 199–200.)

The January 2021 Terms and February 2023 Terms incorporate by reference the AAA rules for arbitration. (2-ER-118, 200.) They provide, "[t]he arbitration shall be administered by the American Arbitration Association ('AAA') under its Commercial Arbitration Rules and, where appropriate the AAA's Supplementary Procedures for Consumer Related Disputes ('AAA Consumer Rules')[.]" (*Id*.) The Tile Terms go on to explain that these rules "are available at the AAA website www.adr.org." (*Id*.) As Plaintiffs concede, if a user goes to www.adr.org, there is a tab labeled "Rules, Forms, & Fees" that houses the AAA rules—including the Commercial and Consumer Arbitration Rules that both have the following unambiguous delegation clause: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." (1-ER-6.)

The Terms also include a notice to Tile users on the first page and second

paragraph of the Terms, to "review [the Terms] frequently" as Tile "may update [them] from time to time[.]" (2-ER-101, 179.) In the same paragraph, Tile informs its users that their "continued use of Tile Services means [they] accept the changes" to the Terms. (*Id*.)

In a separate section unrelated to the arbitration agreement, titled "General Provisions," both the January 2021 Terms and February 2023 Terms provide:

> The exclusive jurisdiction for all disputes, claims or controversies arising out of or relating to these Terms or the breach, termination, enforcement, interpretation or validity thereof or the use of the Services or Content will be the state and federal courts located in the Northern District of California and you and Tile each waive any objection to jurisdiction and venue in such courts. If any part of these Terms is determined to be invalid or unenforceable by a court of competent jurisdiction, that provision will be enforced to the maximum extent permissible and the remaining provisions of these Terms will remain in full force and effect.

(2-ER-116, 198–199.)

### 3. Plaintiffs Are Bound by the October 2023 Terms.

As discussed, the Terms of Service to which Plaintiffs concede they agreed at sign-up informed them that the Terms might change and that their continued use of Tile's products or services would manifest their assent to the updated terms. (2-ER-101, 179.) Subsequently, Plaintiffs, like all Tile users, received an email on October 26, 2023, with an updated version of the Terms of Service (the "2023 Email Notice") shown as Figure 3 below. (2-ER-95, ¶ 11.) The body of that email began with a

large header, "Updated Terms of Service and Privacy Policy," and provided a hyperlink that connects to the October 2023 Terms. (2-ER-174–75.) The email advised users that "[i]f you continue to use any of our apps, or access our websites (other than to read the new terms) on or after November 26, 2023, you are agreeing to the new Terms of Service[.]" (2-ER-175.)



**Figure 3**

After receiving this email, Plaintiffs Broad and Doe continued to use the Tile app, thereby agreeing to the updated Terms. (2-ER-95, ¶ 12; 2-ER-97, ¶ 18.) Plaintiff Broad renewed her premium Tile subscription in 2023. (2-ER-65.) Similarly, Plaintiff Doe used the Tile app and the Scan and Secure feature in March 2024. (2-ER-68.)

Like prior Tile Terms, the updated October 2023 Terms include a mandatory arbitration agreement. Specifically, the October 2023 Terms require arbitration of disputes relating to "any and all use of the [Tile] Products or Services," including claims under "any [] legal [] theory[.]" (2-ER-142.) The October 2023 Terms also explain that the user agrees to delegate to the arbitrator "all threshold issues of arbitrability including the validity, enforceability or scope" of the agreement to arbitrate. (*Id.*) Thus, the parties' eventual arbitrator has sole authority to resolve all disputes as to these subjects.

## B. Procedural History

The initial complaint in this action, which did not include Plaintiffs Broad and Doe, was filed on August 14, 2023. (3-ER-319.) Broad and Doe were added in the First Amended Complaint, which includes a putative class of Tile users who were allegedly stalked and another class of all U.S. residents, who Plaintiffs assert are at risk of being stalked with a Tile tracker. (2-ER-242–43, ¶ 165.)

On June 7, 2024, Tile filed its Motion to Compel Arbitration. (3-ER-323.) In

that motion, Tile argued that because the Plaintiffs assented to mandatory arbitration in the Tile Terms of Use, the matter is "referable to arbitration" under the FAA, *see* 9 U.S.C. § 3, and the district court should refer the matter to arbitration and stay its proceedings pending the arbitrator's determination. (2-ER-82–89.) Plaintiffs opposed both the argument to compel arbitration and to stay the proceedings pending arbitration. (2-ER-49–60.) On August 27, 2024, the district court held a hearing on the motion to compel arbitration. (3-ER-324–25.) On December 19, 2024, the district court partially granted and partially denied the motion to compel arbitration. (1-ER-24.)

## C. The District Court's Order Partially Denying Tile's Motion to Compel Arbitration

The district court granted Tile's motion to compel arbitration for Plaintiff Doe's and Plaintiff Broad's claims that relied on their own use of a Tile product or service or a third party's misuse of their own Tile products that Plaintiffs had purchased. (1-ER-20–22.) However, the district court denied Tile's motion to compel as to the remaining claims. (1-ER-8–20.) Specifically, the district court found as follows:

- **The October 2023 Terms:** The district court acknowledged that Plaintiffs Broad and Doe entered into an arbitration agreement with Tile, "which they agreed to when creating their Tile accounts" in early 2021 and July 2023, respectively. (1-ER-8.) Those terms informed Plaintiffs to "review [the

terms] frequently" as they "may change from time to time." (2-ER-101, 179.) The district court also acknowledged that Tile emailed "Tile accountholders notifying them of an 'Updated Terms of Service,'" "hyperlink[ed] to the October 2023 Terms," and "informed users" that their "continue[d] [] use [of] any of [Tile's] apps" demonstrated agreement to the new terms. (1-ER-9.) However, the district court disagreed that Plaintiffs Broad and Doe "had actual knowledge" or "were on inquiry notice" of the October 2023 Terms and found they did not assent to these terms. (1-ER-9, 11.)

- **<u>Delegation Clause</u>:** The district court acknowledged that the January 2021 and February 2023 Terms "expressly incorporate the AAA's rules" (1-ER-12), which this Court recognizes as clear and unmistakable evidence that the parties agreed to arbitrate disputes as to arbitrability or the validity of their arbitration agreement. *See, e.g.*, *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). Yet the district court departed from that precedent by declining to delegate the threshold questions to the arbitrator, finding instead that the venue provision in a separate section of the contract (quoted above) could not be reconciled with the delegation term and, thus, created ambiguity. (1-ER-13.)

- **<u>Substantive Unconscionability</u>:** The district court concluded that the arbitration agreement is substantively unconscionable to the extent it

encompasses claims relating to third-party conduct misusing Tile's products or services. (1-ER-16.) Despite several decisions holding similarly broad arbitration agreements were valid and enforceable, the district court found that such a broad interpretation of Tile's arbitration agreement offers no limiting principle and would defy reasonable consumer expectations. (1-ER-17–18.)

- **<u>Procedural Unconscionability</u>:** The district court reiterated its reasoning, that "it is beyond a consumer's reasonable expectation that this provision would cover claims" of third-party misuse of Tile trackers and held that this constituted surprise. (1-ER-19.) In the alternative, the district court found that the purported ambiguity between the incorporated AAA rules in the arbitration agreement and the venue clause in the General Provisions section of the Terms also constitutes surprise. (1-ER-20.)

## V. SUMMARY OF THE ARGUMENT

Plaintiffs assented to Tile's October 2023 Terms, which explicitly delegate arbitrability to the arbitrator. The Court need look no further and can compel arbitration on that basis alone. In the alternative, even if only Tile's earlier terms apply, incorporation of the AAA rules constitutes clear and unmistakable evidence that the parties delegated arbitrability, as the great bulk of courts looking at this issue have concluded. This is true regardless of the sophistication of the parties. Moreover, the separate venue jurisdiction does not create ambiguity, as it is easily

- 14 -

harmonized with a delegation of arbitrability.

The Court therefore should compel arbitration of the gateway issues of scope and unconscionability. However, even should this Court decide these issues, the earlier arbitration agreements—which cover "[a]ll disputes, claims or controversies arising out of or relating to this Agreement, any Tile product or service and its marketing, or the relationship between you and Tile" (2-ER-117, 199)—clearly encompasses Plaintiffs' claims that Tile negligently designed and marketed Tile trackers, defectively designed the Tile tracker, violated Plaintiffs' privacy rights, and engaged in conduct that violates California's Unfair Competition Law. *See* (2-ER-245–54.) The scope of Tile's arbitration agreement here is both clear and unremarkable. Moreover, even if there were any doubt, it must be resolved in favor of arbitration.

Further, the arbitration agreement is not unconscionable. Its scope is limited, and courts routinely uphold similar language. The facts of this case are a far cry from those the district court relied on, which involved claims against different parties than the parties to the arbitration agreements. These claims must be arbitrated.

## VI.  STANDARD OF REVIEW

This Court reviews *de novo* the denial of a motion to compel arbitration. *Holley-Gallegly v. TA Operating, LLC*, 74 F.4th 997, 1000 (9th Cir. 2023) (citing *Bushley v. Credit Suisse First Bos.*, 360 F.3d 1149, 1152 (9th Cir. 2004)). Any

factual findings underlying the district court's order are reviewed for clear error. *Id.* (citing *O'Connor v. Uber Techs., Inc.*, 904 F.3d 1087, 1093 (9th Cir. 2018)).

## VII. ARGUMENT

The Federal Arbitration Act (FAA) applies to any contract, like the present one, "evidencing a transaction involving commerce[.]" 9 U.S.C. § 2. Congress enacted the FAA to overcome "longstanding judicial hostility to arbitration agreements and place them upon the same footing as other contracts." *Johnson v. Walmart Inc.*, 57 F.4th 677, 680 (9th Cir. 2023) (internal quotation marks and citation omitted). The FAA "mandates arbitration on issues to which an arbitration agreement has been signed." *Id.* (alterations omitted) (citation omitted). Courts apply "general state-law principles of contract interpretation"—here, California law—"to decide whether a contractual obligation to arbitrate exists." *Id.* at 681 (citation omitted). If so, "there is a presumption of arbitrability" and the dispute must be referred to arbitration "unless it may be said with positive assurance that the arbitration clause is ***not susceptible of an interpretation*** that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (emphasis added) (citation omitted). "[A]s the Supreme Court has often said, parties don't give up any of their substantive rights when they choose to arbitrate an issue; they simply select a different forum to resolve their dispute." *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 852 (6th Cir. 2020) (citing *Preston v. Ferrer*,

552 U.S. 346, 359 (2008)).

### A.     The October 2023 Terms Govern, Requiring Arbitration.

The district court erroneously held that Plaintiffs were not bound to the October 2023 Terms.  Tile met its burden by demonstrating Plaintiffs received reasonably conspicuous notice of the October 2023 Terms and that Plaintiffs assented through their continued use of Tile's products and services.  *See Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1099 (9th Cir. 2023) (Under California law, a valid contract requires "that the party relying on the contractual provision establish that the other party had notice and gave some indication of assent to the contract.").  Further, the October 2023 Terms clearly and unmistakably delegate threshold questions related to arbitrability to the arbitrator to decide.

#### 1.     Plaintiffs Agreed to the October 2023 Terms.

##### a.     The 2023 Email Provided Plaintiffs With Reasonably Conspicuous Notice of the October 2023 Terms.

To evaluate whether a party had reasonably conspicuous notice of terms in an online contract, courts look to the "design and content of the . . . agreement's webpage[,]" and whether it would put a "reasonably prudent user on inquiry notice of the terms of the contract."  *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014).  The district court failed to analyze this prong (1-ER-9), but the design and content of the 2023 Email Notice provided Plaintiffs unmistakable and more than sufficient notice of the updated Terms.  The 2023 Email Notice (*See* 2-

ER-174–75) includes a large "header that clearly states that the email included updates to the Terms, the Terms of Service hyperlink is in blue font and stands out from the remaining text," and the notice provides a brief "description of the Terms" that are being updated. *Ghazizadeh v. Coursera, Inc.*, 737 F. Supp. 3d 911, 932 (N.D. Cal. 2024); *see also Sadlock v. Walt Disney Co.*, No. 22-CV-09155, 2023 WL 4869245, at *12 (N.D. Cal. July 31, 2023) (emails with updates gave plaintiff reasonably conspicuous notice of the agreement where subject line notified users of the update, the header repeated the language regarding updates, and the email contained "clear" hyperlink to agreement).

Aside from being visually sufficient, the 2023 Email Notice adequately notified Plaintiffs of the updated terms. *Jackson*, 65 F.4th at 1100. The 2023 Email Notice states Tile has "updated the terms" and informs users that if they "continue to use any of [Tile's] apps, or access our websites (other than to read the new terms) on or after November 26, 2023, [they] are agreeing to the new Terms of Service[.]" (2-ER-79.) The October 2023 Terms simply replace AAA with JAMS as the arbitral forum and explicitly restate the existing delegation agreement[1] from the earlier

---

[1] In October 2023, prior Ninth Circuit precedent recognized delegation of arbitrability through incorporation of the AAA rules but had not yet confirmed whether incorporation of JAMS rule alone would suffice. *See Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 481 (9th Cir. 2024). Tile restated the delegation clause expressly, preserving the parties' original agreement to delegate threshold questions embodied in the AAA rules. (2-ER-142.) This clarification ensured continuity with the terms Plaintiffs had already accepted under the January 2021 and

- 18 -

Terms. The district court incorrectly characterized the October 2023 Terms as containing a "broader arbitration agreement." (1-ER-9.) Apart from switching the administrative agency, the parties' legal rights and obligations were not materially modified under the October 2023 Terms. (2-ER-140–141); *cf. Sifuentes v. Dropbox, Inc.*, No. 20-CV-07908, 2022 WL 2673080, at *4 (N.D. Cal. June 29, 2022) (no adequate notice found where 2014 email introduced arbitration clause for the first time, and original 2011 terms with a generic continued-use provision could not bind plaintiff to such a material change).

Thus, the 2023 Email Notice provided Plaintiffs with adequate notice.

### b. Plaintiffs' Continued Use Constituted Assent.

The district court erred in holding that Plaintiffs did not assent (1-ER-10), applying a standard that ignored established law permitting assent through continued use. By giving dispositive weight to Plaintiffs' subjective awareness of the 2023 Email Notice, the court ignored the prevailing standard, that "[c]ourts must evaluate 'whether the outward manifestations of consent would lead a reasonable person to believe the offeree has assented to the agreement.'" *Jackson*, 65 F.4th at 1099 (quoting *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014)). The relevant question is not whether Plaintiffs subjectively recall receiving the notice,

---

February 2023 Terms (1-ER-8) and was a procedural adjustment maintaining legal enforceability.

but whether their conduct—viewed objectively in the context of their contractual obligations—signaled assent.  Here, it did.

Plaintiffs undisputedly agreed to the January 2021 and February 2023 Terms, which both include a binding arbitration clause and a clear continued-use provision stating that future updates would become binding upon continued use of Tile's Service.  (2-ER-101, 179.)  And as explained in Section VII.A.1, *supra*, Plaintiffs had conspicuous notice of the Updated Terms.  Moreover, regardless of their subjective perspectives, their outward conduct led Tile to reasonably conclude that their continued use of Tile's apps and services constituted assent.

In her declaration, Plaintiff Broad stated that she keeps her Tile account active and permits automatic billing at the request of law enforcement.  (2-ER-65.)  She acknowledged accessing the Tile app in January 2024 for legal reasons and stated that she periodically opens the app to check location-sharing settings.  (*Id*.)  Tile's internal records show a connection to a smart home device in January 2024 and access to the app again in April 2024.  (2-ER-95.)  Obviously, nothing in the record shows that Tile was aware of Plaintiff Broad's reasons for using the app, nor did she ever notify Tile of those reasons or attempt to opt out of the arbitration requirement.

Broad also acknowledges that she did in fact receive the 2023 Email Notice.  (2-ER-66.)  Further, nothing in the record shows that Broad ever contacted Tile to clarify that she no longer wished to use this account or that her account was being

maintained for investigative purposes or that she wished to opt out of arbitration, which she could have each time the terms were updated. (2-ER-95 ¶ 12, 138); *see Sadlock*, 2023 WL 4869245, at *12 (continued use after receiving email notice of updated terms constituted assent where plaintiff did not dispute the terms or discontinue use of the service). Similarly here, Broad's conduct of continued use objectively constitutes assent.

Plaintiff Doe's conduct leads to the same result. She claims that she accessed the app in March 2024 in order to use Tile's Scan and Secure feature. (2-ER-68.) She purposefully and affirmatively initiated her use of Tile's services after the October 2023 Terms were already in effect. Further, Doe never contends she did not receive the Email Notice. (2-ER-69.) When a user agrees to a continued-use provision, receives notice of updated terms, and continues using the service without informing the provider of any contrary intent, their failure to review the new terms does not preclude a finding that their continued use constitutes assent. *See, e.g.*, *Ghazizadeh*, 737 F. Supp. 3d at 933–94 (finding assent where original terms containing continued-use provision, combined with continued use, sufficed to demonstrate manifestation of assent to updated terms sent directly to email address on file, even when plaintiff did not open the email or read the terms).

The district court's decision diverges from the weight of authority holding that when a company provides notice of updated terms through email, after expressly

reserving the right to update its terms in that manner in an admittedly agreed to earlier iteration, and a consumer continues to use the product or service, that is all that is needed to demonstrate assent. *See, e.g.*, *Webber v. Uber Techs., Inc.*, No. 18-cv-2941, 2018 WL 10151934, at \*4 (C.D. Cal. Sept. 5, 2018) (finding that mass email sent to all users of rideshare app with updated terms and continued-use provision was sufficient to establish that plaintiffs had reasonable notice of new terms and assented through continued use of the rideshare app); *Kamath v. Coinbase, Inc.*, C23-3533, 2024 WL 950163, at \*4 (N.D. Cal. Mar. 5, 2024); *West v. Uber Techs.*, C18-3001, 2018 WL 5848903, at \*5 (C.D. Cal. Sept. 5, 2018); *In re Facebook Biometric Info. Priv. Litig.*, 185 F. Supp. 3d 1155, 1167 (N.D. Cal. 2016). Affirming the district court's decision would create a *per se* rule ***requiring subjective awareness*** and affirmative re-consent for any modifications to consumer contracts. Such a rule would invite strategic avoidance of contractual terms and disrupt long-settled practices in digital contracting. The record shows that Plaintiffs previously agreed to terms that included an arbitration clause, a delegation clause, and a continued-use clause. (2-ER-101, 117–18; 2-ER-179, 199–200.) The record also shows that, after Plaintiffs received clear and conspicuous notice of the updated October 2023 Terms, they continued using the Tile app. (2-ER-65–69.) Nothing more is needed to demonstrate Plaintiffs' assent and bind them to the October 2023 Terms.

**2.      The October 2023 Terms Delegated Disputes Over Arbitrability and Validity to the Arbitrator.**

As discussed, Plaintiffs Broad and Doe assented to the October 2023 Terms through their continued use of Tile's products.  *See* Section VII.A.1, 2, *supra*; (2-ER-65–69.)  The October 2023 Terms unmistakably delegate disputes concerning arbitrability to the arbitrator.  Specifically, the October 2023 Terms state that "all threshold issue[s] of arbitrability including the validity, enforceability or scope" are to be determined solely by the arbitrator, not the Court.  (2-ER-142.)  The Ninth Circuit has held that nearly identical arbitration and delegation provisions constitute a clear and unmistakable intent to delegate threshold issues.  *See Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1209 (9th Cir. 2016) (finding language "delegat[ing] to the arbitrators the authority to decide issues relating to the 'enforceability, revocability or validity of the Arbitration Provision'. . . clearly and unmistakably indicates [the parties'] intent for the arbitrators to decide the threshold question of arbitrability" (citation omitted)).  Thus, this Court should reverse the district court's decision, as questions about whether this dispute is within the scope of the agreement to arbitrate and whether the agreement is unconscionable are properly delegated to the arbitrator.  *See Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 66-73 (2010) (delegation clause gives arbitrator "exclusive authority to resolve any dispute related to the interpretation, applicability, enforceability or formation of this Agreement").

**B.** **In the Alternative, the Terms of Service Plaintiffs Initially Assented to Govern, Also Requiring Arbitration.**

**1.** **Plaintiffs Concede They Agreed to Arbitration When They Created Their Accounts.**

As the district court explained, "[t]here is no dispute that *an* agreement to arbitrate was formed in this case." (1-ER-8.) Even were the Court to conclude that the October 2023 terms do not govern (they do) both Plaintiffs agreed to arbitrate disputes with Tile by agreeing to Tile's terms, which at all relevant times included mandatory arbitration agreements. Plaintiffs have waived any argument to the contrary.[2] (*Id.* ("Plaintiffs Broad and Doe do not dispute that they are bound by the January 2021 and February 2023 Terms").)

Plaintiffs Broad and Doe both completed the Tile sign-up flow, which included standard and valid agreements binding users to the Tile Terms. *See* Section IV.A., *supra*. The straightforward Tile sign-up flows Plaintiffs navigated included conspicuous language unambiguously stating that the user accepted Tile's Terms; these Terms were prominently hyperlinked, and Plaintiffs had to click the "Sign Up" button immediately below to create their account. Plaintiff Doe additionally had to

---

[2] Because Plaintiffs did not dispute that they assented to the applicable terms upon signing up for their Tile accounts, any arguments to the contrary were not developed properly, nor did Tile have an opportunity to respond. *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010) ("Although no bright line rule exists to determine whether a matter [h]as been properly raised below, an issue will generally be deemed waived on appeal if the argument was not raised sufficiently for the trial court to rule on it." (internal quotation marks and citation omitted)).

click a checkbox further indicating agreement to the Terms. (2-ER-93, 96, ¶¶ 6, 14–15.) This Court recently reversed and remanded the denial of a motion to compel arbitration based on a "sign-in wrap" similar to the one Tile utilized here. *See Keebaugh v. Warner Bros. Entm't*, 100 F.4th 1005, 1014 (9th Cir. 2024) (finding defendant provided reasonable notice where it "require[d] individual users to press a 'Play' button"); *see also McLellan v. Fitbit, Inc.*, No. 3:16-cv-00036, 2018 WL 1913832, at *2 (N.D. Cal. Jan. 24, 2018) (referring to a nearly identical sign-up flow to as "a classic 'clickwrap' agreement").

There is no reasonable dispute that Plaintiffs Broad and Doe formed contracts with Tile that include a mandatory arbitration requirement.

### 2. The January 2021 and February 2023 Tile Terms Clearly and Unmistakably Delegate Arbitrability via Incorporation of the AAA Rules.

Both the January 2021 Terms (that Plaintiff Broad originally agreed to) and the February 2023 Terms (that Plaintiff Doe originally agreed to) likewise delegate threshold questions of arbitrability and validity to the arbitrator. The relevant Tile Terms call for the use of the AAA rules: "The arbitration shall be administered by the American Arbitration Association ('AAA') under its Commercial Arbitration Rules and, where appropriate the AAA's Supplementary Procedures for Consumer Related Disputes ('AAA Consumer Rules')[.]" (2-ER-118, 200.) The Tile Terms go on to explain that these rules "are available at the AAA website www.adr.org."

- 25 -

(*Id*.)  Plaintiffs themselves admit that if a user goes to www.adr.org, there is a tab labeled "Rules, Forms, & Fees" that houses the AAA rules—including the Commercial and Consumer Arbitration.  (2-ER-53.)  The AAA Rules provide, "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."  (1-ER-6.)

The Supreme Court "has consistently held that parties may delegate threshold arbitrability questions to the arbitrator, as long as the parties' agreement does so by "clear and unmistakable" evidence.  *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019).  And "if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue."  *Id.*  The incorporation of the AAA rules constitutes such "clear and unmistakable" evidence that the parties agreed to arbitrate arbitrability.  *Brennan*, 796 F.3d at 1130 ("Now that the question regarding incorporation of the AAA rules is squarely before us, we hold that incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability."); *Blanton*, 962 F.3d at 846 ("[E]very one of our sister circuits to address the question—eleven out of twelve by our count—has found that the incorporation of the AAA Rules (or similarly worded arbitral rules) provides 'clear and unmistakable' evidence that the parties agreed to arbitrate 'arbitrability.'"); *G.G. v. Valve Corp.*, 799 F. App'x 557, 558 (9th Cir.

2020) ("[T]he teenagers clearly and unmistakably agreed to arbitrate questions of arbitrability because the arbitration agreement incorporates AAA rules.").

When analyzing contracts with nearly identical language, courts throughout the Ninth Circuit find that the incorporation of the AAA rules effectuates a valid delegation of disputes over arbitrability and validity to the arbitral panel. *See Fuller v. Bloom Inst. of Tech.*, No. 23-CV-01440, 2024 WL 98391, at *1 (N.D. Cal. Jan. 9, 2024) (finding delegation where contract required arbitration "administered by the [AAA] in accordance with its Consumer Arbitration Rules available at www.adr.org"); *In re BAM Trading Servs. Inc. Sec. Litig.*, 733 F. Supp. 3d 854, 860 (N.D. Cal. 2024) (finding delegation where contract read: "The AAA rules, as well as instructions on how to file an arbitration proceeding with the AAA, appear at adr.org, or you may call the AAA at 1-800-778-7879."); *Wells Fargo Advisors, LLC v. Sappington*, 884 F.3d 392, 394 (2d Cir. 2018) (clear and unmistakable delegation in contract that stated "claim shall be submitted for arbitration before the American Arbitration Association [ ('AAA') ] pursuant to its Securities Arbitration Rules"); *Razzaghi v. UnitedHealth Grp.*, No. SACV 18-01223, 2018 WL 7824552, at *2 (C.D. Cal. Sept. 17, 2018) (finding delegation where an agreement stated the rules and procedures to be used by the parties are based on the AAA rules).

The district court's holding that the Tile Term's incorporation of the AAA rules does not necessarily delegate arbitrability (1-ER-12) defies this Court's

precedent. *See Fli-Lo Falcon, LLC v. Amazon.com, Inc.*, 97 F.4th 1190, 1199 (9th Cir. 2024) ("In *Brennan v. Opus Bank*, 796 F.3d 1125 (9th Cir. 2015), we held that 'incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability.'"). The district court conducted its own interpretation of the AAA language, and concluded that the AAA rules do not "provide that the arbitrator, to the exclusion of the courts, must resolve arbitrability disputes." (1-ER-12.) But this analysis would have applied in every case incorporating the AAA rules, and this Court has already considered that exact language and held that it clearly and unmistakably delegates arbitrability. *Brennan*, 796 F.3d at 1130 (discussing provision that "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the . . . validity of the arbitration agreement" (alteration in original)); *see also Fuller*, 2024 WL 98391, at *1 ("The language of Rule 14(a) is clear and unmistakable: disputes about the scope or validity of the arbitration agreement are for the arbitrator to decide."). And at least the Sixth Circuit has explicitly rejected the district court's analysis and found that the AAA rules do, in fact, give the arbitrator exclusive authority to decide threshold issues. That court explained:

> [I]n law the expression of one thing often implies the exclusion of other things. . . . Most people who read the sentence, "[t]he arbitrator shall have the power to rule on his or her own jurisdiction," wouldn't then think "but a court may also rule on this issue." And things would get pretty chaotic if the rule were read this way. It would lead

- 28 -

> to a race to the courthouse (or arbitrator's forum) to have
> each party's preferred decisionmaker be the first to rule on
> the issue.

*Blanton*, 962 F.3d at 849.  Other courts agree.  *See, e.g.*, *TotalEnergies E&P USA, Inc. v. MP Gulf of Mexico, LLC*, 667 S.W.3d 694, 711 (Tex. 2023), *reh'g denied* (June 9, 2023) ("We conclude that, by providing that the arbitrator "*shall* have *the* power" to determine the arbitrability of any claim, the rule clearly and unmistakably delegates that decision exclusively to the arbitrator."); *Ill. Cas. Co. v. B&S of Fort Wayne Inc*., 235 N.E.3d 827, 834 (Ind. 2024) ("[T]he power to resolve arbitrability rests exclusively with the arbitrator once the rules are incorporated by the parties").

### a. Incorporation of the AAA Rules Constitutes Delegation Regardless of Party Sophistication.

As the clear weight of case law holds, this delegation is valid regardless of how sophisticated the parties may be.  While the *Brennan* decision did not reach the issue because it found the parties there were sophisticated, its *dicta* indicates that sophistication is not a prerequisite for enforcing the delegation term in the AAA rules.  The decision noted that "the vast majority of the circuits" have found "incorporation of the AAA rules constitutes clear and unmistakable evidence of the parties' intent to [delegate] without explicitly limiting that holding to sophisticated parties[.]" *Brennan*, 796 F.3d at 1130-31.  This Court then revisited the issue in the consumer context in 2020, finding, in *G.G. v. Valve Corporation*, that inherently less sophisticated **minors** had delegated arbitrability to the arbitrator by agreeing to the

AAA rules. *G.G.*, 799 F. App'x at 558. The Court explained that the teenagers' "sophistication" did not matter because, under Washington law, they were presumed to have read the contract they entered—and therefore could not later claim ignorance of the AAA rules delegating arbitrability. *Id.*

Other Circuit Courts likewise hold that incorporation of the AAA rules constitutes valid delegation of questions of arbitrability regardless of the sophistication of the parties. *See, e.g.*, *Blanton*, 962 F.3d at 851 ("[O]ther circuit courts have declined to adopt [a distinction between sophisticated and unsophisticated parties] . . . . We see no reason to be the first."); *Cubria v. Uber Techs., Inc.*, 242 F. Supp. 3d 541, 549 (W.D. Tex. 2017) ("[C]ourts in the Fifth Circuit have concluded incorporation of the AAA rules demonstrates intent to delegate arbitrability even in cases involving unsophisticated plaintiffs."). District courts in this circuit hold the same. *See, e.g.*, *Diaz v. Intuit, Inc.*, No. 5:15-cv-01778, 2017 WL 4355075, at *3 (N.D. Cal. Sept. 29, 2017) ("[B]oth before and after *Brennan*, courts in this district have consistently found that the reference to AAA rules evinces a clear and unmistakable intent to delegate arbitrability to an arbitrator, ***regardless of the sophistication of the parties***." (emphasis added)); *Acosta v. Brave Quest Corp.*, 733 F. Supp. 3d 920, 928–29 (C.D. Cal. 2024); *Bazine v. Kelly Servs. Glob., LLC*, No. 22-cv-07170, 2023 WL 4138252, at *6 (N.D. Cal. June 21, 2023); *In re BAM Trading Servs. Inc. Sec. Litig.*, 733 F. Supp. 3d at 863.

This makes good sense as "the principle accepted in *Brennan* is at odds with a two-forked approach that yields two different outcomes based on an extra-contractual determination of the personal traits of one of the contracting parties." *Acosta*, 733 F. Supp. 3d at 928. While the sophistication of a party may be relevant to the party's subjective understanding of the contract, it is not material when deciding whether the contract "objectively manifests a clear and unmistakable intent." *Id*. Moreover, "nothing in the Federal Arbitration Act purports to distinguish between 'sophisticated' and 'unsophisticated' parties." *Blanton*, 962 F.3d at 851. Were this Court to hold otherwise, it would necessitate a nebulous and individualized analysis every time a party sought to enforce its agreement to delegate to the arbitrator, creating needless uncertainty where there should be clarity.

### b. The Venue Provision Does Not Create Ambiguity.

The district court also incorrectly held that the Tile Terms do not delegate arbitrability because the Tile Terms, in a separate section *unrelated* to the arbitration agreement, provide:

> The exclusive jurisdiction for all disputes, claims or controversies arising out of or relating to these Terms or the breach, termination, enforcement, interpretation or validity thereof or the use of the Services or Content will be the state and federal courts located in the Northern District of California and you and Tile each waive any objection to jurisdiction and venue in such courts. If any part of these Terms is determined to be invalid or unenforceable by a court of competent jurisdiction, that provision will be enforced to the maximum extent

> permissible and the remaining provisions of these Terms
> will remain in full force and effect.

(2-ER-116, 198–99.)  But, respectfully, this was in error.[3]  As an initial matter,

incorporation of the AAA Rules "clearly and unmistakably" delegates the ***exclusive***

power to determine arbitrability to the arbitrator.  *See* Section VII. B. 2, *supra*.  But

even if it did not, this venue provision does not conflict with the delegation term.

A contract's interpretation must give meaning to "each of its provisions" and

not leave any part "superfluous."  *Brinderson-Newberg Joint Venture v. Pac.*

*Erectors, Inc.*, 971 F.2d 272, 278-79 (9th Cir. 1992) (collecting cases); *Ward v.*

*Goossen*, 71 F. Supp. 3d 1010, 1014 (N.D. Cal. 2014) ("Courts must interpret

contractual language in a manner that gives force and effect to every provision, and

not in a way that renders some clauses nugatory, inoperative, or meaningless."

(citation omitted)).  "To the extent practicable, the meaning of a contract must be

derived from reading the whole of the contract, with individual provisions

interpreted together, in order to give effect to all provisions and to avoid rendering

some meaningless."  *Lueras v. BAC Home Loans Servicing, LP*, 221 Cal. App. 4th

49, 71 (2013) (citation omitted); *see also Yahoo Inc. v. Nat'l Union Fire Ins. Co. of*

*Pittsburgh, Pa.*, 14 Cal. 5th 58, 69 (2022) ("favor[ing] an interpretation that gives

---

[3] Notably, this purported conflict between the provisions was first raised by the
district court *sua sponte* before the hearing on the motion to compel arbitration,
and the argument appeared nowhere in Plaintiffs' opposition papers.

meaning to each word in a contract over an interpretation that makes part of the writing redundant").

The language in the venue provision is easily harmonized with the AAA delegation term, which governs arbitrability issues, because the Tile Terms contemplate courts, rather than arbitrators, resolving *other* types of disputes that are not subject to arbitration. Delegating arbitrability disputes to an arbitrator as a general matter does not eliminate the need to identify the court that would have jurisdiction in the event a judicial proceeding becomes necessary. This provision simply affirms the parties' consent to personal jurisdiction and venue in the situations where a court action would be necessary.

For example, the February 2023 Tile arbitration agreement exempts claims "regarding the infringement, protection or validity of your, Tile's or Tile's licensors' trade secrets or copyright, trademark or patent rights[.]" (2-ER-200.) The Tile Terms contain a license provision, which provides, *inter alia*:

> You may not: (i) copy, modify or create derivative works based on the App or Services; (ii) distribute, transfer, sublicense, lend or rent the App to any third party; (iii) reverse engineer, decompile or disassemble the App; or (iv) make the functionality of the App or Services available to multiple users through any means.

(2-ER-180–81.) Resolving such a claim would clearly require a court to resolve a controversy over the "interpretation or validity" of that provision. For example, a copyright claim may require a court to decide if the prohibition on derivative works

- 33 -

is valid.

Because the Tile Terms contemplate various disputes that would proceed in court, this Court "cannot conclude that the jurisdictional clause's reference to court decisions renders the delegation clause ambiguous or contradictory." *Bell v. Redfin Corp.*, No. 20-CV-2264, 2021 WL 5444791, at *4 (S.D. Cal. Aug. 12, 2021); *see also Taylor v. Shutterfly, Inc.*, No. 18-CV-00266, 2018 WL 4334770, at *5 (N.D. Cal. Sept. 11, 2018) (finding that a severability provision did not render delegation clause ambiguous because "an express delegation provision is not rendered ambiguous merely because a different section of the contract recognizes that the parties may need to invoke the jurisdiction of a court").

Additionally, when a contract includes two provisions that appear to conflict, the *specific* provision dealing with a particular subject will control over the other provision dealing only *generally* with that same subject. *See Nat. Res. Def. Council v. Kempthorne*, 621 F. Supp. 2d 954, 983 (E.D. Cal. 2009) (citing Rest. (Second) of Contracts § 203 (1981)), *decision clarified*, 627 F. Supp. 2d 1212 (E.D. Cal. 2009), *on reconsideration*, No. 1:05-CV-1207, 2009 WL 2424569 (E.D. Cal. Aug. 6, 2009). Here, the specific language delegating threshold questions of arbitrability applies over the more general venue provision. Indeed, the venue provision is in a section titled "General Provisions." (2-ER-116, 198.)

This Court's decision in *Mohamed* confirms these points. 848 F.3d 1201 (9th

- 34 -

Cir. 2016). There, this Court held that the relevant agreement constituted clear and unmistakable evidence of the parties' intent to delegate questions of arbitrability, even though the arbitration agreement also contained a venue provision granting "exclusive jurisdiction" to state and federal courts in San Francisco over "any disputes, actions, claims or causes of action arising out of or in connection with this Agreement[.]" *Id.* at 1209 (citation omitted). The court concluded that the delegation clause remained clear and unmistakable despite the presence of the venue provision because any conflicts between them were "artificial." *Id.*

The *Mohamed* decision cited to the California Court of Appeal's observation that "[n]o matter how broad the arbitration clause, it may be necessary to file an action in court to enforce an arbitration agreement, or to obtain a judgment enforcing an arbitration award, and the parties may need to invoke the jurisdiction of a court to obtain other remedies[.]" *Dream Theater, Inc. v. Dream Theater*, 124 Cal. App. 4th 547, 556 (2004), *as modified on denial of reh'g* (Dec. 28, 2004). The Court then explained that:

> It is apparent that the venue provision here was intended for these purposes, and to identify the venue for any other claims that were not covered by the arbitration agreement. That does not conflict with or undermine the agreement's unambiguous statement identifying arbitrable claims and arguments.

*Mohamed*, 848 F.3d at 1209.

*Mohamed* is not substantively distinguishable. The fact that the Tile Terms

- 35 -

reference "interpretation or validity" does not negate the delegation of arbitrability. Instead, it provides a venue for disputes over interpretation of the agreement as a whole, which may arise in deciding "other claims that were not covered by the arbitration agreement," such as the copyright example provided above. *Id.*

Finally, the district court's reliance on *In re Tesla* was misplaced as the Tile Terms do not contain an explicit instruction that a court could decide the enforceability of the arbitration agreement. (1-ER-12.) In that case, Judge Gilliam explained that even if the AAA rules would normally delegate arbitrability, such delegation was made ambiguous in the contract before him because it discussed a "court" deciding whether any part of the "agreement to arbitrate cannot be enforced" "as to a particular claim or relief or remedy[.]" *In re Tesla Advanced Driver Assistance Sys. Litig.*, No. 22-cv-05240, 2023 WL 6391477, at *1 (N.D. Cal. Sept. 30, 2023). That is, Judge Gilliam found that because the contract specifically discussed a "court" determining the enforceability of the arbitration agreement in a manner that would be inconsistent with the AAA rules' delegation clause, there was an "inherent tension" that might have confused a reader. *Id.* at *6. Judge Gilliam further noted that the party moving to enforce the arbitration agreement offered no explanation for how to "harmonize" this provision with the contrary AAA delegation term. *Id.*

As explained, there is no analogous language or tension here. No part of the

Tile Terms provide for a court to rule on the enforceability of the arbitration agreement specifically.  Instead, the language of the jurisdictional provision is easily harmonized with the AAA delegation term, which governs arbitrability issues, as the Tile Terms contemplate courts, rather than arbitrators, resolving ***other*** disputes related to the Tile Terms that are not subject to arbitration.  Indeed, taking the district court's analysis to its logical conclusion would mean that the arbitration agreement itself (and not just the delegation clause) conflicts with the jurisdictional language.

In sum, the district court erred in finding the Tile Terms ambiguous simply because a separate venue provision specifies where venue would be proper if a lawsuit arose.  The arbitrator should decide the threshold question of arbitrability.

### C.  Even if the Court were to Decide Arbitrability, the Arbitration Agreement Covers Plaintiffs' Claims.

Although Tile's Terms delegate the question of arbitrability to the arbitrator, if the Court were to decide threshold questions, its role is limited to "determining (1) whether a valid agreement to arbitrate exists, and if it does, (2) whether the agreement encompasses the dispute at issue."  *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).  As to the first inquiry, the district court correctly held that an arbitration agreement exists between Plaintiffs Doe and Broad and the Defendants.  *See* Section VII.B., *supra*; (1-ER-8.)  As to the second, the district court also correctly concluded that Doe and Broad's claims involving their use of Tile's products or services, as well as a third party's alleged misuse of

products Plaintiffs purchased, must be arbitrated. (1-ER-20–21.) However, the district court erred by reaching the opposite conclusion for claims predicated on a third party's misuse of other Tile trackers to allegedly stalk Plaintiffs. (1-ER-17–20.) The arbitration clause unquestionably encompasses such claims. Because it is uncontroverted that an agreement to arbitrate exists, and because Plaintiffs' claims could reasonably fall within the scope of the arbitration clause, any doubts are to be resolved in favor of arbitration. *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1022 (9th Cir. 2016).

### 1. The Plain Language of the Agreement Demonstrates that Plaintiffs' Claims Must Be Arbitrated.

Under both Federal and California law, when "interpreting an unambiguous contractual provision [courts] are bound to give effect to the plain and ordinary meaning of the language used by the parties." *Coast Plaza Drs. Hosp. v. Blue Cross of Cal.*, 83 Cal. App. 4th 677, 684 (2000), *as modified* (Sept. 7, 2000); Cal. Civ. Code §§ 1636, 1638 and 1644; *see also E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) (same). Courts in this circuit have held that arbitration agreements containing broad language requiring arbitration, the factual allegations need only "'touch matters' covered by the contract containing the arbitration clause and all doubts are to be resolved in favor of arbitrability." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999); *see also Cape Flattery Ltd. v. Titan Mar., LLC*, 647 F.3d 914, 922 (9th Cir. 2011) ("[W]hen parties intend to include a broad arbitration

provision, they provide for arbitration 'arising out of or relating to' the agreement." (citation omitted)). Such a "broad arbitration clause[] . . . encompass[es] tort, statutory, and contractual disputes that have their roots in the relationship between the parties which was created by the contract." *Ramos v. Super. Ct.*, 28 Cal. App. 5th 1042, 1052 (2018), *as modified* (Nov. 28, 2018) (internal quotation marks and citation omitted).

Here, the agreement requires arbitration of "[a]ll disputes, claims or controversies arising out of or relating to this Agreement, any Tile product or service and its marketing, or the relationship between you and Tile." (2-ER-117, 199.) The plain language of the contract indicates that all disputes arising out of or relating to (1) the terms of the Agreement, (2) any Tile product or service and its marketing, or (3) the relationship between Plaintiffs and Tile "shall be determined exclusively by binding arbitration." (*Id.*) But arbitration is limited to claims that fall into those three categories, which this action does. Plaintiffs allege that Tile negligently designed and marketed Tile trackers, "defectively designed" the Tile tracker, violated Plaintiffs' privacy rights, and engaged in unfair or unlawful conduct that violates California's Unfair Competition Law. (2-ER-246–53, ¶¶ 171, 175, 180, 191, 200, 207, 219, 223.) These claims relate to Tile's tracker ("any Tile product") and its marketing, and therefore fall squarely within the scope of the arbitration clause. *See Dardashty v. Hyundai Motor Am.*, 745 F. Supp. 3d 986, 996–97 (C.D.

Cal. 2024) (finding negligent repair claim against auto manufacturer was within scope of arbitration agreement with car dealership because the claim related to or arose out of "any service relating to the vehicle, use of the vehicle, and the duties contemplated under the warranty[.]" (cleaned up)).

Moreover, the distinction the district court drew between the Plaintiffs' own use of Tile trackers and software on the one hand and the alleged misuse by third parties on the other cannot be squared with the language of the Tile's Terms. The Terms require arbitration of all disputes arising out of "any Tile product or service and its marketing, *or* the relationship between [Plaintiffs] and Tile[.]" (2-ER-117, 199 (emphasis added).) Adopting the District Court's interpretation would effectively read the former clause out of the agreement by making only disputes arising out of Plaintiffs' own relationship with Tile arbitrable and putting claims arising out of Tile's products that did not arise from Plaintiffs' relationships with Tile outside the agreement. The district court's interpretation would render the word "or" effectively meaningless, or wholly ignore the clause governing all disputes arising out of "any Tile product or service." And the district court did exactly this in holding that the arbitration clause is valid and enforceable "to the extent it applies to claims about services provided to Plaintiffs' as part of their own Tile accounts," and simultaneously holding that the arbitration clause is not enforceable to Plaintiffs' general claims about Tile products. (1-ER-20.) The district court ignored the plain

language of the arbitration clause to reach this conclusion, and this Court should not adopt that counter-textual reading.

**2. Any Question of Scope Must Be Resolved in Favor of Arbitration.**

For the reasons discussed, the plain language of Plaintiffs' arbitration agreements easily encompass their claims against Tile in this case. But even if the arbitration agreement were ambiguous, reversal is required because, under the FAA, any ambiguity must be resolved in favor of arbitration. *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25 ("[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."). This Court recognizes that "[a]ny doubts about the scope of arbitrable issues, including applicable contract defenses, are to be resolved in favor of arbitration." *Tompkins*, 840 F.3d at 1022 (citing *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25).

Consistent with these principles, other courts have likewise held that "where the scope of an arbitration agreement is at issue," "the federal policy in favor of arbitration trumps the tenet allowing courts to construe ambiguity in an agreement strictly against the drafter." *Kristian v. Comcast Corp.*, 446 F.3d 25, 62 (1st Cir. 2006); *see also, e.g.*, *Huffman v. Hilltop Cos.*, 747 F.3d 391, 396-97 (6th Cir. 2014) (holding that "where ambiguity in agreements involving arbitration exists . . . the

- 41 -

strong presumption in favor of arbitration applies instead" of the state-law principle of "resolv[ing] ambiguities against the drafter"); *Erickson v. Aetna Health Plans of Cal., Inc.*, 71 Cal. App. 4th 646, 656 (1999) (same); *AT&T Techs.*, 475 U.S. at 650 ("[A]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." (citation omitted)). Because Plaintiffs' claim could reasonably fall within the scope of the arbitration clause, the Court must compel arbitration.

### 3. The District Court's Carving Up of Claims Is Unworkable.

The district court's vision for separating out certain claims as non-arbitrable is not feasible. The district court found that Plaintiffs' claims concerning "Plaintiffs' own Tile accounts," "the stalkers' use of Plaintiffs' own Tile trackers," or the alleged shortcomings of Tile's Scan and Secure feature would "fall well within the expected ambit of the arbitration agreement." (1-ER-20–22.) Accordingly, it ordered that those claims must be heard in arbitration. (1-ER-20.) However, the court concluded that Plaintiffs' claims concerning the design defects of Tile trackers that allegedly permitted "the misuse of the trackers by third-party stalkers" could be heard in court. (1-ER-21–22.) This is a false dichotomy, as there is no real line between these two types of claims.

Evaluating the safety of a product requires evaluating its accompanying safety

features.  It is impossible to evaluate the safety of a Tile tracker—even when misused by a third party—without considering the Scan and Secure software that accompanies it.  For example, Plaintiffs have argued that Tile's products are defective for, for example: 1) not allowing Plaintiffs to more easily detect the precise location of a Tile tracker (2-ER-241), 2) not allowing Plaintiffs to cause the tracker to emit a sound for locating it (2-ER-241), or 3) not allowing Plaintiffs to disable the Tile tracker so that it could no longer transmit its location to their alleged stalkers (2-ER-239), all of which would actually be veiled criticisms of the shortcomings of the Tile Scan and Secure software Plaintiffs would be using to purportedly make the Tile safer.  Put differently, these would be attacks on Tile's services that the district court held would have to be arbitrated.  Likewise, in its defense, Tile would expect to argue that the anti-stalking features of its Scan and Secure software defeat any claim that the Tile trackers are defectively designed.  Plaintiffs' rebuttal arguments would, again, fall precisely into the type of claim the district court held must be arbitrated.  It is thus unworkable, within the parameters set by the district court, to litigate any of Plaintiffs' claims without running afoul of the arbitration agreement.

In contrast, the claims of alleged stalking victims who have not agreed to the Tile Terms would not be subject to arbitration.  This case illustrates the ease of implementing this division of actions, as, Tile has not sought to compel arbitration for the other two Plaintiffs in this case, the Ireland-Gordys, because neither alleges

that she purchased any Tile products or used the Scan and Secure service. Put differently, while the Ireland-Gordys do not allege they agreed with Tile to arbitrate their claims concerning its products and services, Plaintiffs Broad and Doe both entered into valid, enforceable arbitration agreements that cover all their claims. (1-ER-8.) Unlike the, in Tile's view, unworkable splitting of arbitrable and non-arbitrable pieces of claims (or theories supporting claims) proposed by the district court, this bright line between Tile accountholders and non-accountholders is the proper and logical way to separate such cases.

### D. The Arbitration Agreement Is Enforceable.

The district court erred in holding that the arbitration clause is unconscionable "to the extent it compels arbitration of claims" involving a third party's misuse of a Tile tracker. (1-ER-16.) Not only should the district court never have reached this issue, but the arbitration agreement in Tile's Terms is also not substantively or procedurally unconscionable.

### 1. The Arbitration Agreement Is Not Substantively Unconscionable.

Substantive unconscionability requires contract terms that are "overly harsh," "unduly oppressive," "unreasonably favorable," or so one-sided that they "shock the conscience." *Sanchez v. Valencia Holding Co.*, 61 Cal. 4th 899, 910 (2015) (citations omitted). These formulations all "point to the central idea that the unconscionability doctrine is concerned not with a simple old-fashioned bad bargain,

- 44 -

but with terms that are unreasonably favorable to the more powerful party." *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1244 (2016) (internal quotation marks and citation omitted). The district court held that Tile's arbitration clause is "overly broad" and therefore substantively unconscionable to the extent it encompasses claims relating to third-party conduct misusing Tile's products or services. (1-ER-16.)

Tile's arbitration agreement is not impermissibly broad. The scope of the agreement—reaching claims "arising out of or relating to this Agreement, any Tile product or service and its marketing or the relationship between [Plaintiff] and Tile"—is not unlimited. Instead, using typical "arising out of and relating to" language, the arbitration provision reaches only disputes that have a nexus with (1) the Tile Terms themselves, (2) Tile's products, or (3) the relationship between a Tile user and Tile. California courts have held that such "arising out and relating to" language is not overly broad or unconscionable. *See Torrecillas v. Fitness Int'l, LLC*, 52 Cal. App. 5th 485, 491 (2020) (holding that employment contract covering "all disputes between Employee and [Fitness] arising under this Agreement or relating to Employee's employment with [Fitness], including but not limited to . . . that relationship" was not overly broad or unfair), *disapproved on other grounds by Ramirez v. Charter Commc'ns, Inc.*, 16 Cal. 5th 478 (2024); *cf. Cook v. Univ. of S. Cal.*, 102 Cal. App. 5th 312, 321 (2024), *reh'g denied* (June 13, 2024) (holding "all

claims, whether or not arising out of Employee's University employment . . . that Employee may have against the University or any of its related entities" was overly broad and unenforceable).

Furthermore, the facts of this case and the arbitration agreement at issue are quite unlike those in the cases relied on by the district court. In *Thomas v. Cricket Wireless, LLC*, a plaintiff brought claims against **Cricket Wireless** based on alleged fraudulent advertising of its wireless services between 2012 and 2014. 506 F. Supp. 3d 891, 897 (N.D. Cal. 2020). Defendants attempted to compel arbitration for these claims based on a wireless services contract plaintiff signed with **AT&T Mobility** ("AT&T") in 2018, when she was unaware that Cricket was an affiliate of AT&T. *Id.* at 896. The arbitration agreement was not limited to disputes concerning AT&T's wireless services, but purportedly covered all disputes and claims, with no exceptions, between the plaintiff and all of AT&T's *past, current, and future* affiliates, "no matter how unrelated those claims are to the wireless services agreements" signed by plaintiff. *Id.* at 904. The court held this was unconscionable and overly broad because a consumer could not have reasonably known Cricket and AT&T were affiliates at the time of contracting. *Id.*

The Ninth Circuit examined the same arbitration clause in *Revitch v. DIRECTV, LLC*, 977 F.3d 713, 721 (9th Cir. 2020). When a customer had a dispute with DirectV (a cable provider), DirectV attempted to compel arbitration based

- 46 -

on a wireless services contract the customer had previously signed with AT&T, before DirectTV was an AT&T affiliate. *Id*. This Court held that enforcing the arbitration clause for disputes with an AT&T affiliate company, unrelated to the wireless services contract originally signed by the plaintiff would lead to absurd results and could not have been the reasonable expectations of the plaintiffs at the time of contract. *Id*. "Had that been the parties' intent, as DIRECTV argues it was, it would necessarily mean that the parties intended to agree to arbitrate the tort claims that would arise if Revitch were hit by a DIRECTV delivery van, or if he tripped over a dangerous condition in a DIRECTV store or the securities-fraud claim that would arise if Revitch bought shares of stock in DIRECTV and later claimed a decrease in share price was the result of corporate malfeasance." *Id.* at 720–21 (cleaned up).

Tile is not attempting to arbitrate any claims like those described in this Court's analysis in *Revitch*. It is not unreasonable that a company and a consumer would agree to arbitrate product liability cases so that both parties could receive the benefit of a more streamlined, less expensive, and less time-consuming forum to address their concerns. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 348 (2011) (discussing how "in bilateral arbitration, parties forgo the procedural rigor and appellate review of the courts in order to realize the benefits of private dispute resolution: lower costs, greater efficiency and speed, and the ability to choose expert

adjudicators to resolve specialized disputes." (citation omitted)).

Moreover, *Revitch* is distinguishable in another critical aspect: the question about enforceability was related to contract *formation* rather than scope. Because the customer had not entered into an arbitration agreement with DirectTV, but rather AT&T, the Court's inquiry focused on whether it would be unconscionable to enforce the contract with a party the customer could not have contemplated as being part of the contract when agreeing to the terms of AT&T's arbitration clause. Here, however, there is no dispute that a valid arbitration agreement exists between the Plaintiffs and Tile. (1-ER-8.) The limited question before the court is whether the plaintiffs' claims fall within the scope of the arbitration clauses. *Revitch*, 977 F.3d at 720 (quoting *Parm v. Bluestem Brands, Inc.*, 898 F.3d 869, 871 (8th Cir. 2018)).

Thus, *Cricket* and *Revitch* are both inapposite. Both involve attempts to enforce an arbitration agreement with one party in litigation based on agreements with a different party that the plaintiff did not know was connected to their claims. Here, Plaintiffs entered into agreements with Tile, in which they agreed to arbitrate all claims they might have concerning "any Tile product," and they now have a claim against Tile concerning alleged design defects in Tile products. The plain language of the Terms establishes that these claims fall easily within the bounds of the arbitration agreement.

And numerous courts have confirmed the validity of arbitration agreements

with identical or virtually identical language to that in the Tile Terms. *See, e.g.*, *Mey v. DIRECTV, LLC*, 971 F.3d 284, 293 (4th Cir. 2020) (compelling arbitration where the contract required it for "all disputes and claims between us." (emphasis omitted)); *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 479 (9th Cir. 1991) (holding that agreement with "any and all disputes arising under the arrangements contemplated hereunder" must be construed liberally in favor of arbitration); *In re Cox Enters., Inc. Set-top Cable Television Box Antitrust Litig.*, 835 F.3d 1195, 1199 (10th Cir. 2016) (affirming decision compelling arbitration of consumer class action of antitrust claims where contractual language stated "You and Cox agree to arbitrate . . . any and all claims or disputes between us . . . that arise out of or in any way relate to . . . (5) any services or goods that Cox or any of its affiliated entities provide to you under any other agreement[.]"); *see also, e.g.*, *3M Co. v. Amtex Sec., Inc.*, 542 F.3d 1193, 1199 (8th Cir. 2008) (holding that "a district court [is required to] send a claim to arbitration when presented with a broad arbitration clause," even when the language was not as extensive as "any or all disputes").

### 2. The Arbitration Agreement Is Not Procedurally Unconscionable.

Because the arbitration agreement is not substantively unconscionable, the Court need not reach the question of procedural unconscionability. *See Baltazar*, 62 Cal. 4th at 1243 ("procedural and substantive unconscionability must *both* be present

in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability." (cleaned up)). However, if the Court were to reach this question, there is no procedural unconscionability in Tile's Terms.

Procedural unconscionability generally requires circumstances demonstrating oppression and surprise. *OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 126–27 (2019). Even adhesion contracts are not *per se* oppressive. *See Morris v. Redwood Empire Bancorp*, 128 Cal. App. 4th 1305, 1320, (2005). As this Court explains, "[a] term is not oppressive where, as here, the customer has 'reasonably available alternative sources of supply from which to obtain the desired goods and services free of the terms claimed to be unconscionable.'" *Darnaa, LLC v. Google LLC*, 756 F. App'x 674, 676 (9th Cir. 2018) (quoting *Lennar Homes of Cal., Inc. v. Stephens*, 232 Cal. App. 4th 673 (2014)). There are several alternative options for Bluetooth tracking devices similar to a Tile Tracker that Plaintiffs could have opted to use. (2-ER-36); *George v. eBay, Inc.*, 71 Cal. App. 5th 620, 632 (2021) (finding no procedural unconscionability where plaintiffs could "sell[] on other online marketplaces"). There is no meaningful procedural unconscionability here, if there is any at all, because Plaintiffs could have easily opted for an alternative tracking device and were under no time constraints to review the terms that were presented in a clear and accessible manner.

The district court erred by not analyzing whether the contract at issue was

oppressive. To determine if a contract is oppressive, courts weigh factors such as "(1) the amount of time the party is given to consider the proposed contract; (2) the amount and type of pressure exerted on the party to sign the proposed contract; (3) the length of the proposed contract and the length and complexity of the challenged provision; (4) the education and experience of the party; and (5) whether the party's review of the proposed contract was aided by an attorney." *OTO, L.L.C.*, 8 Cal. 5th at 126–27 (citation omitted). Plaintiffs did not provide any facts suggesting they were pressured to sign the Terms of Service or were only given a short amount of time to read the terms of service. The Terms also directed the parties to the arbitration clause with all caps or bolded text and a specific section header titled "Dispute Resolution by Binding Arbitration" (January 2021 and February 2023 Terms) or "Dispute Resolution; Arbitration" (October 2023 Terms). (2-ER-117, 142, 199.) The terms are presented in straightforward English, and in the same size font as the rest of the terms. (*Id.*) The district court's suggestion that the internal conflicts of the terms creates confusion is misguided, as the terms work together cohesively, as explained in Section VII. B. 2. b., *supra*. Accordingly, this artificial conflict cannot be a basis of substantial procedural unconscionability.

The district court additionally erred in holding that the arbitration agreement contained a strong element of surprise, which is based on the same reasoning as the holding related to substantive unconscionability. (1-ER-19.) However, surprise in

the context of procedural unconscionability is not related to the fairness of the terms, but rather the prominence and clarity of the disclosure in context. *See Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670, 682 (9th Cir. 2024) ("Surprise . . . can arise when the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms" (internal quotation marks and citation omitted)).  Here, nothing was hidden from Plaintiffs.

The Tile Terms are, thus, neither procedurally nor substantively unconscionable.  Because Plaintiffs presented no other defenses of contract formation, and the subject of their claims clearly falls within the scope of the arbitration clause, Defendants respectfully request that this Court, if it must rule on the issues Tile asserts are delegated to the arbitrator, order Plaintiffs' claims be arbitrated in their entirety, as required by the Tile Terms.

## VIII. CONCLUSION

This Court should reverse and remand with instructions to grant the motion to compel arbitration.

Dated:  July 11, 2025              Cooley LLP


By: */s/ Jeffrey M. Gutkin*
     Jeffrey M. Gutkin


Attorneys for Appellants
TILE, INC. and LIFE360, INC.

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** <u>No. 25-403</u>

I am the attorney or self-represented party.

**This brief contains <u>12,494</u> words,** including <u>326</u> words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** <u>s/ Jeffrey M. Gutkin</u>  **Date** <u>July 11, 2025</u>
*(use "s/[typed name]" to sign electronically-filed documents)*

- 54 -