No. 25-403

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

SHANNON IRELAND-GORDY; STEPHANIE IRELAND GORDY; MELISSA BROAD;
AND JANE DOE, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY
SITUATED.
PLAINTIFFS/APPELLEES,

v.

TILE, INC.; LIFE360, INC.; AND AMAZON.COM, INC,
DEFENDANTS/APPELLANTS.

On Appeal from the United States District Court
for the Northern District of California
No. 3:23-cv-04119-RFL
Hon. Rita F. Lin

**PLAINTIFFS-APPELLEES' ANSWERING BRIEF**

**WADE KILPELA SLADE LLP**
Gillian L. Wade (SBN 229124)
gwade@waykayslay.com
Sara D. Avila (SBN 263213)
sara@waykayslay.com
Kristin Kilpela Graham (SBN 342529)
kkg@waykayslay.com
Marc A. Castaneda (SBN 299001)
marc@waykayslay.com
2450 Colorado Avenue, Ste. 100E
Santa Monica, California 90404
Telephone: (310) 667-7273

**WADE KILPELA SLADE LLP**
David F. Slade (admitted *pro hac vice*)
slade@waykayslay.com
Lucy Holifield (admitted *pro hac vice*)
lholifield@waykayslay.com
1 Riverfront Place, Suite 745
North Little Rock, AR 72114
Telephone: (501) 417-6445

# DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Plaintiffs-Appellees state, by and though their counsel, that they are not corporate entities and therefore have no parent corporations, subsidiaries, or affiliates that have issued shares to the public.


Date: September 10, 2025          WADE KILPELA SLADE LLP


                                  */s/ Gillian L. Wade*
                                  Gillian L. Wade

                                  *Attorney for Plaintiffs-Appellees*

i

# TABLE OF CONTENTS

**Page**

DISCLOSURE STATEMENT ................................................................. i

TABLE OF AUTHORITIES .................................................................. iv

INTRODUCTION ..................................................................................1

JURISDICTIONAL STATEMENT .........................................................4

ISSUES PRESENTED...........................................................................5

STATEMENT OF THE CASE................................................................7

    A.   Relevant Facts ..........................................................................7

          1. Plaintiff Broad ...................................................................9

          2. Plaintiff Doe ....................................................................11

          3. Allegations in the First Amended Complaint ...................12

    B.   Procedural History ..................................................................12

    C.   The District Court's Order on Defendants' Motion to Compel Arbitration.x

SUMMARY OF THE ARGUMENT .....................................................15

STANDARD OF REVIEW ..................................................................17

ARGUMENT .......................................................................................17

    I.   The District Court Correctly Held Plaintiffs Did Not Assent to the October 2023 Terms....................................................................17

        A.   Tile Failed to Provide Reasonably Conspicuous Notice of the October 2023 Terms............................................................20

            a.  Plaintiffs Did not Have Actual or Inquiry Notice of the Existence of the October 2023 Terms ........................................................21

        b.  Plaintiffs Broad and Doe Did not Unambiguously Manifest Assent to the October 2023 Terms .......................................................... 24

    B.  Plaintiffs' Continued Use the Tile App to Evade Their Stalkers Did Not Constitute Assent in the Absence of Actual or Constructive Notice ....................................................................................... 25

    C.  The District Court Properly Applied Controlling Ninth Circuit Authority on Notice and Assent. ......................................................... 29

II.  The January 2021 and February 2023 Terms Do Not Clearly and Unmistakably Delegate Arbitrability. .......................................................... 30

    A.  The Venue Provisions in the Applicable Arbitration Agreements Make Clear That Threshold Issues of Arbitrability Are for Courts in the Northern District of California to Decide ..................................... 31

    B.  Incorporation of AAA Rules Insufficient to Delegate Arbitrability in Consumer Contracts. ................................................................... 37

III.  Plaintiffs' Claims Fall Outside the Scope of Any Arbitration Agreement. ..................................................................................................... 39

IV.  The Arbitration Clause is Unenforceable Due to Unconscionability ......... 48

    A.  The Arbitration Clause Exhibits a High Degree of Substantive Unconscionability ................................................................................ 50

    B.  The Arbitration Clause Exhibits a High Degree of Procedural Unconscionability ................................................................................ 57

CONCLUSION .................................................................................................... 63

STATEMENT OF NO RELATED CASES ........................................................... 64

CERTIFICATE OF COMPLIANCE .................................................................... 65

CERTIFICATE OF SERVICE ............................................................................. 66

iii

# TABLE OF AUTHORITIES

**Cases**                                                        **Page(s)**

*3M Co. v. Amtex Sec., Inc.*
542 F.3d 1193 (8th Cir. 2008) ....................................................................54

*Alkutkar v. Bumble Inc.*
2022 U.S. Dist. LEXIS 162287 (N.D. Cal. Sep. 8, 2022) ............................27

*AT&T Mobility LLC v. Concepcion*
563 U.S. 333 (2011)............................................................................32, 48

*Bahamonde v. Amazon.com Servs. LLC*
2025 U.S. Dist. LEXIS 138114 (N.D. Cal. July 18, 2025) ..........................52

*Bell v. Redfin Corp.*
2021 U.S. Dist. LEXIS 226739 (S.D. Cal. Aug. 12, 2021)..........................36

*Berman v. Freedom Fin. Network, LLC*
30 F.4th 849 (9th Cir. 2022) ...............................................................21, 22

*Brennan v. Opus Bank*
796 F.3d 1125 (9th Cir. 2015) ............................................................33, 38

*Cape Flattery Ltd. v. Titan Mar., LLC*
647 F.3d 914 (9th Cir. 2011) ..............................................................45, 46

*Cargo Dev. Group v. Abernathy*
1988 U.S. App. LEXIS 21469 (9th Cir. Nov. 14, 1988)..............................33

*Choe v. T-Mobile United States*
2018 U.S. Dist. LEXIS 236096 (C.D. Cal. Aug. 1, 2018) ...........................43

*Cook v. University of Southern California*
321 Cal. Rptr. 3d 336 (Cal. Ct. App. 2024)..........................................52, 56

*Dardashty v. Hyundai Motor Am.*
745 F. Supp. 3d 986 (C.D. Cal. 2024).......................................................45

*Dillion v. Bet Info. Sys.*
    2019 U.S. Dist. LEXIS 238318 (N.D. Cal. Feb. 19, 2019)....................32, 34

*Dohrmann v. Intuit, Inc.*
    823 F. App'x 482 (9th Cir. 2020) ................................................................20

*Douglas v. United States Dist. Court*
    495 F.3d 1062 .................................................................................................60

*Dream Theater, Inc. v. Dream Theater*
    124 Cal. App. 4th 547 (Cal. App. 2004) ......................................................36

*First Options of Chi., Inc. v. Kaplan*
    514 U.S. 938 (1995).........................................................................................32

*Fli-Lo, LLC v. Amazon.com, Inc.*
    97 F.4th 1190 (9th Cir. 2024).................................................................36, 38

*Flores v. Transamerica HomeFirst, Inc.*
    113 Cal. Rptr. 2d 376 (Cal. Ct. App. 2001)..................................................58

*Fuller v. Bloom Inst. of Tech.*
    2024 U.S. Dist. LEXIS 4638 (N.D. Cal. Jan. 9, 2024).................................36

*Galilea, LLC v. AGCS Marine Ins. Co.*
    879 F.3d 1052 (9th Cir. 2018) ......................................................................38

*Gatton v. T-Mobile USA, Inc.*
    61 Cal. Rptr. 3d 344 (Cal. Ct. App. 2007)...................................................60

*Ghazizadeh v. Coursera, Inc.*
    737 F. Supp. 3d 911 (N.D. Cal. 2024)..........................................................24

*Heckman v. Live Nation Ent., Inc.*
    120 F.4th 670 (9th Cir. 2024).........................................................58, 61, 62

*Henry Schein, Inc. v. Archer & White Sales, Inc.*
    586 U.S. 63 (2019)...................................................................................20, 31

*Holley-Gallegly v. TA Operating, LLC*
    74 F.4th 997 (9th Cir. 2023) ...................................................17, 19

*In re Cox Enters., Inc. Set-top Cable Television Box Antitrust Litig*.
    835 F.3d 1195 (10th Cir. 2016) ...................................................54

*In re Facebook Biometric Info. Privacy Litig.*
    185 F. Supp. 3d 1155 (N.D. Cal. 2016).........................................29

*In re Jiffy Lube Int'l, Inc.*
    847 F. Supp. 2d 1253 (S.D. Cal. 2012) .........................................53

*In re Tesla Advanced Driver Assistance Sys. Litig.*
    2023 U.S. Dist. LEXIS 176556 (N.D. Cal. Sep. 30, 2023)....................32, 33

*Ingalls v. Spotify USA, Inc.*
    2016 U.S. Dist. LEXIS 157384 (N.D. Cal. Nov. 14, 2016) .........................56

*Int'l Bhd. of Teamsters, Local 396 v. NASA Servs.*
    957 F.3d 1038 (9th Cir. 2020) ....................................................37

*Jackson v. Amazon.com, Inc.*
    65 F.4th 1093 (9th Cir. 2023) .........................................21, 23, 26

*Kamath v. Coinbase, Inc.*
    2024 U.S. Dist. LEXIS 38443 (N.D. Cal. Mar. 5, 2024) ......................28, 29

*Keebaugh v. Warner Bros. Ent. Inc.*
    100 F.4th 1005 (9th Cir. 2024) ....................................................22

*Kramer v. Toyota Motor Corp.*
    705 F.3d 1122 (9th Cir. 2013) ....................................................46

*Lim v. TForce Logistics, LLC*
    8 F.4th 992 (9th Cir. 2021) .........................................................51

*Magill v. Wells Fargo Bank*, N.A.
    2021 U.S. Dist. LEXIS 248891 (N.D. Cal. June 25, 2021)..........................38

*Mey v. DIRECTV, LLC*
   971 F.3d 284 (4th Cir. 2020) .................................................................53, 54

*Mohamed v. Uber Techs, Inc.*
   848 F.3d 1201 (9th Cir. 2016) ........................................................34, 35, 36

*Momot v. Mastro*
   652 F.3d 982 (9th Cir. 2011) .........................................................................41

*Mundi v. Union Sec. Life Ins. Co.*
   555 F.3d 1042 (9th Cir. 2009) ........................................................40, 41, 46

*Nagrampa v. MailCoups, Inc.*
   469 F.3d 1257 (9th Cir. 2006) .....................................................................60

*Nguyen v. Barnes & Noble Inc.*
   763 F.3d 1171 (9th Cir. 2014) ...............................................................20, 22

*Oberstein v. Live Nation Entm't, Inc.*
   60 F.4th 505 (9th Cir. 2023) ........................................................................25

*OTO, L.L.C. v. Kho*
   447 P.3d 680 (Cal. 2019) ..............................................................................49

*Platt v. Sodexo, S.A.*
   2025 U.S. App. LEXIS 19535 (9th Cir. Aug. 4, 2025) .................................20

*Pokorny v. Quixtar, Inc.*
   601 F.3d 987 (9th Cir. 2010) ........................................................................49

*Portland GE v. Liberty Mut. Ins. Co.*
   862 F.3d 981 (9th Cir. 2017) ........................................................................31

*Ramos v. Super. Ct.*
   239 Cal. Rptr. 3d 679 (Cal. Ct. App. 2018)..................................................45

*Republic of Nicaragua v. Standard Fruit Co.*
   937 F.2d 469 (9th Cir. 1991) ................................................................53, 54

*Revitch v. DirecTV, LLC*
    2018 U.S. Dist. LEXIS 143812 (N.D. Cal. Aug. 23, 2018) ........47, 51, 52, 55

*Ronderos v. USF Reddaway, Inc*.
    114 F.4th 1080 (9th Cir. 2024) .......................................................49, 58, 61

*Sadlock v. Walt Disney Co.*
    2023 U.S. Dist. LEXIS 132295 (N.D. Cal. July 31, 2023) ....................24, 27

*Sanchez v. Valencia Holding Co*.
    353 P.3d 741 (Cal. 2015) ...............................................................................49

*Sellers v. Bleacher Report, Inc.*
    2023 U.S. Dist. LEXIS 131579 (N.D. Cal. 15 July 28, 2023) ....................27

*Shroyer v. New Cingular Wireless Servs*.
    498 F.3d 976 (9th Cir. 2007) ........................................................................60

*Sifuentes v. Dropbox, Inc.*
    2022 U.S. Dist. LEXIS 125273 (N.D. Cal. June 29, 2022).........................25

*Simula, Inc. v. Autoliv, Inc.*
    175 F.3d 716 (9th Cir. 1999) ........................................................................45

*Taylor v. Shutterfly, Inc.*
    2018 U.S. Dist. LEXIS 154925 (N.D. Cal. Sep. 11, 2018).........................36

*Thomas v. Cricket Wireless, LLC*
    506 F. Supp. 3d 891 (N.D. Cal. 2020)...............................................51, 52, 55

*Torrecillas v. Fitness Int'l, LLC*
    266 Cal. Rptr. 3d 181 (2020) ........................................................................53

*Travelers Indem. Co. v. Premier Organics, Inc*.
    2017 U.S. Dist. LEXIS 161282 (N.D. Cal. Sept. 29, 2017)...................34, 35

*United States v. Shaltry (In re Home Am. T.V.- Appliance Audio, Inc.)*
    232 F.3d 1046 (9th Cir. 2000) ......................................................................23

*Victoria v. Superior Court*
710 P.2d 833 (Cal. 1985) ...............................................................44

*Webber v. Uber Techs., Inc.*
2018 U.S. Dist. LEXIS 232200 (C.D. Cal. Sep. 5, 2018) ............28

*West v. Uber Techs.*
2018 U.S. Dist. LEXIS 233550 (C.D. Cal. Sep. 5, 2018) ............29

## Statutes

9 U.S.C. § 16(a) ...............................................................................4

28 U.S.C. § 1332(d) ..........................................................................4

Cal. Civ. Code § 1648 ................................................................. 44, 46

# INTRODUCTION

Plaintiffs-Appellees were terrorized by stalkers due to Defendants-Appellants' ("Defendants") reckless design and marketing of the Tile Tracker, a discrete tracking device foreseeably susceptible to abuse by stalkers (and even marketed for such purposes). Melissa Broad ("Broad") and Jane Doe ("Doe") (collectively, "Plaintiffs"), were tracked and harassed by third parties, via these third parties' own Tile Trackers. Yet, because Plaintiffs had previously created their own Tile accounts, for separate trackers not at issue, Defendant Tile, Inc. ("Tile") moved to compel them into arbitration under Terms of Service (or "Terms") governing the use of Plaintiffs' *own* Tiles. The District Court declined to compel Plaintiffs to arbitration for claims based on third-party stalking, correctly applying controlling law notice. That order should be affirmed.

First, the District Court found Plaintiffs did not manifest assent to Tile's October 2023 Terms, and thus it had jurisdiction over threshold issues of arbitrability. It is undisputed that Broad assented to Tile's January 2021 Terms when she opened her account and Doe assented to the February 2023 Terms when she opened hers, and the record demonstrates neither Plaintiff is bound by the October 2023 Terms. The District Court's finding that neither Plaintiff saw—much less assented to—an October 26, 2023 mass email that referenced the October 2023 Terms, was not clearly erroneous.

1

Second, the District Court correctly resolved arbitrability as a threshold issue for the court, not the arbitrator. Although the arbitration clause contained in the January 2021 and February 2023 Terms referred to the AAA rules (which Tile erroneously asserts is the same thing as agreeing to arbitrate threshold formation issues), those Terms also contained an exclusive Northern District of California venue clause expressly assigning disputes over the "interpretation, enforcement, or validity" of the Terms, including the arbitration clause, to the court.

Third, the District Court correctly held that the arbitration provisions to which Plaintiffs agreed could not reasonably encompass a claim involving a third-party's use of *his own* Tile Tracker to stalk Plaintiffs. The Terms themselves make clear that the arbitration clause governs disputes arising from a Tile account holder's *own* use of Tile's applications, services, and devices, *and not* claims arising from third parties' criminal misuse of separate devices not owned by Plaintiffs.

Fourth, the District Court correctly found, even if the arbitration clause were to cover third-party devices and third-party actions, such a clause would be unenforceable on unconscionability grounds. As the District Court observed, that result would be "overly harsh, unduly oppressive, or unfairly one-sided." The relevant provisions, as Tile interprets them, include claims bearing no material relation to the Terms, are buried in a take-it-or-leave it adhesive contract, and layer ambiguity concerning which tribunal decides arbitrability, all of which constitute

2

oppression and surprise. Under California's sliding-scale approach, the District Court properly found the arbitration clause to be both procedurally and substantively unconscionable.

The District Court faithfully applied settled law to each of the issues, and its well-founded order deserves affirmance in full.

## JURISDICTIONAL STATEMENT

The Court has appellate jurisdiction pursuant to 9 U.S.C. § 16(a). The District Court entered the order on appeal on December 19, 2024. (3-ER-325–26.) Defendants-Appellants filed their notice of appeal on January 17, 2025. (3-ER-312.)

The District Court had jurisdiction over the underlying dispute pursuant to the Class Action Fairness Act of 2005 (28 U.S.C. §§ 1332(d)) ("CAFA"), because the consolidated Class Action Complaint alleged damages in excess of $5,000,000 and there existed minimal diversity between at least one of the class members and Defendants, and none of the exceptions applied. 28 U.S.C. § 1332(d).

## ISSUES PRESENTED

1.　　Whether the District Court's finding that Plaintiffs Broad and Doe did not assent to Tile's October 2023 Terms was clearly erroneous, considering the record shows Plaintiffs never saw the mass-email notice concerning the Terms, the email did not mention arbitration, and Plaintiffs took no action manifesting assent?

2.　　Whether the District Court erred in finding the January 2021 and February 2023 Terms did not clearly and unmistakably delegate arbitrability to an arbitrator, given that (1) the purported incorporation of AAA rules was ineffective as a matter of law and (2) the contract explicitly assigned disputes over the "interpretation, enforcement, or validity" of the arbitration agreement to courts within the Northern District of California?

3.　　Whether Plaintiffs' claims arising from third parties' misuse of separate Tile Trackers lie outside the scope of any applicable arbitration clause given that Plaintiffs' claims do not stem from their own use of Tile's products, applications, and services?

4.　　Whether the District Court erred in finding the arbitration clauses in the January 2021 and February 2023 Terms were substantively and procedurally unconscionable, even if they could be construed to

encompass claims arising from third parties' misuse of Tile Trackers to stalk Plaintiffs?

## STATEMENT OF THE CASE

### A.    Relevant Facts

Plaintiffs' First Amended Complaint ("FAC") challenges the design, marketing, manufacturing, and sale by Defendants of a device known as a Tile Tracker, which may be attached to objects for location tracking purposes. (2-ER-209). The Tile Tracker works by synching the physical Tracker to an app (the "Tile App" or "App") on the owner's smartphone. (2-ER-210). The Tile App uses a combination of Wi-Fi and Bluetooth technology to locate the synched Tracker. (2-ER-210–11).

Defendants' Tile Tracker devices created concern in the media as early as 2013 due to their suitability for use by stalkers. (2-ER-211–16). This danger multiplied exponentially in 2021, when Tile teamed up with Amazon Sidewalk network products to expand the reach and efficacy of the Trackers, resulting in a network that now reaches 90% of the U.S. population. (2-ER-221). Defendants created a product capable of finding almost anyone anywhere, and they did so without creating effective safety precautions. (2-ER-216–23). Then, Defendants presented this product to stalkers by marketing it on pornographic and other questionable websites, obfuscating legal process in the context of stalker lawsuits, and blocking access to courts through unconscionably broad and confusing arbitration agreements which they claim consumers accepted merely by accessing

7

their website or opening an app. (2-ER-206, 2-ER-206, 2-ER-213, 2-ER-217–18, 2-ER-229–35).

Defendant-Appellee Tile, Inc.'s January 2021 Terms and the February 2023 Terms read identically:

> All disputes, claims or controversies arising out of or relating to this Agreement, any Tile product or service and its marketing, or the relationship between you and Tile ("Disputes") shall be determined exclusively by binding arbitration. This includes claims that accrued before you entered into this Agreement. The only Disputes not covered by this Section are claims (i) regarding the infringement, protection or validity of your, Tile's or Tile's licensors' trade secrets or copyright, trademark or patent rights; (ii) if you reside in Australia, to enforce a statutory consumer right under Australia consumer law; and (iii) brought in small claims court.

(2-ER-117–18; 2-ER-199–201) (the "arbitration clause"). Both set of Terms contain the following venue provision: "The exclusive jurisdiction for all disputes, claims or controversies arising out of or relating to these Terms, . . . or the . . . enforcement, interpretation or validity thereof . . . will be the state and federal courts located in the Northern District of California . . . ." (2-ER-116, 198–99).

The arbitration provision in Tile's October 2023 Terms, implemented after this litigation, reads:

> The term "Disputes," as used in this section, is intended to be interpreted broadly and includes any claim, dispute, or controversy between us that arises out of or relates to this Agreement, this Section 18 and/or any and all use of the Products or Services whether based in contract, statute, regulation, ordinance, tort (including fraud,

8

misrepresentation, fraudulent inducement, or negligence), or any other legal or equitable theory, and includes all threshold issue of arbitrability including the validity, enforceability or scope of this Section 18. The only Disputes excluded from this obligation to arbitration are: (1) claims that could be brought in small claims court; and (2) Company claims for injunctive or other equitable relief.

(2-ER-142).

Defendants alerted accountholders of the October 2023 Terms through a mass email which does not mention "arbitration" at all. (2-ER-174–75). Broad never saw that email until January 2024 when she found it in her spam folder. (2-ER-66). Doe never saw that email at all. (2-ER-69).

### 1. Plaintiff Broad

Plaintiff Broad was stalked via a Tile Tracker from 2021 to 2023, if not longer. (2-ER-235–37; 2-ER-64). With the help of her family, she discovered and removed two Tile Trackers hidden in her vehicle in March 2023. (2-ER-237; 2-ER-64). One of the Tile Trackers was purchased by her and was associated with her Tile account, to which her stalker had joint access. (2-ER-64). The other Tile Tracker was *not* purchased by her and was *not* associated with her Tile account or any other Tile account to which she has ever had access. *Id*. Desperate to help, Broad's father devised a plan to help his daughter in which he drove around with the discovered Tile Trackers while she escaped through a shopping mall, in an effort to throw Plaintiff's abuser off the scent. (2-ER-237). By Summer of 2023, Plaintiff worked with local law enforcement to bring charges against her abuser,

9

which remain pending. *Id.* Yet her stalker continues to call and harass her using blocked or unknown phone numbers. (2-ER-64–65). She continues to suffer from fear, anxiety, and depression from being tracked. (2-ER-237; 2-ER-64–65).

When Broad created her Tile account in 2021, she did not contemplate that she was releasing her right to hold Tile accountable for conduct relating exclusively to someone else's use of Tile devices. (2-ER-64; 2-ER-66). She was able to create her Tile account without opening the Terms at all. *Id*. Broad has no recollection of subscribing to a "Premium" package and suspects that it was her stalker who did so. (2-ER-64). She has taken no affirmative action to maintain her Tile account. (2-ER-65–66). Her Tile subscription renews and is billed automatically. *Id*. She has not used her Tile device or account for any purpose other than to combat her stalker since before 2023. (2-ER-65). The only reason she has not closed her account is due to the instruction of law enforcement. (2-ER-65–66). She has not had physical possession of her own Tile devices since July 2023 when she surrendered them to the police and has no knowledge of what action the police may have taken with the Tile devices. *Id*. Broad opened the Tile app in January 2024 for legal reasons but does not recall "connect[ing] a smart home device to one of her Tiles" and does not believe she did so. (2-ER-65). She also does not recall opening the Tile app in April 2024 and does not believe she did so, although she frequently asks friends and family to confirm that her phone

is not sharing location data and does not know if they open or trigger the Tile app in doing so. *Id*.

### 2. Plaintiff Doe

Plaintiff Doe got her Tile through a Life360 promotional offer in or around July 2023 in which she would receive a free Tile Tracker if she paid Life360 for a month subscription. (2-ER-68). She did not open it immediately, and eventually her Tile app offloaded from her phone as a result of nonuse. *Id*. When Doe became suspicious that she was being stalked in March 2024, she sought help from the police and Tile, downloading various mobile apps to try to evade her stalker. (2-ER-68; 2-ER-238–41). She re-downloaded the Tile mobile app at that time, specifically to use Tile's Scan and Secure feature to try to locate the device her stalker used. (2-ER-68; 2-ER-238). She had to open the Tile app to use Scan and Secure but did not have to login. (2-ER-68). The Scan and Secure feature suggested that someone had planted a Tile Tracker in her vehicle, but she was not able to find it. (2-ER-68; 2-ER-239). It was not until she removed the entire back seat of her vehicle several days later that Doe found the planted Tile Tracker hidden in the portion of her vehicle's frame that separates the cabin from the trunk. (2-ER-69; 2-ER-241). She destroyed it immediately. (2-ER-69). Doe did not purchase the Tile Tracker she found hidden in her vehicle. *Id.* Doe remains fearful that she is still being tracked. (2-ER-241). When she created a Tile

11

account, she did not contemplate that she was releasing her right to file a lawsuit relating to someone else's misuse of a Tile she did not purchase or control. (2-ER-68–69).

### 3. Allegations in the First Amended Complaint

The FAC asserts nine claims against Tile, Life360, and Amazon: (1) negligence, (2) strict products liability (design defect), (3) unjust enrichment, (4) intrusion upon seclusion, (5) violation of California's constitutional right to privacy, (6) violation of the California Invasion of Privacy Act ("CIPA"), (7) negligence per se, and violations of both the (8) unlawful and (9) unfair prongs of California's Unfair Competition Law ("UCL"). (2-ER-245–54). The crux of these claims is that Defendants knew for years that their products were being used to stalk people, failed to implement safeguards, and even took steps to make their trackers more difficult to detect, including disabling anti-stalking features under the guise of "anti-theft" protections. *Id.*

Plaintiffs seek to represent two putative classes: (1) individuals who were stalked (tracked without consent) with Tile Trackers, and (2) individuals who are at risk of being stalked by such trackers. (2-ER-242–43).

### B. Procedural History

The original complaint in this action, which did not name Plaintiffs Broad or Doe, was filed on August 14, 2023. (3-ER-319). Broad and Doe were added in

the First Amended Complaint, filed on April 26, 2024. (2-ER-204–55).

On June 7, 2024, Tile filed its Motion to Compel Arbitration. (3-ER-323.) Tile argued, *inter alia*, that Plaintiffs assented to mandatory arbitration in Tile's October 2023 Terms of Use, thereby agreeing to delegate questions of arbitrability to the arbitrator, and that the entire case should be stayed pending completion of the arbitration. (2-ER-82–89). Plaintiffs opposed both the argument to compel arbitration and the stay of proceedings. (2-ER-49–60). On August 27, 2024, the District Court held a hearing on the motion to compel arbitration. (3-ER-324–25). On December 19, 2024, the District Court partially granted and partially denied the motion to compel arbitration. (1-ER-24.)

The District Court ruled, in relevant part: (1) Plaintiffs did not assent to the October 2023 Terms because Tile failed to show Plaintiffs had actual knowledge of those terms, were on inquiry notice of those terms, or otherwise manifested consent by their continued use of the Tile App (1-ER-8–11), (2) the January 2021 and February 2023 Terms did not clearly and unmistakably delegate arbitrability to an arbitrator, given the simultaneous incorporation of AAA rules and an exclusive venue clause assigning disputes over the "interpretation, enforcement, or validity" of the Terms, including the arbitration clause, to the Northern District of California (1-ER-11–15), and (3) the arbitration clause cannot be enforced because it is unconscionable under California law, insofar as the claims concerned

13

a third party's use of Tile products or services to engage in stalking or other crimes against Plaintiffs (1-ER-15–20).

## SUMMARY OF THE ARGUMENT

The District Court did not err in finding (1) Plaintiffs did not assent to Tile's October 2023 Terms, (2) that arbitrability should be decided by the court as a threshold issue, not an arbitrator, and (3) that the relevant arbitration clause was unconscionable and unenforceable.

As to the October 2023 Terms, the undisputed record shows Broad agreed to the January 2021 Terms when she opened her account and Doe agreed to the February 2023 Terms when she opened hers. Neither saw Tile's October 26, 2023 mass email (which, itself, contained no mention of arbitration) purporting to update its Terms. Tile offered no evidence of individual receipt, review, or any affirmative act manifesting assent to the updated terms. Under settled Ninth Circuit authority, continued use alone cannot substitute for absent notice and assent. The District Court correctly applied this Court's controlling law and found no formation of an October 2023 arbitration agreement.

As to arbitrability, the January 2021 and February 2023 arbitration provisions may refer to, or otherwise attempt to incorporate AAA rules, *en masse*, but this—without more—would not deprive the District Court of deciding threshold issues of arbitrability. Courts routinely find that incorporation of AAA rules, alone, does not have that effect. More critically, these two provisions contain an exclusive Northern District of California venue clause assigning

15

disputes concerning the "interpretation, enforcement, or validity" of the arbitration provision to the court. Read in the most charitable way possible for Appellant, the tension between (1) a purported incorporation of all the AAA rules and (2) an express venue clause delegating threshold formation and validity analysis to the Northern District of California could, *at best*, result in ambiguity in the adhesion contract at issue. Even setting aside the doctrine of *contra proferentem* that resolves this issue in Plaintiffs' favor, it is equally axiomatic that delegation must be "clear and unmistakable." By any applicable metric, the District Court correctly decided arbitrability as a threshold question.

Turning to the District Court's analysis of the arbitration provisions at issue, its holdings were correct. These provisions only speak to Plaintiffs' *own* use of Tile's products and services, and cannot reasonably be read to apply to third parties' use of *separate* Tile Trackers to stalk Plaintiffs. Broad language such as "arising out of or relating to any Tile product or service and its marketing" does not compel arbitration of claims lacking any meaningful relationship to the parties' contractual relationship, such as claims involving third-party criminal misuse of separate Tile Trackers. The District Court's decision to retain jurisdiction over third-party-misuse claims, and only claims tied to the Plaintiffs' individual use of Tile products and services, is procedurally workable and consistent with the nature of Plaintiffs' claims.

16

Finally, the District Court's finding that the arbitration clause was unenforceable due to unconscionability was correct. Defendants' interpretation of the arbitration clause would encompass claims with no material relation to Plaintiffs' contracts with Tile, rendering the clause unduly one-sided and oppressive. The District Court correctly found substantive unconscionability due to the overbreadth of Defendants' interpretation of the clause, and found procedural unconscionability due to the adhesive nature of the Terms combined with the element of surprise, including the unexpected application of the arbitration clause to sweep in claims related to third-party misconduct. Under California's sliding-scale framework, these defects render the arbitration clause unenforceable as to Plaintiffs' claims arising from third-party-misuse of Tile Trackers that Plaintiffs never owned.

## STANDARD OF REVIEW

This Court reviews *de novo* the denial of a motion to compel arbitration and reviews for "clear error" any factual findings underlying the district court's order. *Holley-Gallegly v. TA Operating, LLC*, 74 F.4th 997, 1000 (9th Cir. 2023).

## ARGUMENT

**I. The District Court Correctly Held Plaintiffs Did Not Assent to the October 2023 Terms.**

In both their motion to compel arbitration before the District Court and their opening brief, Tile disputes which contractual provisions govern. Tile argues the

17

District Court should *not* have looked to the Terms to which Plaintiffs undisputedly agreed, and instead should rely on October 2023 Terms that were drafted after Plaintiffs created their Tile accounts.

Key facts are not in dispute. When Plaintiffs opened their Tile accounts, they agreed to the Terms in effect at the time. Broad created her Tile account on June 11, 2021 and agreed to the January 2021 Terms. (1-ER-5). Doe created her Tile account on July 6, 2023 and agreed to the February 2023 Terms. (*Id.*) Broad and Doe concede that they are bound by the January 2021 and February 2023 Terms, respectively. (1-ER-8).

The January 2021 Terms (Broad) and February 2023 Terms (Doe) have identical arbitration and venue provisions. (2-ER-117, 199–200 (arbitration); 2-ER-116, 198–199 (venue)). The District Court analyzed those provisions and concluded in each instance: (1) the gateway issue of arbitrability was not clearly and unmistakably delegated to an arbitrator, and (2) the relevant arbitration clause was unenforceable as Plaintiffs' claims because it is unconscionable under California law. (1-ER-11–22). Tile argues that the District Court erred in applying the January 2021 and February 2023 Terms.

Tile asserts Plaintiffs are bound by the arbitration clause found in an agreement hyperlinked to an October 26, 2023 mass email, which Defendants claim to have sent to all Tile users. Appellants' Brief at 17-23. The last sentence

18

of the fourth paragraph of that email stated: "If you continue to use any of our apps, or access our websites (other than to read the new terms) on or after November 26, 2023, you are agreeing to the new Terms and Privacy Policy." (2-ER-95; 2-ER-175). As the District Court noted, the email "began with a large header, 'Updated Terms of Service and Privacy Policy, and provided a hyperlink that connects to the October 2023 Terms." (1-ER-7; 2-ER-95; 2-ER-175). Notably, nothing in this email mentioned "arbitration."

Neither Plaintiff saw the email when it was sent. (1-ER-7; 1-ER-9). Doe never saw the October 2023 mass email at all (2-ER-69), and Broad only saw it after searching for it in her spam folder in January 2024, after the filing of this lawsuit (2-ER-66). Tile put forth evidence showing only that Plaintiffs Doe and Broad continued to use the Tile app after the mass email went out. (1-ER-7; 2-ER-95; 2-ER-97).

In light of these facts, there is no basis for overturning the District Court's ruling that Plaintiffs Broad and Doe are not bound by the October 2023 Terms. Tile fails to identify any clearly erroneous factual findings in the District Court's application of the January 2021 and February 2023 Terms. *Holley-Gallegly v. TA Operating, LLC*, 74 F.4th 997, 1000 (9th Cir. 2023) ("We review for clear error any factual findings underlying the district court's order."). The District Court applied Ninth Circuit precedent in an even-handed fashion, finding correctly that

no agreement was formed between Tile and either Broad or Doe in October 2023 because the elements of notice and mutual assent were lacking.

### A. Tile Failed to Provide Reasonably Conspicuous Notice of the October 2023 Terms.

"[A]rbitration is a matter of contract . . . ." *Henry Schein, Inc. v. Archer & White Sales*, Inc., 586 U.S. 63, 65 (2019). "The internet has 'not fundamentally changed the requirement that mutual manifestation of assent, whether by written or spoken word or by conduct, is the touchstone of contract.'" *Dohrmann v. Intuit, Inc.,* 823 F. App'x 482, 483 (9th Cir. 2020) (citation omitted); *accord Nguyen v. Barnes & Noble Inc.,* 763 F.3d 1171, 1175 (9th Cir. 2014). Mutual assent can be shown through actual or inquiry notice of the terms of an arbitration agreement. *Nguyen*, 763 F.3d at 1177. As noted above, and as is undisputed in the record, the October 2023 email did not mention anything relating to arbitration, and therefore there was no actual notice provided to Plaintiffs. *E.g., Platt v. Sodexo, S.A*., 2025 U.S. App. LEXIS 19535, *15 (9th Cir. Aug. 4, 2025) ("Further, the 2022 email contained no express language that Sodexo was adding the new arbitration provision or that his continued participation in the Plan constituted consent or agreement to the new provision. Indeed, Sodexo does not contest the district court's determination that the 2022 SPD email was insufficient to provide such notice"). As to inquiry notice, this exists where a "reasonably prudent" consumer

20

would be put on notice of the "agreement's **_existence_** and contents." *Id.* (emphasis added).

These principles apply with equal force to contracts formed online. *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022). Online contracts, of course, include Terms of Service, and any version of those Terms. But when a party seeks to compel arbitration pursuant to an arbitration provision added to a contract *after* the other party's acceptance of an early version, the party seeking to compel arbitration must show that it provided notice of the new Terms, *and* that there was mutual assent to the agreement to arbitrate, itself. *Jackson v. Amazon.com, Inc.,* 65 F.4th 1093, 1099 (9th Cir. 2023).

It is Tile's burden to show that it provided notice of the October 2023 Terms to Plaintiffs Broad and Doe and that there was mutual assent to the agreement to arbitrate. Tile failed to demonstrate that either Plaintiff reviewed or received the October 2023 email, and on appeal Tile points to no additional evidence concerning Plaintiffs' receipt or review of the October 2023 mass email. The District Court was not clearly erroneous when ruling that the October 2023 Terms do not bind either Plaintiff.

### a. Plaintiffs Did not Have Actual or Inquiry Notice of the Existence of the October 2023 Terms.

Tile does not challenge the District Court's factual finding that neither Plaintiff had actual notice of the October 2023 Terms. Rather, Tile makes an

21

inquiry notice argument resting on inapposite caselaw and ignoring key facts that are not in dispute.

In the realm of inquiry notice, this Court has issued directly-on-point opinions pertaining to notice and assent for clickwrap, browsewrap, scrollwrap, and sign-in wrap agreements, creating authority on when website users form contracts on the Internet. *E.g., Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1014-20 (9th Cir. 2024) (discussing each type of Internet agreement and analyzing the conspicuous notice question in the context of the at-issue sign-in wrap agreement); *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022) ("To avoid the unfairness of enforcing contractual terms that consumers never intended to accept, courts confronted with online agreements such as those at issue here have devised rules to determine whether meaningful assent has been given."); *Nguyen*, 763 F.3d at 1175-79 (defining the contours of notice and assent in clickwrap and browsewrap agreements). This body of authority unambiguously shows that Tile fails to properly articulate the relevant standard. (Appellants' Opening Br. at 17).

Specifically, Tile addresses browsewrap agreements, which only apply when an individual is visiting a website. *Nguyen*, 763 F.3d at 1177. Neither Broad nor Doe did this. Instead, they were purportedly sent an email, which they either did not receive or else review prior to the filing of this lawsuit. (2-ER-66; 2-ER-

22

69). Tile glosses over that difference and offers authority that only would apply if Broad or Doe had visited a *website* with the October 2023 Terms. (Appellants' Opening Br. at 17.) But neither Broad nor Doe were aware of the October 26, 2023 email, and also were not browsing Tile's website (nothing else in the record suggests that they would have browsed Tile's website, independently). Any authority from this Court regarding browsewrap agreements is inapposite. Further, the arbitration provisions in the earlier (January 2021 and February 2023) Terms stated: "Tile will not enforce material changes to this section in the future unless you expressly agree to them." (2-ER-119; 2-ER-201). Tile does not show any other evidence of "express" agreement.[1]

_____

[1] Tile's oblique evidentiary challenges on this point amount to nothing. Tile states that Broad acknowledged receipt of the email (Appellants' Opening Br. at 21), failing to mention that the "receipt" occurred *after* the filing of this lawsuit, when she searched for the email and found it in her spam folder. As the District Court noted, Tile did not argue that Broad agreed to arbitrate by viewing the October 2023 email in her spam folder in January 2024. (MTC Order, Dkt. 65, at 9 n. 5.) Tile also fails to make this argument on appeal. To the extent Tile could be deemed to be making that argument based on its reference to Broad's "receipt" of the October 2023 email in January 2024, Tile fails to show, as it must, that "exceptional circumstances" warrant this Court's consideration of an argument raised for the first time on appeal. *United States v. Shaltry (In re Home Am. T.V.- Appliance Audio, Inc.)*, 232 F.3d 1046, 1052 (9th Cir. 2000). With respect to Doe, Tile attempts to flip the burden to Doe to show that she did not receive the email. (Appellants' Opening Br. at 22.) It is Tile's burden to show notice and assent, not Plaintiffs' burden to show a lack thereof. *Jackson*, 65 F.4th at 1100 ("It was Amazon's burden to show assent, not Jackson's to show a lack thereof.").

23

Tile's failure to even address Plaintiffs' inquiry notice (or lack thereof) of the October 2023 Term's *existence* is fatal to its argument. Tile cites cases involving updated Terms sent via mass email, but none of that authority involves a plaintiff who never saw the email at issue. *Ghazizadeh v. Coursera, Inc.,* 737 F. Supp. 3d 911, 933 (N.D. Cal. 2024) (defendant supplied evidence that it sent the notice to the plaintiff's email and the plaintiff "[did] not contend that he did not receive the email"); *Sadlock v. Walt Disney Co.*, 2023 U.S. Dist. LEXIS 132295, at *34-35 (N.D. Cal. July 31, 2023) (plaintiff implicitly conceding that he read the email notice containing the updated terms by arguing that "the email was lengthy and that [unlike the instant matter in which arbitration was not mentioned at all] the reference to the arbitration agreement came at the end").

### b. Plaintiffs Broad and Doe Did not Unambiguously Manifest Assent to the October 2023 Terms.

Assuming <u>arguendo</u> that Tile's October 2023 email could be considered "reasonably conspicuous notice," Tile still does not show that either Broad or Doe took any action to manifest assent. Absent actual knowledge of the agreement, which is not present here, "an enforceable contract will be found based on an inquiry notice theory only if: (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; *and* (2) the consumer takes some action, *such as clicking a button or checking a box*, that unambiguously manifests his or her assent to those terms." *Berman*, 30 F.4th at

24

856 (emphasis added). This is a two-part test. *Oberstein v. Live Nation Entm't, Inc.,* 60 F.4th 505, 514 (9th Cir. 2023).

If Tile were to establish reasonably conspicuous notice of the October 2023 Term's existence and contents (it has not), it offers no evidence of any action by either Plaintiff assenting to those Terms. *Sifuentes v. Dropbox, Inc.,* 2022 U.S. Dist. LEXIS 125273, at *11 (N.D. Cal. June 29, 2022) ("There is nothing in the record to suggest that Plaintiff could not use the service until he indicated his assent, that he would have been advised of new terms and conditions while using Defendant's services, or that Defendant ever tracked whether Plaintiff had opened its email.").

**B.      Plaintiffs' Continued Use the Tile App to Evade Their Stalkers Did Not Constitute Assent in the Absence of Actual or Constructive Notice.**

Continued use is not a doctrine that supplants the fundamental requirements of notice and mutual assent. *Sifuentes*, 2022 U.S. Dist. LEXIS 125273, at *12 ("Given the complete lack of evidence of notice within Defendant's service itself, Plaintiff's ongoing use of the service is irrelevant to determining whether he had actual or constructive notice of the post-2011 terms of service."). There is no Ninth Circuit precedent that renders Plaintiffs' "subjective awareness" of Tile's October 2023 email irrelevant. (Appellants' Opening Br. at 19.). This is particularly true given that Tile's prior Terms stated that they would not be

changed absent "*express*" consent from Plaintiffs. (2-ER-119; 2-ER-201). Tile's

reliance on *Jackson* is therefore wrong. As this Court noted in *Jackson*, under

California law, a party cannot be bound by contractual provisions of which they

are unaware, regardless of any "apparent manifestations" of consent. *Jackson*, 65

F.4th at 1099.

Nothing in the January 2021 and February 2023 Terms concerning future

updates can constitute a "signal" of assent to the October 2023 Terms, particularly

on a record in which neither Plaintiff received Tile's October 2023 email prior to

the filing of this lawsuit. This Court rejected that very argument in *Jackson*:

> Amazon relies on a provision in the TOS from three years
> earlier to establish that drivers knew they would be bound
> by any future modifications if they continued to perform
> services or use the app. Yet, if Flex drivers did not receive
> notice of the revised TOS, the fact that they continued
> working and using the Amazon Flex app could not
> demonstrate assent.

*Jackson*, 65 F.4th at 1100.

Tile fares no better under the language of the October 2023 email itself.

Once again, *Jackson* is directly on point. *Jackson* involved a similar dispute about

which terms ought to apply to the defendant's motion to compel arbitration. The

plaintiff, an Amazon Flex driver, accepted Amazon's 2016 Terms when he signed

up for Amazon's Flex program. 65 F.4th at 1095. As is the case here, the

plaintiff's acceptance of an earlier version of the defendant's Terms was not in

dispute. Amazon sought to enforce an arbitration provision in a later version of its Terms—a version that Amazon sent to all Flex drivers via mass email in 2019. *Id.* This Court affirmed the district court's holding that the 2016 Terms governed the parties' relationship, and not the 2019 Terms that Amazon sent out via mass email. *Id.* at 1101. This was because Amazon did not show that it "actually provided notice of those terms," and thus continued use did not constitute assent. *Id.* The same is true here.

Plaintiffs' purported inquiry notice arises solely from Tile's October 2023 email. But neither Plaintiff was aware of the email's existence, and thus there could be no inquiry notice. Tile points to Broad's automatic billing of her Tile account, use of the Tile app, and connection to a smart home device, as well as to Doe's use of the Tile app (in a desperate attempt to locate the Tracker being used to stalk her) (Appellants' Opening Br. at 20-21), but none of these facts show that Broad or Doe received—much less saw and cognized—the October 2023 email prior to the filing of this litigation, or in any way manifested assent to the October 2023 Terms. *Alkutkar v. Bumble Inc.,* 2022 U.S. Dist. LEXIS 162287, at *17 (N.D. Cal. Sep. 8, 2022) ("Defendants' email record does not establish that plaintiff had actual or constructive knowledge of the updated Terms because...it has no record that the email was received or even opened."); *Sellers v. Bleacher Report, Inc.,* 2023 U.S. Dist. LEXIS 131579, at *20 (N.D. Cal. 15 July 28, 2023)

27

("[T]he email shows no recipient in the 'To:' field, so there is no evidence it was sent [or] that plaintiff received it."). This is Tile's burden, and it has failed to make that showing.

The district court in *Sadlock*, one of the cases that Tile cites, hypothesized the very facts at issue here, identifying the flaw in Tile's continued use argument:

> The Court is not opining that, in any instance in which a defendant sends an email giving notice of updated terms and a plaintiff continues to use the defendant's service, the inquiry notice test has been satisfied. Indeed, the Court can see potential problems with a defendant relying on notice via email (problems aside from whether the email gave reasonably conspicuous notice of the terms of use). ***For example, was the email in fact received, or was the email shunted into a spam folder? Is there evidence that the plaintiff actually saw the email?*** … By relying solely on the sending of an email and continued service without requiring the recipient to take some demonstrable affirmative step or proof of receipt and review, the proponent of the putative notice risks a finding of no constructive notice and assent.

*Sadlock*, 2023 U.S. Dist. LEXIS 132295, at *36 (emphasis added); MTC Order, Dkt. 65, at 9.

In all of Tile's cited-to authority the plaintiffs' receipt of the email containing the updated user agreement or Terms was not in question. *Webber v. Uber Techs., Inc.,* 2018 U.S. Dist. LEXIS 232200, at *10 (C.D. Cal. Sep. 5, 2018); *Kamath v. Coinbase, Inc.,* 2024 U.S. Dist. LEXIS 38443, at *10 (N.D. Cal. Mar. 5, 2024); *In re Facebook Biometric Info. Privacy Litig.,* 185 F. Supp. 3d

28

1155, 1167 (N.D. Cal. 2016); *West v. Uber Techs.,* 2018 U.S. Dist. LEXIS 233550, at *13 (C.D. Cal. Sep. 5, 2018). In *In re Facebook*, the plaintiffs received an additional form of notification regarding the updated terms in the form of a "jewel notification" on their Facebook feed. *In re Facebook Biometric Info. Privacy Litig.,* 185 F. Supp. 3d at 1167. And in *Kamath*, the plaintiff was also notified of the updated terms via a landing page that she was directed to, where she also clicked an "accept terms" button. *Kamath*, 2024 U.S. Dist. LEXIS 38443, at *12. These indicia assent are absent from the evidentiary record in this case. Tile presents no evidence (beyond the October 2023 email, of which neither Plaintiff was unaware) of any knowledge of—much less assent to—the October 2023 Terms.

### C. The District Court Properly Applied Controlling Ninth Circuit Authority on Notice and Assent.

The District Court applied California contract law in straightforward fashion. (1-ER-8–11). Based on the evidence, it correctly found that Tile failed to meet its required showing that Plaintiffs Broad and Doe had either actual knowledge of, or were on inquiry notice of, the October 2023 Terms. It was not error to reject a *per se* finding that inquiry notice is satisfied any time a defendant sends a mass email notice of updated terms and a plaintiff continues to use the defendant's service (*id.* at 8), and the District Court cited and applied the

appropriate authority from this Court and others and found Tile's evidence of notice and mutual assent to be lacking.

Contrary to Tile's argument, the District Court did not fail to analyze any prong of the notice inquiry. (Appellants' Opening Br. at 17.) The content and design of the October 2023 email was not germane to the District Court's analysis because Tile failed to show that Broad or Doe was on notice of the email in the first place. Nor did the District Court misapprehend California law on the issue of continued use and assent. (*Id.* at 21-22). Plaintiffs Broad and Doe were not on notice of the October 2023 Terms—which were hyperlinked to an email they never saw and which said nothing about "arbitration"—so continued use of the Tile app or service in 2024 could not constitute assent.

## II. The January 2021 and February 2023 Terms Do Not Clearly and Unmistakably Delegate Arbitrability.

Tile contests the District Court's ruling that the arbitration provisions in the January 2021 and February 2023 Terms do not clearly and unmistakably delegate questions of arbitrability to the courts of the Northern District of California. While the January 2021 and February 2023 Terms each state that "[t]he arbitration shall be administered by the American Arbitration Association ("AAA") under its Commercial Arbitration Rules and, where appropriate, the AAA's Supplementary Procedures for Consumer Related Disputes ("AAA Consumer Rules")[,]" (2-ER-118, 200), both set of Terms *also* contain the following venue provision: "The

30

***exclusive jurisdiction*** for all disputes, claims or controversies arising out of or

relating to these Terms," which is defined to include the arbitration agreement, "or

the…***enforcement, interpretation or validity*** thereof…will be the state and federal

courts located in the Northern District of California." (2-ER-116, 198–99

(emphasis added)).

> **A.    The Venue Provisions in the Applicable Arbitration Agreements Make Clear That Threshold Issues of Arbitrability Are for Courts in the Northern District of California to Decide.**

"Gateway" questions of arbitrability "are presumptively reserved for the

court," and not the arbitrator, to decide, even where there is a facial agreement to

arbitrate. *Portland GE v. Liberty Mut. Ins. Co*., 862 F.3d 981, 985 (9th Cir. 2017).

Gateway questions include "'whether the parties have a valid arbitration

agreement or are bound by a given arbitration clause, and whether an arbitration

clause in a concededly binding contract applies to a given controversy.'" *Id.*

(citations omitted). Notwithstanding the presumption of judicial determination,

parties may agree to delegate the adjudication of gateway issues to the arbitrator

only where the parties' arbitration agreement delegates that issue by "clear and

unmistakable evidence." *Henry Schein, Inc. v. Archer & White Sales, Inc*., 586

U.S. 63, 69 (2019).

"While the Court generally resolves ambiguities in arbitration agreements

in favor of arbitration, it resolves ambiguities as to the delegation of arbitrability

31

in favor of court adjudication." *Dillion v. Bet Info. Sys.,* 2019 U.S. Dist. LEXIS 238318, at \*9 (N.D. Cal. Feb. 19, 2019). Courts take this approach because "[a]rbitration is a matter of contract and a party cannot be required to submit any dispute which he has not agreed so to submit." *AT&T Techs. v. Communs. Workers of Am.,* 475 U.S. 643, 649 (1986). Given this principle, "one can understand why courts might hesitate to interpret silence or ambiguity on the 'who should decide arbitrability' point as giving the arbitrators that power, for doing so might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 945 (1995).

The venue provision in Tile's January 2021 and February 2023 unambiguously reserves the question of arbitrability for the courts in the Northern District of California. But to the extent one could perceive any ambiguity in these delegation provisions—and no reasonable court could—the question of arbitrability nonetheless remains within the purview of a court if an arbitration agreement has an "inherent tension" that leaves open the possibility that a court could decide the issue of arbitrability. *In re Tesla Advanced Driver Assistance Sys. Litig.*, 2023 U.S. Dist. LEXIS 176556, \*16-\*17 (N.D. Cal. Sep. 30, 2023 (recognizing an inherent tension and declining to find that incorporation of AAA rules constitutes a clear and unmistakable evidence of an intent to delegate

arbitrability where other language in the arbitration agreement leaves open the possibility that a court could decide the issue of arbitrability).

Tile misleadingly cites to *Brennan v. Opus Bank* to posit a bright line rule that does not exist, concerning the incorporation of AAA rules in arbitration agreements. 796 F.3d 1125 (9th Cir. 2015). *Brennan* stands for the proposition that incorporation of AAA rules into an arbitration agreement ***may*** constitute "clear and unmistakable evidence" of an intent to delegate arbitrability when an agreement is otherwise silent as to who decides the issue. *Id.* at 1130. As explained, given the venue provision in the January 2021 Terms and February 2023 Terms, that cannot be the case here.

The venue provision in Tile's January 2021 and February 2023 is, in Respondent's view, entirely dispositive and forecloses all further inquiry. But read in a light most charitable to Tile (which should not be the case given that Tile is the drafter of its own adhesion contract),[2] at best this argument creates an ambiguity and tension as to the delegation of arbitrability, which, in turn, favors court adjudication. *In re Tesla Advanced Driver Assistance Sys. Litig.*, 2023 U.S. Dist. LEXIS 176556, at *16-*17. As the District Court explained, AAA's jurisdictional rules give an arbitrator the *possibility* to decide arbitrability, but not

---

[2] *E.g., Cargo Dev. Group v. Abernathy*, 1988 U.S. App. LEXIS 21469, at *4 (9th Cir. Nov. 14, 1988) ("Ambiguous clauses in adhesion contracts are interpreted against the drafter of the contract.").

33

*exclusive* jurisdiction over that question. (1-ER-13 ("By phrasing its rule in an open-ended way, the AAA provided the parties the flexibility to provide for concurrent, or even exclusive, jurisdiction in the courts on matters of arbitrability.")). The plain terms of Tile's venue provision provide that disputes concerning the interpretation, enforcement, and validity of the arbitration provision are to be decided exclusively by a court in the Northern District. That encompasses the threshold question of arbitrability. *Travelers Indem. Co. v. Premier Organics, Inc*., 2017 U.S. Dist. LEXIS 161282, *4 (N.D. Cal. Sep. 29, 2017) ("We consider the contract as a whole and interpret the language in context, rather than interpret a provision in isolation."); *Mohamed v. Uber Techs, Inc.*, 848 F.3d 1201, 1209 (9th Cir. 2016) (delegation provision covering disputes concerning interpretation, enforceability, and validity deemed a clear and unmistakable delegation of the question of arbitrability). At minimum, the incorporation of AAA rules is ambiguous, and there is tension between that provision and the venue provision. Given that ambiguity and tension, the arbitration agreement does not clearly and unmistakably delegate the issue of arbitrability to an arbitrator. *Dillion v. Bet Info. Sys.,* 2019 U.S. Dist. LEXIS 238318, at *9.

Tile's cases are distinguishable. As the District Court explained, the venue and delegation provisions in *Mohamed* were different than those at issue here. The

*Mohamed* venue provision gave courts exclusive jurisdiction over "*any* disputes, actions, claims or causes of action arising out of or in connection with [the arbitration agreement]." *Mohamed*, 848 F.3d at 1209 (emphasis added). That provision made no mention of disputes concerning the validity, interpretation, or enforceability of the arbitration agreement. To the contrary, each of these issues—validity, interpretation, and enforceability—was expressly covered by the arbitration agreement's delegation provision. *Id.* at 1208-09. This Court concluded that there was no tension between the delegation provision's "unambiguous statement identifying arbitrable claims and arguments" and the venue provision, which would cover an action to enforce the arbitration agreement (as opposed to determine its enforceability) or obtain a judgment enforcing an arbitration award. *Id.* at 1209.

Tile's argument that there is no conflict between—or ambiguity created by—the reference to AAA rules and the venue provision misses the mark. Recognizing the tension between these two provisions is, in fact, the only way to read the arbitration agreement as a whole and give meaning to each of its provisions. *Travelers Indem. Co.*., 2017 U.S. Dist. LEXIS 161282, at *4. Interpreting the venue provision as giving a district court jurisdiction over the gateway issue of arbitrability in no way renders the delegation provision inoperative or meaningless.

35

While it is true that a delegation provision that expressly encompasses the gateway issue of arbitrability could theoretically be harmonized with a venue provision giving a court jurisdiction over other disputes, Tile's arbitration agreement fails to do so. Under the actual language of Tile's arbitration agreement, issues of interpretation, enforceability, and validity are not covered by the delegation provision; rather, they are expressly included in the venue provision granting jurisdiction to courts in the Northern District. The District Court correctly distinguished *Mohamed* on this basis. (1-ER-13–15). None of the cases that Tile cites involved arbitration agreements with venue provisions that, like the one here, reserve jurisdiction over interpretation, enforceability, and validity to a court. *Fli-Lo, LLC v. Amazon.com, Inc.*, 97 F.4th 1190, 1192-93 (9th Cir. 2024) (arbitration agreement contained a delegation provision that incorporated AAA rules with no mention of a venue provision that caused tension or created an ambiguity by giving courts jurisdiction over issues of interpretation, enforcement, or validity); *Fuller v. Bloom Inst. of Tech.,* 2024 U.S. Dist. LEXIS 4638, at *2-*3 (N.D. Cal. Jan. 9, 2024) (same); *Bell v. Redfin Corp.,* 2021 U.S. Dist. LEXIS 226739, at *5 (S.D. Cal. Aug. 12, 2021); *Taylor v. Shutterfly, Inc.,* 2018 U.S. Dist. LEXIS 154925 (N.D. Cal. Sep. 11, 2018); *Dream Theater, Inc. v. Dream Theater*, 124 Cal. App. 4th 547, 549 (Cal. App. 2004).

36

Contracts must be interpreted as written. *Int'l Bhd. of Teamsters, Local 396 v. NASA Servs.,* 957 F.3d 1038, 1042 (9th Cir. 2020). The venue provision in Tile's arbitration agreement does more than simply "identify the court that would have jurisdiction in the event a judicial proceeding becomes necessary," (Appellants' Opening Br. at 33)—it gives district courts exclusive jurisdiction over disputes arising from or relating to the enforcement, interpretation, or validity of the arbitration agreement.

The District Court correctly determined that arbitrability was a threshold issue within its jurisdiction. The presence of a venue provision expressly assigning disputes over the "interpretation, enforcement, or validity" of the arbitration agreement to the Northern District of California created an ambiguity that defeated any purported delegation to the arbitrator, foreclosing a finding of "clear and unmistakable" intent to delegate under governing law.

**B.      Incorporation of AAA Rules Insufficient to Delegate Arbitrability in Consumer Contracts.**

Mere reference to AAA rules—and nothing more—is insufficient to delegate the issue of arbitrability to an arbitrator in the context of a consumer arbitration agreement.

In *Brennan*, this Court expressly limited its holding to the facts of that case (an employment agreement between two sophisticated parties) and stated that it was not deciding the effect, if any, of incorporating AAA arbitration rules into

37

consumer contracts. *Id.* at 1132; *Galilea, LLC v. AGCS Marine Ins. Co.*, 879 F.3d 1052, 1062 (9th Cir. 2018) ("As in *Brennan* itself, we need not decide whether the Brennan rule applies when one or more party is unsophisticated. Both parties here are sophisticated…."). Indeed, "[w]here at least one party is unsophisticated, judges in [the Northern [D]istrict] routinely find that the incorporation of the AAA rules is insufficient to establish a clear and unmistakable agreement to arbitrate arbitrability." *Magill v. Wells Fargo Bank*, N.A., 2021 U.S. Dist. LEXIS 248891, at *15 (N.D. Cal. June 25, 2021) (collecting cases).

In *Fli-Lo Falcon*, this Court recognized that the sophistication of the parties matters when a party challenges arbitration under a delegation provision that incorporates AAA rules. 97 F.4th at 1201 ("This is not a case with unsophisticated consumers entering into extensive agreements where their lack of sophistication impacts their ability to discern their contractual obligations."). In cases, involving consumer arbitration agreements, reference to the AAA rules does not clearly and unmistakably establish an agreement to delegate questions of arbitrability. This is because Tile customers like Broad and Doe could not be expected to understand "that incorporation of the AAA rules would mean that the overwhelming majority of disputes arising out of the [agreement] would be resolved by an arbitrator." *Id.* at *16. It is true that some district court judges have declined to take the parties' sophistication into account, but this Court's decision in *Fli-Lo Falcon* shows that

incorporation of AAA rules is insufficient to clearly and unmistakably delegate arbitrability here.

Though the District Court did not address this issue, should the Court need to reach it, Broad and Doe's status as consumer-customers of Tile weighs against the conclusion that incorporation of AAA rules constitutes clear and unmistakable evidence of an agreement to delegate the question of arbitrability to an arbitrator. Indeed, the fact that that Tile directs users to distinct (and incompatible) versions of the AAA rules—commercial versus consumer—entirely undercuts its argument that the distinction is without significance. Appellants' Opening Br. at 8.

## III. Plaintiffs' Claims Fall Outside the Scope of Any Arbitration Agreement.

Defendants argue the arbitration clause "unquestionably" encompasses claims based on a third party's misuse of other Tile Trackers to stalk Plaintiffs. Appellants' Opening Br. at 37–44. The District Court did not directly address whether the claims were within or without the scope of the provisions at issue, but instead ruled that, assuming the applicable arbitration clauses *did* encompass such claims, they were unconscionable and unenforceable. (1-ER-15–20).[3] In doing so, the court explained that "no reasonable consumer expects that an arbitration provision would cover claims that have nothing to do with the service agreement

---

[3] For the reasons discussed in Section IV, the District Court did not err in reaching this conclusion.

containing the arbitration clause," (1-ER-18), that "it is beyond a consumer's reasonable expectation that [the arbitration clause] would cover claims having no relation to their own use of a Tile Tracker or the services provided to them as part of their Tile accounts," (1-ER-19), and that consumers would be "reasonably shocked to learn that creating a Tile account forces them to arbitrate claims about a third party's use of Tile products or services to stalk them." (1-ER-20).

Both the January 2021 and February 2023 Terms include an arbitration clause requiring arbitration of "[a]ll disputes, claims or controversies arising out of or relating to this Agreement, any Tile product or service and its marketing, or the relationship between you and Tile." (2-ER-117, 199). Defendants contend Plaintiffs' claims, even though they involve the misuse of the Trackers owned and used by third parties, are still disputes arising out of "any Tile product or service and its marketing." Appellants' Opening Br. at 39–40. But even broadly worded arbitration agreements must be interpreted to encompass only the matters the parties intended to arbitrate. *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1045 (9th Cir. 2009) ("[h]owever broad may be the terms of a contract, it extends only to those things concerning which it appears that the parties *intended* to contract") (citations and quotations omitted). It is clear the arbitration clause governs disputes arising from a Tile account holder's *own use* of Tile products and services.

40

Because arbitration is fundamentally a "matter of contract, the central or 'primary' purpose of the FAA is to ensure that 'private agreements to arbitrate are enforced according to their terms.'" *Momot v. Mastro*, 652 F.3d 982, 986 (9th Cir. 2011) (internal quotations omitted). Crucially, "'[h]owever broad may be the terms of a contract, it extends only to those things concerning which it appears that the parties *intended* to contract.'" *Mundi*, 555 F.3d at 1045.

The January 2021 and February 2023 Terms concern the *user's* access to and use of Tile products, applications, and services. The opening provision specifically refers to the user "accessing or using the applications and services owned or operated by Tile, Inc." (2-ER-101; 2-ER-179). The first seven paragraphs then address the downloading, installation, and operation of the Tile app, including, *inter alia*: (1) advising users they must use the Tile application and services solely for "personal non-commercial purposes," (2-ER-102; 2-ER-180–81); (2) providing certain acknowledgements that are triggered when the user "downloads [Tile's] App from the Apple App Store," (2-ER-102; 2-ER-181); (3) delineating users' obligations in "creating an account" with Tile, Inc. (2-ER-102; 2-ER-181); (4) seeking users' authorization to charge them when they "purchase a subscription to use certain features of the Services or get certain benefits," (2-ER-103; 2-ER-182); (5) outlining the automatic renewal terms for users' subscriptions, (2-ER-103–04; 2-ER-182–83); (6) providing terms for cancellation

41

of users' subscriptions, (2-ER-104; 2-ER-183–84); and (7) specifying the terms of the "Free Trial Period" offered to users, (2-ER-104–05; 2-ER-184). Following these provisions, the Terms address content-sharing rules requiring the user to refrain from uploading or posting content that they do not "have the right to use and publish," (2-ER-105; 2-ER-185); preventing users from impinging on a third party's privacy or intellectual property rights, (2-ER-106–07; 2-ER-186–87); and providing remedies for users who believe that certain material infringes on any copyright, (2-ER-107; 2-ER-187–88). Additionally, the Terms outline the terms of Tile's warranties for users' products. (2-ER-109–15; 2-ER-189–96).

Because the January 2021 and February 2023 Terms relate entirely to Tile customers' *own* use of applications, services, and products, the arbitration provision in those Terms should be read in that context. Although Plaintiffs have Tile accounts, their claims do not arise from their own purchase, use, or ownership of any Tile product, application, or service. Their injuries stem from Tile's conduct in enabling third-party stalkers to track their movements through its devices. *E.g.,* 2-ER-246 (Defendants "(1) introduce[ed] a tracking device into the stream of commerce, (2) which Defendants knew would create a risk of being purchased and used for stalking, and (3) which did result in that anticipated misuse plainly caused the harm suffered by each Plaintiff"). Plaintiffs could have suffered the same injuries without owning a Tile device or using the app at all.

42

Plaintiffs' interpretation of the arbitration clause is consistent with courts'
treatment of similarly broad arbitration provisions in analogous cases. For
example, in *Choe v. T-Mobile United States*, 2018 U.S. Dist. LEXIS 236096 (C.D.
Cal. Aug. 1, 2018), the court declined to compel arbitration of claims for criminal
fraud, larceny, and negligence where the defendant's employee had unlawfully
accessed and disclosed the plaintiff's private account information at the request of
a third party. *Id.* at *3, 19–20, 22–23. Although the arbitration clause in *Choe*
purported to cover "any and all claims or disputes in any way related to . . . [T-
Mobile's] services, devices, or products," the court held that this language could
not reasonably be understood to encompass claims premised on criminal
misconduct and systemic failure to protect user data, conduct that exceeded the
parties' reasonable expectations and fell outside the scope of the parties'
agreement. *Id*. at *15–18 ("a broadly worded arbitration clause does not cover any
and all claims between two parties just because the parties have signed a services
contract to which the arbitration clause applies"), *22 ("Plaintiff had a reasonable
expectation that T-Mobile's security policies would protect his data, and his
claims for negligence cannot be presumed to be contracted for within the scope of
the general arbitration clause for disputes relating to T-Mobile services").
Similarly here, Plaintiffs' claims arising from third parties' criminal misuse of
Tile Trackers unrelated to Plaintiffs' own use of Tile's products, are outside the

43

ambit of the arbitration clause, which contemplates only arbitration of disputes related to the users' own Tile products and services they received.

The California Supreme Court's decision in *Victoria v. Superior Court*, 710 P.2d 833 (1985) is also instructive. There, despite an arbitration clause covering claims "arising from the rendition or failure to render services," the court held that a patient's claims for negligent infliction of emotional distress and negligent hiring/retention stemming from an orderly's sexual assaults were outside the clause's scope because the agreement, read as a whole, concerned medical and hospital services, not unforeseeable criminal acts wholly unrelated to the provision of those services. *Id*. at 839 ("It is, therefore, difficult to conclude that the parties intended and *agreed* that causes of action arising from such an attack would be within the scope of the arbitration clause") (emphasis in original). The *Victoria* court relied in part on the principal that a contract "extends only to those things" the parties intended (Cal. Civ. Code § 1648), and refused to stretch broad language to cover extreme, third-party misconduct. *Id*. at 839 ("the employee's alleged misconduct was entirely outside the scope of his employment . . . [and] had nothing to do with providing, or failing to provide, services"). This interpretation did "no violence to the general policy in favor of arbitration." *Id.* at 840. Applying the analysis from *Victoria*, the arbitration clause here, even with its ostensibly broad language, cannot reasonably be read to compel arbitration of

44

claims predicated on third parties' criminal misuse of separate devices and services.

Defendants insist the arbitration agreement covering disputes "arising out of or relating to . . . any Tile product or service and its marketing" necessarily sweeps in all of Plaintiffs' claims, regardless of who used or misused the product. Appellants' Opening Br. at 38–41. In making this argument, Defendants invoke decisions stating that allegations need only "touch matters" within broad arbitration clauses to be arbitrable. *Id.* at 38-39 (citing *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999); *Cape Flattery Ltd. v. Titan Mar., LLC*, 647 F.3d 914, 922 (9th Cir. 2011); *Ramos v. Super. Ct.*, 239 Cal. Rptr. 3d 679, 690 (Cal. Ct. App. 2018); *Dardashty v. Hyundai Motor Am.*, 745 F. Supp. 3d 986 (C.D. Cal. 2024)). However, none of those cases holds that *every* dispute is automatically arbitrable under a broad clause. In *Simula*, the court emphasized that the phrase "'arising in connection with' reaches every dispute between the parties having a *significant relationship to the contract* and all disputes having their *origin or genesis* in the contract," i.e. disputes between the contracting parties tied to their agreement. *Simula*, 175 F.3d at 721 (emphasis added); *Dardashty*, 745 F. Supp. 3d at 996 (same). Likewise, in *Ramos*, the court held that broad clauses cover tort, statutory, and contract claims that "have their roots in the relationship between the parties which was created by the contract." *Ramos*, 239

45

Cal. Rptr. 3d at 690. Here, Plaintiffs' claims stem from alleged third-party misuse of Tile's products and services, not Plaintiffs' own use governed by the Terms or from Plaintiffs' relationship with Tile. These claims therefore lack the requisite significant relationship to the parties' agreement and fall outside the arbitration clause.[4]

Defendants next contend that even if the arbitration agreement is ambiguous, reversal is required because federal law resolves ambiguities in favor of arbitration. Appellants' Opening Br. at 41-42. Although this Court has recognized that policy, it does not displace the principle that "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit," *Kramer v. Toyota Motor Corp.*, 705 F.3d at 1126, and that a contract "extends only to those things concerning which it appears that the parties intended to contract," *Mundi*, 555 F.3d at 1045 (quotations and citations omitted); Cal. Civ. Code § 1648 (same). Nor has this circuit held that the federal policy favoring arbitration categorically overrides the rule of construction allowing courts to construe an ambiguity strictly against the drafter. *Compare with* Appellants' Opening Br. at 41-42. To the contrary, courts in this circuit, relying on Supreme

---

[4] Additionally, the import of *Cape Flattery* is irrelevant to the analysis because it involved the more limited "arising under" language, which the court held was subject to a "narrow interpretation," such that the dispute was found to be "not arbitrable." *Cape Flattery*, 647 F.3d at 924.

Court authority, have applied the rule that contractual ambiguities are construed against the drafter in the arbitration context. *E.g., Revitch v. DirecTV, LLC*, 2018 U.S. Dist. LEXIS 143812, at *49 (N.D. Cal. Aug. 23, 2018) ("the rule that ambiguities in contracts are construed against the drafter has been invoked by the Supreme Court in the context of arbitration agreements"). Accordingly, any ambiguity here should be construed against Tile.

Lastly, Defendants' suggestion the District Court "carve[d] up" indivisible claims is erroneous. Appellants' Opening Br. at 41-42. The District Court drew a principled, contract-based line between (i) claims that arise from Plaintiffs' own use of Tile's services or their own account-associated Trackers, which are arbitrable, and (ii) claims concerning Tile's sale of a dangerous product on the market that resulted in the foreseeable misuse by third parties, which "exist separate and apart from the parties' contractual relationship." (1-ER-20–22). The District Court explained that the gravamen of most claims is Tile's release of Trackers with insufficient safeguards enabling stalking, and that Plaintiffs would have those claims regardless of whether they had Tile accounts. (1-ER-20–21). By the same reasoning, the court compelled arbitration of only two narrow categories: claims about Plaintiffs' own use of Scan and Secure, and claims based on stalkers' use of a Tracker tied to Plaintiffs' own accounts. (1-ER-21–22).

47

Defendants' assertion that the non-arbitrable claims cannot be evaluated without assessing Scan and Secure conflates their defenses with the scope of Plaintiffs' claims. The District Court observed Defendants may seek to invoke Scan and Secure as a defense, but correctly noted that discussing deficiencies in that defense "does not change the gravamen" of the non-arbitrable claims predicated on third parties' misuse of the Tile Tracker. (1-ER-21). Again, as the District Court noted, Plaintiffs' non-arbitrable claims would remain the same irrespective of whether they had Tile accounts. *Id.* Moreover, the District Court's framework allows any claim based on allegations that the Scan and Secure feature is itself a deficient product to proceed in arbitration. This result is both doctrinally correct and administrable.

In sum, read in context and consistent with federal law, the arbitration clause reaches only disputes arising from a Tile account holder's own use of Tile products and services, not claims predicated on third parties' misuse of separate devices.

## IV. The Arbitration Clause is Unenforceable Due to Unconscionability.

The District Court did not err in finding the arbitration clause is unenforceable on unconscionability grounds. Under the FAA, certain contract defenses, including unconscionability, may invalidate an arbitration agreement, *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Whether such

defenses apply is governed by state law. *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 994 (9th Cir. 2010) ("a federal court may apply state-law principles to determine the validity of an arbitration agreement"). Here, California law provides, "[a] contract is unconscionable if one of the parties lacked a meaningful choice in deciding whether to agree and the contract contains terms that are unreasonably favorable to the other party." *Ronderos v. USF Reddaway, Inc.*, 114 F.4th 1080, 1089 (9th Cir. 2024). Under this framework, unconscionability has "both a procedural and a substantive element," which operate on a sliding scale, such that a stronger showing of one may compensate for a weaker showing of the other. *OTO, L.L.C v. Kho*, 447 P.3d 680, 689–90 (Cal. 2019) ("The more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to conclude that the term is unenforceable," and vice versa). The core inquiry is "whether the terms of the contract are sufficiently unfair, in view of all relevant circumstances, that a court should withhold enforcement." *Sanchez v. Valencia Holding Co.*, 353 P.3d 741, 749 (Cal. 2015).

The District Court here correctly found the clause is substantively unconscionable because it is impermissibly overbroad, to the extent it is interpreted to compel arbitration of claims that bear no material relation to Plaintiffs' contracts or account services with Tile (i.e., claims relating to third-party conduct using Tile's products or services for stalking and other criminal

purposes), making it unduly one-sided and harsh. (1-ER-16–18). The District

Court also correctly found the arbitration clause is procedurally unconscionable

because it is an adhesion contract that springs an element of surprise by

encompassing harms inflicted by third parties that a reasonable consumer would

not expect to be covered, and by containing internally contradictory arbitration

rules. (1-ER-18–20).

## A. The Arbitration Clause Exhibits a High Degree of Substantive Unconscionability.

Defendants challenge the District Court's finding that Tile's arbitration

clause is "overly broad" and therefore substantively unconscionable to the extent

it encompasses claims relating to third-party abuse of Tile's products or services.

Appellants' Opening Br. at 44–49. They contend the ruling is erroneous because

(1) the arbitration clause is not unlimited, (2) the "arising out of and relating to"

language is not *per se* substantively unconscionable, and (3) the authorities on

which the District Court relied are distinguishable. Defendants are incorrect on all

these points, which are belied by the sweeping scope of the clause (particularly

under Defendants' own interpretation concerning scope), and rest on a misreading

of the relevant case law. Moreover, Defendants ignore additional indicia of

substantive unconscionability that the District Court did not reach in support of its

findings.

The standard for substantive unconscionability is not in dispute. "Substantive unconscionability examines the fairness of a contract's terms." *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 1001 (9th Cir. 2021). The substantive unconscionability doctrine is concerned with terms that are "unreasonably favorable to the more powerful party," not just "a simple old-fashioned bad bargain." *Lim*, 8 F.4th at 1001–02. California law seeks to ensure that contracts, particularly contracts of adhesion, do not impose terms that are overly harsh, unduly oppressive, or unfairly one-sided. *Id.* Applying this standard, the District Court correctly found it would be "overly harsh, unduly oppressive, or unfairly one-sided to enforce an arbitration provision in Plaintiffs' consumer contracts as applying to claims about a third party's use of Tile products or services to stalk Plaintiffs," which have nothing to do with the Terms which govern Plaintiffs' contractual relationship with Tile. 1-ER-17 (quotations omitted).

The District Court's conclusion conforms with authority holding that arbitration provisions purporting to encompass claims unrelated to the parties' contractual relationship are substantively unconscionable. (1-ER-16–18 (citing *Thomas v. Cricket Wireless, LLC*, 506 F. Supp. 3d 891 (N.D. Cal. 2020), *Revitch v. DIRECTV, LLC*, 977 F.3d 713 (9th Cir. 2020)). As the *Cricket* court explained, courts routinely enforce arbitration agreements for claims that arise directly from, or are materially related to, the underlying agreement containing the clause, but

51

not for claims "wholly divorced from the underlying [] contract," which render the clause "overly broad." *Cricket*, 506 F. Supp. 3d at 903–04. The *Revitch* court likewise observed that a consumer's "reasonable expectations" do not include arbitrating claims that do not "bear any material relation to the services provided under the initial agreement." *Revitch*, 977 F.3d at 720–21.

California courts apply this rule in a variety of contexts. In *Cook v. University of Southern California*, 321 Cal. Rptr. 3d 336 (Cal. Ct. App. 2024), USC moved to compel arbitration after the employee plaintiff sued USC for employment discrimination and retaliation, based on an arbitration agreement requiring "resolution by arbitration of all claims, whether or not arising out of Employee's University employment" that the employee may have against "the University or any of its related entities." *Id.* at 340. The court observed the "plain language of the agreement requires [plaintiff] to arbitrate claims that are unrelated to her employment," and is thus substantively unconscionable (even if the claims *were* related to her employment), on grounds it was not "justified to expect [plaintiff]—as a condition of her employment at the university—to give up the right to ever sue a USC employee in court for defamatory statements or other claims that are completely unrelated to [her] employment." *Id.* at 346. Federal courts have followed *Cook*, finding provisions unconscionable where they extend beyond the contractually defined relationship. *E.g., Bahamonde v. Amazon.com*

*Servs. LLC*, 2025 U.S. Dist. LEXIS 138114, at *21 (N.D. Cal. July 18, 2025) (arbitration agreement "is not limited to claims arising from employment[,] . . . [s]o, the scope of the agreement is substantively unconscionable").

The rule also controls in consumer cases. In *In re Jiffy Lube Int'l, Inc.*, 847 F. Supp. 2d 1253 (S.D. Cal. 2012), which involved allegations that Jiffy Lube transmitted text messages to plaintiffs without consent and in violation of the Telephone Consumer Protection Act ("TCPA"), Jiffy Lube moved to compel arbitration based on a clause that required arbitration for "any and all disputes, controversies or claims between [defendant] and you (including breach of warranty, contract, tort or any other claim)." *Id.* at 1262. The court found the arbitration agreement was unconscionable on grounds the language was "incredibly broad," purported to apply to "any and all disputes," and crucially, was "not limited to disputes arising from or related to the transaction or contract at issue." *Id.* at 1262–63. Courts consistently find this kind of contractual overreach may render an arbitration agreement substantively unconscionable.

Defendants argue the arbitration clause is not unlimited because it uses the 'typical' "arising out of or relating to" language accepted by other courts. Appellants' Opening Br. at 45–49 (citing *Torrecillas v. Fitness Int'l, LLC*, 266 Cal. Rptr. 3d 181, 190 (2020); *Mey v. DIRECTV, LLC*, 971 F.3d 284, 293 (4th Cir. 2020); *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 479 (9th

53

Cir. 1991); *In re Cox Enters., Inc. Set-top Cable Television Box Antitrust Litig*., 835 F.3d 1195, 1199 (10th Cir. 2016); *3M Co. v. Amtex Sec., Inc*., 542 F.3d 1193, 1199 (8th Cir. 2008)). But here, the District Court did not find that the arbitration clause was "unlimited" or that the "arising out of and relating to" phrase was *per se* unconscionable. Rather, the District Court found "that no reasonable consumer expects that an arbitration provision would cover claims that have nothing to do with the service agreement containing the arbitration clause." (1-ER-18).

In any event, Defendants' cases are inapposite: none addresses the unconscionability of compelling arbitration for claims based on a third party's misuse of a defendant's products or services, and several involved clauses expressly limited to disputes arising out of or relating to the underlying contract. *E.g., Torrecillas*, 266 Cal. Rptr. 3d at 190 (the "agreement limits the scope of arbitration to disputes between Fitness and Torrecillas arising under the 2013 agreement or relating to Torrecillas's employment"); *Republic of Nicaragua*, 937 F.2d at 479 (agreement limited scope to "any and all disputes arising under the arrangements contemplated hereunder"). The rest either applied other states' law or did not analyze unconscionability at all. *Mey*, 971 F.3d at 295 ("The district court did not address waiver or analyze unconscionability under West Virginia law . . . [and must] address on remand"); *In re Cox Enters.*, 835 F.3d at 1212 ("Feldman's contract is governed by Arizona law and Alwert's by Louisiana law");

54

3M Co., 542 F.3d at 1199 (court tasked with "determin[ing] whether a particular dispute falls within the scope of the clause," not unconscionability).

Additionally, Defendants' efforts to cast doubt on the District Court's reliance on *Cricket* and *Revitch* are misplaced. In *Cricket*, the court deemed AT&T Mobility's clause unconscionable not merely because the consumer didn't know of the AT&T–Cricket affiliation, but because the clause swept in "all disputes and claims" with affiliates regardless of any nexus to the underlying wireless-services contract, an overbreadth the court found to be "inoperably broad." *Cricket*, 506 F. Supp. 3d at 903–05 (the clause "goes further and purports to cover 'all disputes and claims' between [plaintiff] and [defendant's] affiliates, no matter how unrelated those claims are to the wireless services agreements [plaintiff] signed with [defendant] in 2018 and 2019"). With respect to *Revitch*, it is true the chief issue was whether defendant DIRECTV, which became an affiliate of AT&T Mobility years after the plaintiff entered an arbitration agreement with AT&T Mobility, could enforce that agreement despite not being an "affiliate" and the time of contract formation (a matter indeed framed as a formation issue by the majority). *Revitch*, 977 F.3d at 717–21. However, the finding that enforcing the arbitration agreement would lead to "absurd results" is germane to the analysis on substantive unconscionability. Indeed, it would be overly harsh, unduly oppressive, and unfairly one-sided to interpret the agreement

55

to encompass claims unrelated to the signatory parties' contractual relationship. *Cricket*, 506 F. Supp. 3d at 904 ("Even agreements traditionally classified as broad because they cover all disputes 'arising out of' or 'relating to' the underlying agreement evidences only the parties' intent to have arbitration serve as the primary recourse for disputes connected to the agreement containing the clause.").

Lastly, Defendants ignore other indicia of substantive unconscionability not addressed by the District Court. For example, the arbitration clause is also substantively unconscionable due to its infinite duration. Not only does it reach into the past for "claims that accrued before you entered into this Agreement," but it also purportedly "survive[s] termination of this Agreement." (2-ER-117; 2-ER-199). California courts have affirmed that an arbitration agreement that "survived indefinitely following [an employee's] termination" is substantively unconscionable. *Cook*, 321 Cal. Rptr. 3d at 347. Additionally, the Terms are substantively unconscionable because they allow Tile to make unilateral modifications, noting they "may update these Terms from time to time, so please review them frequently." (2-ER-101; 2-ER-179). *Ingalls v. Spotify USA, Inc.*, 2016 U.S. Dist. LEXIS 157384, at *16 (N.D. Cal. Nov. 14, 2016) (finding unconscionability because "[defendant] retained the right to unilaterally change the terms of the arbitration agreement"). These factors further contribute to a

finding of substantive unconscionability and underscore that the District Court's conclusion was correct.

### B. The Arbitration Clause Exhibits a High Degree of Procedural Unconscionability.

Defendants also challenge the District Court's finding that the arbitration clause is procedurally unconscionable, which was based on the findings the arbitration clause amount to an adhesive contract that contains a strong element of surprise, both in that it is "beyond a consumer's reasonable expectation that t[he] [clause] would cover claims having no relation to their own use of a Tile Tracker or the services provided to them as part of their Tile account" and that the "Terms' exclusive venue provision and the incorporated AAA rule's open-ended grant of authority to the arbitrator to decide arbitrability" contain an "apparent contradiction." (1-ER-18–20). Defendants contend (1) adhesion contracts are not *per se* oppressive, (2) there can be no oppression where Plaintiffs supposedly have alternative options for Bluetooth tracking devices similar to the Tile Tracker, (3) the District Court erred in failing to analyze whether the Terms were oppressive, and (4) the District Court erred in not limiting the "surprise" element to the prominence and clarity of the Terms' disclosures. Each of these arguments is meritless.

As an initial matter, the District Court correctly articulated the standard for procedural unconscionability under California law. As noted by the Court, the

57

"[u]nconscionability analysis begins with an inquiry into whether the contract is one of adhesion, . . . defined as a standardized contract, imposed upon the subscribing party without an opportunity to negotiate the terms." *Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670, 681 (9th Cir. 2024); *Flores v. Transamerica HomeFirst, Inc.*, 113 Cal. Rptr. 2d 376, 381-82 (Cal. Ct. App. 2001)). Then, "[t]o determine whether the arbitration agreement involves more than 'minimal' procedural unconscionability, [courts] consider 'whether circumstances of the contract's formation created such oppression *or* surprise that closer scrutiny of its overall fairness is required." *Ronderos v. USF Reddaway, Inc.*, 114 F.4th 1080, 1090 (9th Cir. 2024) (emphasis added). "Oppression arises from an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice." *Heckman*, 120 F.4th at 682 (internal quotations omitted). Surprise is a "function of the disappointed reasonable expectations of the weaker party." *Id.*

On the issue of whether the Terms amount to a contract of adhesion, the District Court correctly found they were, given they were "drafted by Tile and offered to consumers on a take-it-or-leave-it basis"—an observation that adheres squarely to the definition above. (1-ER-18). Indeed, the Terms state: "[b]y accessing or using the applications and services owned or operated by Tile, Inc., whether through our software app(s) or website (our 'Services'), you are accepting and agreeing to be bound by the terms and conditions set forth below (these

'Terms')." (2-ER-101; 2-ER-179). Under this language, even if Plaintiffs had never created Tile accounts at all, they would nonetheless be bound by the arbitration agreement, merely by accessing Tile's website or mobile app and prior to clicking the "Sign Up" buttons. *Id.*

Defendants contend adhesion contracts are not *per se* oppressive, particularly where the customer has "reasonably available alternative sources of supply from which to obtain the desired goods and services free of the terms claimed to be unconscionable." Appellants' Opening Br. at 50. This argument is nonsensical. The claims at issue relate not to Plaintiffs' purchase and/or use of the Tile Tracker, but that of third-party stalkers who used the devices to track, stalk, and harass Plaintiffs. In other words, Defendants' 'market choice' argument, assuming it is valid (which it is not), would apply only to the stalkers whose conduct forms the basis of Plaintiffs' claims—not Plaintiffs, who used the Tile App to *evade their stalkers*. (2-ER-65; 2-ER-68). The glaring inapplicability of this argument underscores why the Plaintiffs' claims are outside the scope of the arbitration clause.

But even if the 'market choice' argument were applicable here, Defendants fail to establish that the existence of two other Bluetooth tracking devices on the market (the Apple AirTag and the Cube Tracker) means those products are fungible with the Tile Tracker. Such a suggestion is belied by the FAC, which

alleges Tile Tracker maintains a unique position in the market for tracking devices, due to Tile's partnership with Amazon, which enables Tile Trackers to tap into the Bluetooth networks created by Amazon's Echo and harness "the far more ubiquitous network created by the millions of Amazon Echo products throughout the country." (2-ER-211).

Additionally, contrary to Defendants' authorities, this court has ruled that California "has rejected the notion that the availability . . . of substitute . . . services alone can defeat a claim of procedural unconscionability." *Nagrampa v. MailCoups, Inc*., 469 F.3d 1257, 1283 (9th Cir. 2006) (en banc); *Douglas v. United States Dist. Court*, 495 F.3d 1062, 1068 (same). Thus, a contract can be procedurally unconscionable if a service provider has overwhelming bargaining power and presents a "take-it-or-leave-it" contract to a customer—"even if the customer has a meaningful choice as to service providers." *Douglas*, 495 F.3d at 1068; *Shroyer v. New Cingular Wireless Servs*., 498 F.3d 976, 985 (9th Cir. 2007) (same). "Courts are not obligated to enforce highly unfair provisions that undermine important public policies simply because there is some degree of consumer choice in the market." *Gatton v. T-Mobile USA, Inc.*, 61 Cal. Rptr. 3d 344, 356 (Cal. Ct. App. 2007). Although there is an apparent split in authorities, the foregoing line of cases is more consistent with definition of "oppression" as "an inequality of bargaining power that results in no real negotiation and an

60

absence of meaningful choice," given that contracts of adhesion are standardized contracts that leaves consumers without an opportunity to negotiate the terms. *Heckman*, 120 F.4th at 682.

Defendants further argue the District Court erred by not analyzing whether the Terms were oppressive. Appellants' Opening Br. at 50–51. This argument is faulty because it assumes that a contract must have signs of oppression *and* surprise to be characterized as procedurally unconscionable, whereas the law is clear that it could be "oppression or surprise." *Ronderos*, 114 F.4th at 1090. Nevertheless, there is some indication that the Terms presented to Plaintiffs, at the time of assent, contained at least some element of oppression given their extensive length at roughly 20 pages, that Plaintiffs merely clicked a box to manifest assent without having to read them, that Plaintiffs did not review the contract with the aid of an attorney, and that Tile can update them at any time without consent. (2-ER-64; 2-ER-68; 2-ER-100–19; 2-ER-178–203); *OTO*, 447 P.3d 680, 690-691 (to determine if a contract is oppressive, courts weigh factors such as "the amount of time the party is given to consider the proposed contract, . . . the length of the proposed contract and the length and complexity of the challenged provision," and "whether the party's review of the proposed contract was aided by an attorney").

Additionally, Defendants argue the District Court erred in holding that the arbitration agreement contained a strong element of surprise, because according to

61

Defendants, that element requires a finding that the agreed-upon terms of the bargain are hidden "in a prolix" printed form drafted by the party seeking to enforce the disputed terms. Appellants' Opening Br. at 51–52 (citing *Heckman*). Defendants misread *Heckman*, which merely observed that surprise "can arise" if the terms are hidden in a prolix, not that such a circumstance is the only scenario susceptible to such a finding. *Heckman*, 120 F.4th at 682. To the contrary, the *Heckman* court held surprised is a "function of the disappointed reasonable expectations of the weaker party." *Id.* Here, the record is clear both Plaintiffs did not contemplate that the Terms would apply to their claims, which "relate exclusively to [their] stalker's Tile device and account." (2-ER-66; 2-ER-69). Accordingly, the District Court's finding concerning consumer surprise is correct. (1-ER-19–20).

Lastly, Defendants' Opening Brief ignores other indicia of procedural unconscionability. As the District Court observed, the contradiction between the Terms' exclusive venue provision and the AAA rule's open-ended grant of authority to the arbitrator to decide arbitrability readily supports a finding of surprise, which Defendants do not contest. 1-ER-20. Additionally, the Terms state, "The arbitration shall be administered by the [AAA] under its Commercial Arbitration Rules and, where appropriate, the AAA's Supplementary Procedures for Consumer Related Disputes ('AAA Consumer Rules'), both of which are

available at the AAA website www.adr.org." (2-ER-118; 2-ER-200). Even if a consumer does venture to the AAA website, the average consumer (including Plaintiffs) has no way to determine which set of rules may be "appropriate" or to what degree one set of rules supplements another. (2-ER-66; 2-ER-69). These factors further contribute to the District Court's correct finding of procedural unconscionability.

## CONCLUSION

Plaintiffs respectfully request that this Court affirm the District Court's order.

Date: September 10, 2025                    Respectfully submitted,

**WADE KILPELA SLADE LLP**
Gillian L. Wade
David F. Slade
Kristin K. Graham
Lucy Holifield
Sara D. Avila
Marc A. Castaneda

*/s/ Gillian L. Wade*
Gillian L. Wade

*Attorneys for Plaintiffs-Appellees*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Statement of Related Cases Pursuant to Circuit Rule 28-2.6

**9th Cir. Case Number:**   No. 25-403

The undersigned attorney or self-represented party states the following:

[X] I am unaware of any related cases currently pending in this court.

[  ] I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[  ] I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

*s/Gillian L. Wade*
Gillian L. Wade

**Date:** September 10, 2025

64

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Certificate of Compliance for Briefs

**This brief contains 13,999 words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties;
    [ ] a party or parties are filing a single brief in response to multiple briefs; or
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).


*s/Gillian L. Wade*_____      **Date:** September 10, 2025
Gillian L. Wade

65

# CERTIFICATE OF SERVICE

I hereby certify that on September 10, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed September 10, 2025.

*/s/ Gillian L. Wade*
Gillian L. Wade
**WADE KILPELA SLADE LLP**
2450 Colorado Ave., Suite 100E,
Santa Monica, CA 90404
Telephone: (310) 667-7273
gwade@waykayslay.com