No. 25-403

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

SHANNON IRELAND-GORDY; STEPHANIE IRELAND
GORDY; MELISSA BROAD; JANE DOE, INDIVUALLY AND ON
BEHALF OF ALL OTHERS SIMILARLY SITUATED,

*Plaintiffs-Appellees,*

v.

TILE, INC., LIFE360, INC., and AMAZON.COM. INC.,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Northern District of California
The Honorable Hon. Rita F. Lin
District Court Case No. 3:23-cv-04119-RFL

**APPELLANTS TILE, INC. AND LIFE360, INC.'S REPLY BRIEF**

COOLEY LLP
Jeffrey M. Gutkin
(jgutkin@cooley.com)
Max A. Bernstein
(mbernstein@cooley.com)
Travis LeBlanc
(tleblanc@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
(415) 693-2000 (telephone)

*Attorneys for Appellants*
TILE, INC. and LIFE360, INC.

# TABLE OF CONTENTS

**Page**

I. Introduction...................................................................................1

II. Argument ......................................................................................2

    A. Plaintiffs Are Bound By The October 2023 Terms. ...........................2

        1. The October 2023 Email Provided Reasonably Conspicuous Notice. ..................................................................3

        2. Plaintiffs' Continued Use of Tile's Products and Services Constitutes Unambiguous Manifestation of Assent to the Terms...........................................................................9

    B. The Earlier Terms Likewise Delegate Arbitrability .........................11

        1. Plaintiffs Misinterpret Binding Law Holding Incorporation of the AAA Rules Constitutes Delegation.........11

        2. Incorporation of the AAA Rules Constitutes Delegation Regardless of Party Sophistication. .........................................16

    C. Plaintiffs' Claims Are Within The Scope Of The Arbitration Clause. .........................................................................................18

    D. The Terms Are Not Unconscionable.................................................22

        1. The Terms Are Not Substantively Unconscionable. ...............22

        2. The Terms Are Not Procedurally Unconscionable..................25

III. Conclusion ..................................................................................27

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alkutkar v. Bumble Inc.*,
2022 WL 4112360 (N.D. Cal. Sep. 8, 2022) .......................................................5

*AT & T Techs., Inc. v. Commc'ns Workers of Am.*,
475 U.S. 643 (1986)...................................................................................19

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) ...........................................................2, 3, 11

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015) ...........................................1, 12, 13, 16

*Collins v. Diamond Pet Food Processors of Cal., LLC*,
2013 WL 1791926 (E.D. Cal. Apr. 26, 2013) ...................................27

*Connell v. ByteDance, Inc.*,
2025 WL 1828472 (N.D. Cal. July 1, 2025) ................................1, 13

*Cook v. Univ. of S. Cal.*,
321 Cal. Rptr. 3d 336 (Cal. Ct. App. 2024)...............................23, 24

*Crooks v. Wells Fargo Bank, N.A.*,
312 F. Supp. 3d 932 (S.D. Cal. 2018)........................................24

*Darnaa, LLC v. Google LLC*,
756 F. App'x 674 (9th Cir. 2018) .............................................25

*Desert Outdoor Advert. v. Super. Ct.*,
196 Cal. App. 4th 866 (2011) ....................................................6

*In re Facebook Biometric Info. Priv. Litig.*,
185 F. Supp. 3d 1155 (N.D. Cal. 2016)..................................9

*Ferreira v. Uber Techs., Inc.*,
2023 WL 7284161 (N.D. Cal. Nov. 3, 2023) .......................24

*Fli-Lo Falcon, LLC v. Amazon.com, Inc.*,
97 F.4th 1190 (9th Cir. 2024) ...............................13, 16, 17

*Ghazizadeh v. Coursera, Inc.*,
    737 F. Supp. 3d 911 (N.D. Cal. 2024) ...........................................3, 4, 5

*Hughes v. Apple, Inc.*,
    723 F. Supp. 3d 693 (N.D. Cal. 2024) .................................................26

*Illinois Cas. Co. v. B&S of Fort Wayne Inc.*,
    235 N.E.3d 827 (Ind. 2024) ................................................................14

*Ingalls v. Spotify USA, Inc.*,
    2016 WL 6679561 (N.D. Cal. Nov. 14, 2016) ...................................26

*Jackson v. Amazon.com, Inc.*,
    65 F.4th 1093 (9th Cir. 2023) ...............................................................8

*In re Jiffy Lube Int'l, Inc. Text Spam Litig.*,
    847 F. Supp. 2d 1253 (S.D. Cal. 2012) .........................................23, 24

*Kamath v. Coinbase, Inc.*,
    2024 WL 950163 (N.D. Cal. Mar. 5, 2024) ........................................9

*Keebaugh v. Warner Bros. Ent. Inc.*,
    100 F.4th 1005 (9th Cir. 2024) .............................................................3

*Madden v. Kaiser Found. Hosps.*,
    17 Cal. 3d 699 (1976) ...........................................................................6

*Mohamed v. Uber Techs., Inc.*,
    848 F.3d 1201 (9th Cir. 2016) .............................................................15

*Morris v. Redwood Empire Bancorp*,
    128 Cal. App. 4th 1305 (2005) ............................................................25

*Nguyen v. Barnes & Noble Inc.*,
    763 F.3d 1171 (9th Cir. 2014) ............................................................6, 9

*Patrick v. Running Warehouse, LLC*,
    93 F.4th 468 (9th Cir. 2024) ................................................................25

*Platt v. Sodexo, S.A.*,
    148 F.4th 709 (9th Cir. 2025) ...............................................................8

*Rent-A-Center, West, Inc. v. Jackson*,
  561 U.S. 63 (2010) ........................................................................7, 8, 11

*Sadlock v. Walt Disney Co.*,
  2023 WL 4869245 (N.D. Cal. July 31, 2023) .......................................3, 4, 9, 10

*Saeedy v. Microsoft Corp.*,
  757 F. Supp. 3d 1172 (W.D. Wash. 2024) .......................................4, 5

*Sellers v. Bleacher Rep., Inc.*,
  2023 WL 4850180 (N.D. Cal. July 28, 2023) ....................................5

*Sifuentes v. Dropbox, Inc.*,
  2022 WL 2673080 (N.D. Cal. June 29, 2022) ...................................8

*Simula, Inc. v. Autoliv, Inc.*,
  175 F.3d 716 (9th Cir. 1999) ..........................................................18

*Tompkins v. 23andMe, Inc.*,
  840 F.3d 1016 (9th Cir. 2016) ........................................................25

*TotalEnergies E&P USA, Inc. v. MP Gulf of Mexico, LLC*,
  667 S.W.3d 694 (Tex. 2023) ..........................................................12, 14

*Ulbrich v. Overstock.com, Inc.*,
  887 F. Supp. 2d 924 (N.D. Cal. 2012) .............................................27

*Victoria v. Superior Court*,
  40 Cal. 3d 734 (1985) .....................................................................21

*West v. Uber Techs.*,
  2018 WL 5848903 (C.D. Cal. Sep. 5, 2018) .....................................9

## I.    Introduction

Plaintiffs' claims—all of which concern the design and marketing of Tile products and services—are subject to arbitration provisions Plaintiffs agreed to when they acquired their Tile trackers. In their opposition, Plaintiffs misinterpret binding precedent to argue otherwise.  But the opposition fails for multiple reasons.

*First*, the October 2023 Terms apply, and it is undisputed that those terms delegate the question of arbitrability to the arbitrator. Plaintiffs were sent notice of these terms and do not contest that these emails were clear. Instead, they argue for a heightened standard, in which consumers can avoid updates to contractual terms by ignoring emails or routing them to spam. The Court should not adopt this standard, which would disrupt commonplace business practices.

*Second*, even if the October 2023 Terms did not apply, the earlier Tile Terms also delegate arbitrability. Those terms incorporate the American Arbitration Association rules, which constitutes clear and unmistakable delegation under *Brennan*. Plaintiffs' position—that an independent and unrelated provision negates the Terms' clear and unmistakable delegation—defies this clear precedent. *See Connell v. ByteDance, Inc.*, No. 24-CV-07859-NC, 2025 WL 1828472, at *7 (N.D. Cal. July 1, 2025) (declining to follow lower court's ruling and Plaintiffs' position as inconsistent with this Court's binding precedent under *Brennan*).

*Third*, even if the question of arbitrability were not delegated, Plaintiffs'

assertion that the claims at issue are not within the scope of the arbitration clause is plainly incorrect. The Tile Terms require arbitration of disputes relating to Tile products. Plaintiffs' claims exclusively concern the marketing and design of Tile's tracker product, including the Tiles themselves and Tile's allegedly defective app that Plaintiffs both used. Therefore, those claims must be arbitrated. There is nothing unconscionable, or even surprising, about this result.

As discussed below, this Court should reverse and remand with instructions to grant the motion to compel arbitration.

## II. Argument

### A. Plaintiffs Are Bound By The October 2023 Terms.

Plaintiffs in opposition misconstrue the law and invent a far more burdensome standard than is set by this Court's precedent. Under applicable law, an enforceable agreement is formed where there is (1) reasonably conspicuous notice of the terms and (2) manifestation of assent. *See Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022). As discussed in Tile's opening brief (Defs. Br. § VII.A), both prongs are satisfied here, and Plaintiffs are thus bound by the October 2023 Terms.

As a preliminary matter, Plaintiffs argue that Tile's cited cases are irrelevant because browsewrap agreements only exist "when an individual is visiting a website." (Pls. Br. 22.) Contrary to Plaintiffs' position, the relevant standard

(whether the user received reasonably conspicuous notice and manifested assent to an agreement) is the same regardless of the medium of technology used to convey that agreement. *Berman*, 30 F.4th at 855–56 (describing "spectrum" that includes clickwrap and browsewrap agreements but listing same "elemental principles of contract formation" for both). That standard is met here, and Tile cited multiple decisions upholding contract updates delivered by email. *See, e.g.*, *Ghazizadeh v. Coursera, Inc.*, 737 F. Supp. 3d 911, 932 (N.D. Cal. 2024); *Sadlock v. Walt Disney Co.*, No. C22-9155, 2023 WL 4869245, at *12–13 (N.D. Cal. July 31, 2023). Indeed, a direct email update notifying users of a terms update is far more conspicuous than a typical, so-called "browse wrap."

### 1. The October 2023 Email Provided Reasonably Conspicuous Notice.

Plaintiffs do not dispute that the email notice regarding the October 2023 Terms update (the "Notice") was visually sufficient. Nor could they. As explained in Tile's opening brief, the Notice lacked clutter and used customary design elements denoting the existence of a hyperlink. (Defs. Br. 18); *see Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1021 (9th Cir. 2024) (citing *Berman*, 30 F.4th at 857). The Notice "clearly denote[d]" that continued use would constitute acceptance of the Terms of Service, and the link to the Terms of Service was "conspicuously distinguished from the surrounding text." *Keebaugh*, 100 F.4th at 1020–21 (quoting *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 516 (9th Cir. 2023)). Further,

Plaintiffs do not dispute that the Notice included a large header informing users of updates to the terms of service and included hyperlinks to all of the relevant terms in blue, a contrasting font color. (Defs. Br. 17-18.)

Instead, Plaintiffs argue that Tile has not met its burden solely because Plaintiffs claim they do not recall receiving or reading the update Notice. (Pls. Br. 21.) However, no precedent requires a showing of a plaintiff's subjective recollection of updated terms. Tile has met its burden: the undisputed record demonstrates that Plaintiffs were sent notice of the updated terms via email and Plaintiffs do not dispute that they agreed to the earlier versions of the Terms, which contained an arbitration agreement and continued use provision. (1-ER-8.) If Plaintiffs' position were affirmed, users could unilaterally avoid contractual updates simply by declining to open a notice, relegating it to a spam folder, or later claiming they do not recall seeing it.

Further, Plaintiffs' position is unsupported by case law. The Notice aligns with other enforceable email updates approved by several district courts in this circuit. *See, e.g.*, *Ghazizadeh*, 737 F. Supp. 3d at 932; *Sadlock*, 2023 WL 4869245, at *12-13; *Saeedy v. Microsoft Corp.*, 757 F. Supp. 3d 1172, 1200 (W.D. Wash. 2024). Plaintiffs assert the cases Tile cited are distinguishable because those plaintiffs "saw the email at issue." (Pls. Br. 24.) Not so. In each of those cases, the plaintiffs argued—just as Plaintiffs argue here—that they did not recall receiving or

4

reviewing the notice at issue. *See Ghazizadeh*, 737 F. Supp. 3d at 933 ("Plaintiff suggests. . . [he] did not receive or review the email."); *Saeedy*, 757 F. Supp. 3d at 1200 ("[Plaintiffs] attest that they do not recall . . . receiving or reading emails regarding updates."). These courts all rejected the argument that Plaintiffs advance here because defendants provided evidence that, based on regular business practices, mass emails were sent to all registered users. *Id*.

In contrast, the cases Plaintiffs cite in order to argue that email notice is inadequate are all inapposite. In *Sellers*, the court evaluated the relevant email notice itself and found it insufficient because the email itself discussed several topics separated from the updated terms, did not mention the terms in the subject line or heading, and only included a hyperlink to the terms near the bottom. *Sellers v. Bleacher Rep., Inc.*, No. 23-CV-00368, 2023 WL 4850180, at *7 (N.D. Cal. July 28, 2023). Here, the email Notice only discussed the updated terms, included a prominent header that read "Updated Terms of Service and Privacy Policy" and explained the changes. (2-ER-174.) The district court failed to evaluate the sufficiency of the email Notice, but as explained in the opening brief, the Notice meets the standards set by this Court. (Def. Br. 18.) And, after initiating the dispute, Plaintiff Broad confirmed that she was able to locate the relevant Notice in her email. *Cf. Alkutkar v. Bumble Inc.*, No. 22-CV-00422, 2022 WL 4112360, at *6 (N.D. Cal.

5

Sep. 8, 2022) (finding insufficient notice where defendant did not provide a record of the email sent and plaintiff did not locate the email in their inbox).

Under California law, the notice inquiry is concerned with whether a "reasonably prudent user [is] on notice of the terms of the contract," which in turn "depends on the design and content" of the terms. *Nguyen v. Barnes & Noble Inc*., 763 F.3d 1171, 1177 (9th Cir. 2014). Whether an individual user, from a subjective perspective, actually chose to open and read the email is irrelevant. It is well-settled that a party cannot avoid a contract term because the party failed to read it before signing, even in cases involving adhesion contracts. *See Madden v. Kaiser Found. Hosps.*, 17 Cal. 3d 699, 710 (1976) ("[O]ne who assents to a contract is bound by its provisions and cannot complain of unfamiliarity with the language of the instrument"); *Desert Outdoor Advert. v. Super. Ct.*, 196 Cal. App. 4th 866, 872 (2011) ("[A] party's failure to read a contract, or to carefully read a contract, before signing is no defense to the contract's enforcement."). The same reasoning applies to modifications to consumer contracts when a consumer receives adequate notice of updated terms. Requiring subjective awareness for any modification to consumer contracts, as Plaintiffs propose, would invite strategic avoidance of contractual terms, disrupt longstanding practices in digital contracting, and diminish, if not eliminate, contractual certainty.

6

Plaintiffs essentially argue that notice of changes in terms via email can never be sufficient. Perhaps recognizing that their position is far outside the mainstream in both practice and law, Plaintiffs alternatively argue that the Notice was insufficient because it did not reference the arbitration provision. (Pls. Br. 20.) But this argument fails on the law. First, the October 2023 Terms made no material changes to Plaintiffs' already existing agreement to arbitrate in 2021.[1] That is, Plaintiffs Broad and Doe already agreed to arbitrate based on earlier terms that any claims falling within nearly identical scoping language would be resolved through arbitration. (1-ER-8.) The 2023 update merely changed the arbitral forum and made cosmetic changes to other language; these are procedural details, not substantive alterations of arbitration rights.[2] Plaintiffs fail to cite, and Tile has not located, any authority that treats a shift from one arbitration administrator to another as a material modification. Because Plaintiffs' legal rights and obligations were not materially altered by these updates, Tile did not need to spotlight this change in the notice. For

---

[1] All of the cases cited in Plaintiffs' brief (Pls. Br. § I.B.) are distinguishable on this dispositive fact: defendants attempted to add an arbitration requirement for the first time without adequate notice to plaintiffs.

[2] Plaintiff's position that modifications to arbitration provisions require specific mention in update notices, even when immaterial, singles out arbitration agreements for uniquely hostile treatment and runs afoul of the FAA. Imposing heightened notice requirements solely for arbitration-related changes would violate the FAA's mandate that arbitration agreements be placed on equal footing with all other contracts. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010).

this same reason, Plaintiffs' argument that Tile cannot enforce "material changes" without express agreement based on the earlier Terms (Pls. Br. 23) also fails.

Plaintiffs' reliance on *Sifuentes*, *Platt*, and *Jackson* (Pls. Br. 20-21, 25) is misplaced. In *Sifuentes*, the defendant introduced an arbitration agreement ***for the first time*** via an emailed update. *See Sifuentes v. Dropbox, Inc.*, No. 20-CV-07908, 2022 WL 2673080, at *2 (N.D. Cal. June 29, 2022). Similarly in *Platt*, the defendant introduced a new arbitration clause "buried on page 153 of a 170-page" ERISA plan and failed to reference the arbitration agreement in the summary notice. *Platt v. Sodexo, S.A.*, 148 F.4th 709, 718–19 (9th Cir. 2025) (holding that plaintiff did not consent to brand new arbitration clause where defendant did not provide the Court with a copy of the relevant email notice referencing the arbitration clause). In *Jackson*, this Court held that Amazon did not carry its burden because it did not provide a copy of the email or content of the email, such that the Court "could not evaluate whether the email (assuming it was received at all) sufficed to provide individualized notice." *Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1100 (9th Cir. 2023). Here, on the other hand, Plaintiffs Broad and Doe had already agreed to arbitrate the claims at issue when they created their Tile accounts, and Tile provided a copy of the email Notice with the updated terms, along with evidence it was sent to all registered users. (1-ER-8, 2-ER-95, 97.)

8

**2.  Plaintiffs' Continued Use Of Tile's Products And Services Constitutes Unambiguous Manifestation Of Assent To The Terms.**

Plaintiffs argue that continued use cannot constitute assent without a click wrap-style affirmative action or "actual knowledge" of the terms. (Pls. Br. 21–22.) However, this Court has explained "where the website contains an explicit textual notice that continued use will act as a manifestation of the user's intent to be bound, courts have . . . enforc[ed] browsewrap agreements." *Nguyen*, 763 F.3d at 1177. Several courts agree, finding notice of updated terms provided through email and followed by "continued use" sufficient to show assent. *See, e.g.*, *Kamath v. Coinbase, Inc.*, No. C23-3533, 2024 WL 950163, at *4 (N.D. Cal. Mar. 5, 2024) (email and subsequent continued use of services "enough to establish reasonably conspicuous notice and assent" to updated terms); *West v. Uber Techs.*, No. C18-3001, 2018 WL 5848903, at *5 (C.D. Cal. Sep. 5, 2018) ("Courts have found that when consumers receive emails such as this one [e.g., having a subject line stating that Uber had updated its terms of use, including explanation of revisions in the body, and providing a link to the updated terms], continued use of the service or product constitutes assent to the updated terms"); *In re Facebook Biometric Info. Priv. Litig.*, 185 F. Supp. 3d 1155, 1167 (N.D. Cal. 2016) (same); *see also Sadlock*, 2023 WL 4869245, at *12-13 (emails followed by continued use sufficient to

9

establish assent even where notice and assent had not been shown in relation to original agreement).[3]

Further, Plaintiffs knew that Tile's Terms may be updated from "time to time," and that their continued use would constitute acceptance of changes. The original terms signed by Plaintiffs Broad and Doe included a continued use provision, which states:

> We may update these Terms from time to time, so please review them frequently. For Tile customers who accepted a version of this Agreement prior to modification, the revisions will become effective 30 days after posting on tile.com. Your continued use of Tile Services means you accept the changes. Once you accept a version of the Agreement, however, we will not enforce future material changes without your express agreement to them.

(2-ER-101.) Similarly, the email notice clearly states, "[i]f you continue to use any of our apps . . . on or after November 26, 2023, you are agreeing to the new Terms of Service[.]" (2-ER-95). Plaintiffs Broad and Doe do not dispute that they continued to use Tile products and services after the October 2023 Terms went into effect. (*See*

---

[3] Plaintiffs rely on dicta from *Sadlock*, noting hypothetical issues with email notices. However, this discussion does not create a rule that notice by email is insufficient, nor does it suggest that a message routed to spam is automatically ineffective notice. Consistent with other decisions, *Sadlock* merely explains that the question of sufficient notice must be evaluated on a case-by-case basis. *Sadlock*, 2023 WL 4869245, at *12. As explained in Tile's opening brief, the facts of this case align with *Sadlock*, where the court ultimately held that the email notice of updated terms combined with plaintiff's continued use was sufficient to bind plaintiff to the updated terms. (Defs. Br. 20-21.)

Defs. Br. 20-22.) Plaintiff Broad concedes she keeps her account active and pays for her premium subscription each month. (2-ER-65.) She does not dispute Tile's internal records demonstrating her use of the app as recently as April 2024. (2-ER-95.) Because Plaintiff Broad did not contact Tile to inform it of her circumstances, a reasonable person should "know that [Tile] may infer from [Plaintiff Broad's] conduct that [she] assents." *Berman*, 30 F.4th at 855 (citation omitted). The analysis is even more straightforward for Plaintiff Doe, who does not dispute using the Scan and Secure feature for its intended purpose in March 2024.[4] (2-ER-68.)

In sum, Plaintiffs cannot avoid their contractual obligations while continuing to use Tile's services (2-ER-65, 95) where the record indicates that the Notice was sent to Plaintiffs' email address (and Plaintiff Broad confirms she did, in fact, receive the notice (2-ER-66)).

## B. The Earlier Terms Likewise Delegate Arbitrability.

### 1. Plaintiffs Misinterpret Binding Law Holding Incorporation of the AAA Rules Constitutes Delegation.

The January 2021 and February 2023 Tile Terms clearly and unmistakably delegate arbitrability. Plaintiffs do not dispute that (1) they agreed to these Terms, (2) that these Terms contain an arbitration agreement, and (3) that these Terms

---

[4] Plaintiffs again cite *Jackson* in support of their argument that continued use does not constitute assent, but this is again unavailing for the same reason as discussed above: Tile provided a true and correct copy of the Notice, and it is plainly sufficient. (2-ER-95); Section II.A.1., *infra*.

11

incorporate the American Arbitration Association ("AAA") rules. Because there is no actual ambiguity in the Terms, Plaintiffs therefore cannot avoid the conclusion that arbitrability is for the arbitrator to decide.

As Defendants' opening brief set out, incorporation of the AAA rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability. (*See* Defs. Br. 26-27 (collecting cases).) The AAA Rules provide, "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." (1-ER-6.) This language gives the arbitrator the exclusive power to decide threshold questions of arbitrability. As one court put it, this conclusion "might be different if the rule provided that the arbitrator 'may have the power,' or that the arbitrator 'shall have power,' but the rule in fact provides that the arbitrator '*shall* have *the* power.' The verb 'shall' in this sentence 'evidences the mandatory nature of the duty imposed.'" *TotalEnergies E&P USA, Inc. v. MP Gulf of Mexico, LLC*, 667 S.W.3d 694, 709 (Tex. 2023), *reh'g denied* (June 9, 2023) (citation omitted).

Plaintiffs assert that this language only "may" constitute clear and unmistakable evidence of an intent to delegate arbitrability under *Brennan*. (Pls. Br. 33.) But *Brennan* is clear that this **does** constitute such clear and unmistakable evidence. *See Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) ("Now

that the question regarding incorporation of the AAA rules is squarely before us, we hold that incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability."). And other courts, including this Court, interpreting *Brennan* agree. *See, e.g.*, *Fli-Lo Falcon, LLC v. Amazon.com, Inc.*, 97 F.4th 1190, 1199 (9th Cir. 2024) ("In *Brennan v. Opus Bank*, 796 F.3d 1125 (9th Cir. 2015), we held that 'incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability.'"). In fact, other district courts have already recognized that the lower court's decision in this case is inconsistent with "precedent." *Connell v. ByteDance, Inc.*, No. 24-CV-07859, 2025 WL 1828472, at *7 (N.D. Cal. July 1, 2025) (citing *Ireland-Gordy v. Tile, Inc.*, No. 23-cv-04119, 2024 WL 5162413, at *6 (N.D. Cal. Dec. 19, 2024)). In *Connell*, the Court explained "the Ninth Circuit and courts in this district have repeatedly applied *Brennan*'s holding 'that incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability.'" *Id.*

Plaintiffs provide no meaningful rebuttal to Tile's argument, and supporting case law, that the AAA rules give the arbitrator exclusive authority to decide threshold issues. (Defs. Br. at 27-29.) Plaintiffs do not address the Sixth Circuit's explicit and well-reasoned argument in *Blanton at all*. (Indeed, the case is not cited anywhere in Plaintiffs' opposition brief.) Nor do they contend with the fact that

13

"[t]he vast majority of federal circuit courts and other state supreme courts have reached this same conclusion." *TotalEnergies E&P USA*, 667 S.W.3d at 711; *see also Illinois Cas. Co. v. B&S of Fort Wayne Inc.*, 235 N.E.3d 827, 834–35 (Ind. 2024) ("We agree: 'the power' to resolve arbitrability rests exclusively with the arbitrator once the [AAA] rules are incorporated by the parties. . . . Our decision today is supported by most federal and state courts that have addressed this exact question." (citing *Airbnb, Inc. v. Doe*, 336 So. 3d 698, 705 (Fla. 2022))).

Plaintiffs assert, without support, that Tile's venue provision "encompasses the threshold question of arbitrability" and therefore undermines the delegation made in the AAA rules. (Pls. Br. 34.) But the venue provision does not give the Court jurisdiction over arbitrability. In fact, the venue provision does not refer to arbitration at all. Instead, the venue provision at issue, in a separate section ***unrelated*** to the arbitration agreement, provides:

> The exclusive jurisdiction for all disputes, claims or controversies arising out of or relating to these Terms or the breach, termination, enforcement, interpretation or validity thereof or the use of the Services or Content will be the state and federal courts located in the Northern District of California and you and Tile each waive any objection to jurisdiction and venue in such courts.

(2-ER-116, 198–99.)

As explained in Tile's opening brief, the venue provision is consistent with the AAA's delegation of arbitrability because delegating arbitrability disputes to an

14

arbitrator as a general matter does not eliminate the need to identify the court that would have jurisdiction, in the event a judicial proceeding becomes necessary. (Defs. Br. 33.)

Plaintiffs' attempt to distinguish the cases Tile cites is ineffective. (Pls. Br. 34-35.) That the *Mohamed* venue provision did not explicitly reference "interpretation or validity" is immaterial, as already explained in Tile's opening brief. (Defs. Br. 35-36.) The *Mohamed* provision's inclusion of "any disputes" encompasses disputes over interpretation and validity, and it does not matter that the Tile provision explicitly lists those kinds of disputes. Regardless, the specific language used in the venue provision does not alter the analysis: "[n]o matter how broad the arbitration clause, it may be necessary to file an action in court . . . and the parties may need to invoke the jurisdiction of a court to obtain other remedies." *Mohamed v. Uber Techs., Inc*., 848 F.3d 1201, 1209 (9th Cir. 2016) (quoting *Dream Theater, Inc. v. Dream Theater*, 124 Cal. App. 4th 547, 21 Cal. Rptr. 3d 322, 328 (2004), *as modified on denial of reh'g* (Dec. 28, 2004)). Here, that includes disputes about the interpretation and validity of ***other*** provisions. For example, as discussed in Tile's opening brief, the February 2023 Tile arbitration agreement exempts certain copyright claims, which may require a Court to interpret a separate provision which prohibits derivative works. (Defs. Br. 33.) There is thus no tension between delegation and the venue provision, and the terms clearly and unmistakably delegate

arbitrability.

### 2. Incorporation Of The AAA Rules Constitutes Delegation Regardless Of Party Sophistication.

To avoid the outcome that *Brennan* compels, Plaintiffs argue *Brennan* applies only to "sophisticated parties." (Pls. Br. § II.B.) But in deciding *Brennan*, this Court explicitly disclaimed a holding as to sophistication. *See Brennan*, 796 F.3d at 1130 ("Our holding today should not be interpreted to require that the contracting parties be sophisticated or that the contract be 'commercial' before a court may conclude that incorporation of the AAA rules constitutes 'clear and unmistakable' evidence of the parties' intent."). Plaintiffs' reliance on *Brennan* is thus unavailing. To the contrary, the *dicta* in *Brennan* compels the opposite conclusion: the Court noted that "the vast majority of the circuits" have found "incorporation of the AAA rules constitutes clear and unmistakable evidence of the parties' intent [to delegate] do so without explicitly limiting that holding to sophisticated parties[.]" *Brennan*, 796 F.3d at 1130-31. And other in- and out-of-circuit decisions confirm the same. (*See* Defs. Br. 29-30 (citing *G.G. v. Valve Corp.*, 799 F. App'x 557¸ 558 (9th Cir. 2020); *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 851 (6th Cir. 2020); *Diaz v. Intuit, Inc.*, No. 5:15-cv-01778, 2017 WL 4355075, at *3 (N.D. Cal. Sep. 29, 2017)).)

Plaintiffs also misread the holding of *Fli-Lo Falcon*. (Pls. Br. 38.) The Court did ***not*** hold that a party's sophistication mattered in determining if incorporation of

16

the AAA rules constitutes delegation. Rather, the Court found instead that even if sophistication could matter in this way, the plaintiff had failed to show he was not sophisticated. *Fli-Lo Falcon, LLC*, 97 F.4th at 1200. That is, the Court did not reach the issue of *whether* sophistication was relevant as a legal matter, since plaintiff fell short on the issue as an evidentiary matter. *Id*. Notably, Plaintiffs here also fail to show they are "unsophisticated"—they do not proffer any meaningful evidence of this assertion. In this way, *Fli-Lo Falcon*, far from supporting Plaintiffs' position, offers a second, independent reason to reject it.

Plaintiffs do not address Tile's point that this two-forked approach, which differentiates between "sophisticated" and "unsophisticated" parties, would yield "two different outcomes based on an extra-contractual determination of the personal traits of one of the contracting parties." (Defs. Br. at 31 (quoting *Acosta v. Brave Quest Corp.*, 733 F. Supp. 3d 920, 928 (C.D. Cal. 2024)).) Plaintiffs cite no Ninth Circuit decision holding that a different set of rules regarding arbitrability applies depending on a party's sophistication. As discussed in Tile's opening brief, accounting for sophistication would require an individualized analysis at odds with the FAA and create constant enforceability questions for parties requiring their customers to agree to arbitration. (*See* Defs. Br. 29-31.)

17

### C.  Plaintiffs' Claims Are Within The Scope Of The Arbitration Clause.

The Terms require arbitration of "[a]ll disputes, claims or controversies arising out of or relating to this Agreement, any Tile product or service and its marketing, or the relationship between you and Tile[.]" (2-ER-117, 199.) As explained in Tile's opening brief, the plain language of the contract indicates that all disputes arising out of or relating to (1) the terms of the Agreement, (2) any Tile product or service and its marketing, or (3) the relationship between Plaintiffs and Tile "shall be determined exclusively by binding arbitration." (*Id.*)

Plaintiffs urge an unduly cramped reading of the arbitration agreement, limiting it to disputes arising only from their own direct use of Tile's products and services. But that defies the plain language of the arbitration agreement. And Plaintiffs cite no authority that warrants deviating from this Court's instruction to interpret "an arbitration clause containing the phrase 'any and all disputes arising under the [agreements]' . . . liberally." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 720 (9th Cir. 1999). As Tile pointed out in its opening Brief, it is impossible to evaluate the safety of a Tile tracker without also considering the Scan and Secure software that accompanies it and for which the primary function is to detect the whereabouts of Tiles. (Tile Brf. 42-43). Inevitably, many of Plaintiffs claims regarding how safety could have been improved will criticize the shortcomings of the exact app to which their agreement to the Terms applies.  For Plaintiff Broad, it

18

also highly unclear how Plaintiffs could ever separate the alleged stalking with the Tile she bought from stalking with another Tile. Thus, the district court's holding that only Plaintiffs' claims concerning "Plaintiffs' own Tile accounts," "the stalkers' use of Plaintiffs' own Tile trackers," or the alleged shortcomings of Tile's Scan and Secure feature are subject to arbitration, is flatly unworkable. (1-ER-20–22.) Plaintiffs' do not meaningfully engage with this point, and instead simply reiterate the district court's faulty reasoning. (Pl. Brf. 47).

Further, Plaintiffs' argument that ambiguities in a contract must be construed against the drafter (Pls. Br. 47) has already been expressly rejected by the Supreme Court. In *Lamps Plus, Inc. v. Varela*, the Court held that the FAA provides the default rule for resolving arbitration-related ambiguities: all doubts must be resolved in favor of arbitrability. 587 U.S. 176, 189 (2019); *see also AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) ("[I]t has been established that where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." (citation modified)).

Plaintiffs' attempt to carve this case out from long-standing precedent is unsupported by the cases they invoke. (Pls. Br. 43, 44.) Plaintiffs rely on *Chun Choe*

*v. T-Mobile USA, Inc.* and conflate the aberrant criminal conduct of third parties in that case with the more routine negligence and product liability claims at issue here. No. SA CV 18-0648, 2018 WL 6131574, at *5 (C.D. Cal. Aug. 1, 2018). Unlike *Chun Choe*, this case involves claims that plainly fall within the scope of a broad arbitration clause that Plaintiffs voluntarily entered. In *Chun Choe*, the plaintiff alleged that a T-Mobile employee used her employee access to commit crimes against him, specifically hacking, larceny, and fraud. *Id*. The plaintiff separately alleged several tort claims, such as invasion of privacy. *Id*. at *4. The court held that the "broad language of the arbitration clause" covered the plaintiff's privacy claims and unfair competition claim. *Id*. at *4–5, *7. However, the court found the criminal conduct to be so outrageous that it could not assume the arbitration clause was meant to cover such claims, absent unmistakable evidence. *Id*. at *5-6. In other words, the court could not assume that T-Mobile or the plaintiff contemplated criminal theft by a T-Mobile employee at the time of contracting. Importantly, the unusual circumstances of the privacy violation (by a third party's misuse) did not negate the court's holding that the consumer and company reasonably could have contemplated the arbitration provision covering such tort claims. *Id.* at *5–6.

Here, Plaintiffs are Tile customers who agreed to terms that contained an arbitration clause and a delegation provision. (1-ER-8.) Plaintiffs Broad and Doe's claims sound in negligence, product liability, and consumer protection statutes—not

intentional criminal conduct by Tile or its agents. Plaintiffs' alleged injuries arise from the allegedly defective design and safeguards of the Tile tracker and application, which fall squarely within the scope of their contractual relationship with Tile. Like the privacy and UCL claims in *Chun Choe* that were compelled to arbitration despite relating to a third party's criminal conduct, Plaintiffs' claims against Tile arise from the customer-company relationship. All of Plaintiffs' claims fall comfortably within the scope of the arbitration agreement the parties consented to. Applying *Chun Choe*, Plaintiffs cannot be forced to arbitrate any claims they have against their alleged stalkers, which of course is not what Tile suggests. But *Chun Choe* does not preclude arbitration of the instant claims against Tile.

Plaintiffs also unconvincingly analogize to *Victoria v. Superior Court*, 40 Cal. 3d 734, 743 (1985). In that case, the arbitration clause was drafted narrowly, only covering claims "arising from rendition or failure to render services," and further confining the reach of the clause by defining "services." *Id*. at 741–42. The narrow arbitration clause covered only certain types of claims and excluded others, such as a sexual assault by a hospital orderly. *Id*. But this has no relevance to the arbitration clause at issue in this case. Tile's arbitration clause was drafted broadly to encompass a wide variety of claims. (2-ER-117, 199 (arbitration encompasses all claims "relating to . . . any Tile product").) Product liability and negligence claims related to the design and functionality of that product are easily within the scope of

the arbitration clause. Like *Chun Choe*, *Victoria* may be read to hold that claims against Plaintiffs' alleged stalkers are not encompassed by the arbitration provision, but Tile does not suggest that they would be.

**D.      The Terms Are Not Unconscionable**.

As discussed above, unconscionability is for the arbitrator, not the court to decide. (Section II.B.1., *supra*.) But even were the court to reach the question of unconscionability, the district court erred in deciding the Tile Terms were unconscionable. (*See* Defs. Br. § VII.D.) Plaintiffs' opposition should not convince this Court otherwise.

**1.      The Terms Are Not Substantively Unconscionable.**

Plaintiffs agreed to Tile's Terms as Tile customers who created Tile accounts. (2-ER-92, 96, ¶¶ 5, 13.) In doing so, they agreed to arbitrate all claims "relating to . . . any Tile product." (Defs. Br. 39; 2-ER-117, 199.) They now bring claims relating to Tile's products. It is not surprising then that those claims must be arbitrated. In fact, Plaintiff Broad alleged that one of the Tile trackers allegedly used to track her location without permission was the Tile tracker ***she herself purchased***. (2-ER-64, ¶ 6.) Plaintiffs assert that their claims "have nothing to do with the [Tile] Terms[.]" (Pls. Br. 51.) Not so. The Tile Terms concern the use of Tile's products and services (2-ER-101, 147), and the Complaint is about Tile Trackers, focusing on the design of the Tile Tracker and related application "Scan & Secure," including

the apps' tracker detection capabilities. (2-ER-245–54.)

Plaintiffs' cases are all distinguishable as they concern provisions that "extend beyond the contractually defined relationship." (Pls. Br. 52.) That is not the case here. Plaintiffs bring product and design claims about the Tile Tracker and related services, which are the same products and services for which they entered into this agreement.

In *Cook*, the Court noted that it was unreasonable for the plaintiff to expect that she was giving up "the right to ever sue a USC employee in court for defamatory statements or other claims that are completely unrelated to her employment." (Pls. Br. 52 (quoting *Cook v. Univ. of S. Cal.*, 321 Cal. Rptr. 3d 336, 346 (Cal. Ct. App. 2024).) Here, one would expect that an arbitration agreement in a contract concerning the Tile Tracker would apply to claims about the Tile Tracker's design and marketing.

Likewise, in *Jiffy Lube*, the court found the arbitration agreement was unconscionable on grounds the language was "incredibly broad" and purported to apply to "any and all disputes." *In re Jiffy Lube Int'l, Inc. Text Spam Litig.*, 847 F. Supp. 2d 1253, 1262–63 (S.D. Cal. 2012). But as explained in Tile's opening brief, this arbitration agreement does not apply to any and all disputes between the parties. (Defs. Br. 39.) Arbitration is limited to disputes arising out of or relating to (1) the terms of the Agreement, (2) any Tile product or service and its marketing, or (3) the

23

relationship between Plaintiffs and Tile. (*Id.*) As discussed, Plaintiffs' claims relate to Tile's tracker and fall squarely within the scope of the arbitration clause. In contrast, the arbitration provision would not apply, for example, to claims Plaintiffs hypothetically had against Tile relating to some other relationship, like employer-employee, or an action Tile took unrelated to its products and services, like the defamation claim in *Cook*, or even a wrongful death claim. *See Jiffy Lube*, 847 F. Supp. 2d at 1263 (discussing "absurd" example that "if a defendant murdered the plaintiff in order to discourage default on a loan, the wrongful death claim would have to be arbitrated").

Plaintiffs also point to "other indicia of substantive unconscionability," duration and the ability to make unilateral modifications. (Pls. Br. 56.) Neither is relevant here. To support the relevance of duration, Plaintiffs rely solely on *Cook*. (Pls. Br. 56.) But that decision considered duration only as one element. Consumer contracts routinely include provisions like the one here that extend the obligation to arbitrate past termination of the agreement—and federal courts regularly enforce these provisions. *See, e.g., Ferreira v. Uber Techs., Inc.*, No. 23-cv-00518, 2023 WL 7284161, at *1 (N.D. Cal. Nov. 3, 2023) (enforceable arbitration clause where the clause "survive[s] after the relationship terminates"); *Crooks v. Wells Fargo Bank, N.A.*, 312 F. Supp. 3d 932, 938 (S.D. Cal. 2018) (enforceable arbitration clause where the provision would "survive any termination, payoff or transfer" of contract).

As to unilateral modifications, this Court has held that such a clause "does not make the arbitration provision" unconscionable because "the implied covenant of good faith and fair dealing prevents a party from exercising its rights under a unilateral modification clause in a way that would make it unconscionable." *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1033 (9th Cir. 2016); *see also Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 480 (9th Cir. 2024) ("*Tompkins* instructs that the presence of a unilateral modification provision, without more, does not render a separate arbitration clause at all substantively unconscionable.").

### 2. The Terms Are Not Procedurally Unconscionable.

Tile explained in its opening brief that adhesion contracts are not *per se* oppressive. *See Morris v. Redwood Empire Bancorp*, 128 Cal. App. 4th 1305, 1320 (2005) ("Although adhesion contracts often are procedurally oppressive, this is not always the case."). Plaintiffs dispute this statement of law without any support or citation. (Pls. Br. 59.) In reality, "[a] term is not oppressive where, as here, the customer has 'reasonably available alternative sources of supply from which to obtain the desired goods and services free of the terms claimed to be unconscionable.'" *Darnaa, LLC v. Google LLC*, 756 F. App'x 674, 676 (9th Cir. 2018) (citation omitted). Plaintiffs argue that such a rule would not apply to "Plaintiffs, who used the Tile App to evade their stalkers." (Pl Br. 59 (emphasis omitted).) But Plaintiffs agreed to Tile's terms when they purchased Tile Trackers

themselves. (1-ER-8.) At that time, they had other options. (Defs. Br. 50.) Plaintiffs dispute that Apple's AirTags are a comparable product by citing to a conclusory statement in the Complaint. (Pls. Br. 59-60.) But the Complaint also includes citation to an article titled "Amazon partners with Tile to take on Apple AirTags,"—the title alone demonstrates the two products' competitive comparability. (2-ER-210 ¶ 31 n.8.) Further, the article, which is incorporated by reference, calls AirTags a "Tile-like product."[5] Finally, even if Plaintiffs had not had available alternatives (they did), "the mere fact that a contract is one of adhesion establishes *only a low degree* of procedural unconscionability." *Ingalls v. Spotify USA, Inc.*, No. 16-03533, 2016 WL 6679561, at *5 (N.D. Cal. Nov. 14, 2016) (emphasis added).

Further, the arbitration agreement was not hidden in any way, despite Plaintiffs' arguments (Pls. Br. 61-62). The Tile Terms, in the only bold text on the first page, state "**you agree to the arbitration agreement and class action waiver described**" below. (2-ER-101, 180.) The arbitration provision is then explained in greater detail in a clearly-labeled, separate section titled in bold "**Dispute Resolution by Binding Arbitration**." (2-ER-117, 199.) In these ways, the Tile

---

[5] Apple's AirTags are so comparable in this context that Plaintiffs' Counsel has brought nearly identical claims against Apple. *See Hughes v. Apple, Inc.*, 723 F. Supp. 3d 693 (N.D. Cal. 2024). In fact, the complaints in the two actions are so similar that Plaintiffs' counsel appears to have used the complaint against Apple as a template for their complaint against Tile. (*See* 2-ER-209 ¶ 26 (discussing the contacts that Apple and AirTags have in what appears to be an error caused by copying the Apple complaint).)

Terms were designed to make the agreement to arbitrate prominent and unmissable, not hidden. It is clear that Plaintiffs Broad and Doe agreed to arbitrate the claims at issue. And, of course, the inverse is also true: others with a claim against Tile who did not agree to these Terms—like the other two plaintiffs in the case before the lower court, against whom Tile did not seek arbitration—would not be required to arbitrate their claims.

Finally, contrary to Plaintiffs' arguments (Pls. Br. 61-62), "[n]umerous courts have concluded that incorporation of the AAA rules by reference into an otherwise valid arbitration agreement does not render such an agreement procedurally unconscionable." *Collins v. Diamond Pet Food Processors of Cal., LLC*, No. 2:13-cv-00113, 2013 WL 1791926, at *5 (E.D. Cal. Apr. 26, 2013); *see also Ulbrich v. Overstock.com, Inc.*, 887 F. Supp. 2d 924, 932–33 (N.D. Cal. 2012) (no procedural unconscionability where AAA rules were incorporated by reference).

## III.   Conclusion

This Court should reverse and remand with instructions to grant the motion to compel arbitration.

Dated:  October 31, 2025                    COOLEY LLP


                                    By: /s/ Jeffrey M. Gutkin
                                        Jeffrey M. Gutkin
                                        Max A. Bernstein
                                        Travis LeBlanc


                                    Attorneys for Appellants
                                    TILE, INC. and LIFE360, INC.

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number** 25-403

I am the attorney or self-represented party.

**This brief contains** 6,613 **words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/ Jeffrey M. Gutkin       **Date** October 31, 2025
*(use "s/[typed name]" to sign electronically-filed documents)*